## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GREGG CARL BAIRD,** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **CIVIL NO. _____** |
| | § | |
| **STUART JENKINS,** | § | |
| **DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE,** | § | |
| **PAROLE DIVISION, and** | § | |
| | § | |
| **JOHN McGUIRE,** | § | |
| **DIRECTOR,** | § | |
| **BRAZOS COUNTY** | § | |
| **COMMUNITY SUPERVISION** | § | |
| **AND CORRECTIONS** | § | |
| **DEPARTMENT,** | § | |
| **Respondents** | § | |

## PETITION FOR A WRIT OF HABEAS CORPUS
## OF A PERSON IN STATE CUSTODY

**Josh Schaffer**
**State Bar No. 24037439**
**Federal ID No. 33073**

**1301 McKinney, Suite 3100**
**Houston, Texas 77010**
**(713) 951-9555**
**(713) 951-9854 (facsimile)**
**josh@joshschafferlaw.com**

**Attorney for Petitioner**
**GREGG CARL BAIRD**

# SUBJECT INDEX

**Page**

CUSTODY ................................................................................... 1

CHRONOLOGY OF THE PROCEEDINGS ................................................. 1

ISSUE PRESENTED ...................................................................... 2

STANDARD OF FEDERAL HABEAS CORPUS REVIEW ............................ 2

STATEMENT OF FACTS ................................................................ 4

GROUND FOR RELIEF ................................................................. 4

    THE STATE COURT DECISION THAT THE ADMISSION OF
EVIDENCE OF CONSTITUTIONALLY PROTECTED SEXUAL
CONDUCT AT THE PUNISHMENT STAGE DID NOT VIOLATE
DUE PROCESS WAS CONTRARY TO OR INVOLVED AN
UNREASONABLE APPLICATION OF SUPREME COURT
PRECEDENT.

    A.    Statement Of Facts ........................................................ 4

    B.    State Court Decision..................................................... 7

    C.    Due Process Violation .................................................. 9

        1.    Petitioner's Sexual Conduct Was Constitutionally
Protected ................................................................ 9

        2.    Evidence Of Constitutionally Protected Sexual Conduct
Was Inadmissible At Sentencing........................................... 14

    D.    Harm ......................................................................... 19

CONCLUSION ................................................................................ 20

VERIFICATION............................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                             **Page**

Baird v. State, 379 S.W.3d 353 (Tex. App.—Waco 2012, pet. granted) ....... *passim*

Baird v. State, 398 S.W.3d 220 (Tex. Crim. App. 2013) ................................ 2

Bowers v. Hardwick, 478 U.S. 186 (1986)...................................................... 10

Brecht v. Abrahamson, 507 U.S. 619 (1993)................................................... 19

Carey v. Population Services Int'l, 431 U.S. 678 (1977) ................................ 10

Cox v. State, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996),
    pet. dism'd, improvidently granted, 951 S.W.2d 5 (Tex. Crim.
    App. 1997) ............................................................................................. 14-15

Davis v. State, 329 S.W.3d 798 (Tex. Crim. App. 2010)................................ 8

Dawson v. Delaware, 503 U.S. 159 (1992) .................................................. 8,16-18

Eisenstadt v. Baird, 405 U.S. 438 (1972) ....................................................... 9

Griswold v. Connecticut, 381 U.S. 479 (1965) ............................................... 9

Guerra v. Collins, 916 F.Supp. 620, 636 (S.D. Tex. 1995), aff'd, 90 F.3d
    1075 (5th Cir. 1996) .............................................................................. 15

Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770 (2011) ............................ 3

Lawrence v. Texas, 539 U.S. 558 (2003) .................................................. 5,7,11-12

Lindh v. Murphy, 521 U.S. 320 (1997) ........................................................... 3

Lowe v. Swanson, 663 F.3d 258 (6th Cir. 2011)............................................. 12

Mason v. State, 905 S.W.2d 570 (Tex. Crim. App. 1995) .............................. 8

McCleskey v. Kemp, 481 U.S. 279 (1987)....................................................... 15

**Page**

McGee v. State, 233 S.W.3d 315 (Tex. Crim. App. 2007)................................ 14

Miller-El v. Cockrell, 537 U.S. 322 (2003) ...................................................... 3

Muth v. Frank, 412 F.3d 808 (7th Cir. 2005) ................................................... 12

O'Neal v. McAninch, 513 U.S. 432 (1995)........................................................ 19

Payne v. Tennessee, 501 U.S. 808 (1991) ......................................................... 16

Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992)......... 10-12

Reliable Consultants, Inc. v. Earle, 517 F.3d 738 (5th Cir. 2008) ................ 7,12-13

Rodriguez v. State, 203 S.W.3d 837 (Tex. Crim. App. 2006)........................ 14

Roe v. Wade, 410 U.S. 113 (1973)..................................................................... 10

Romer v. Evans, 517 U.S. 620 (1996) ............................................................... 15

Saldano v. Cockrell, 267 F.Supp.2d 635 (E.D. Tex. 2003).............................. 15,19

Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002)........................................... 15

United States v. Tucker, 404 U.S. 443 (1972)................................................... 16-17

Williams v. New York, 337 U.S. 241 (1949) ..................................................... 17

Williams v. Taylor, 529 U.S. 362 (2000) .......................................................... 2-3

Woodward v. State, 170 S.W.3d 726 (Tex. App.—Waco 2005, pet. ref'd)..... 8

Zant v. Stephens, 462 U.S. 862 (1983).............................................................. 7,15

**Page**

**Statutes**

28 U.S.C. § 2254(d)(1)........................................................   2

TEX. CRIM. PROC. CODE art. 37.07, §3(a) (West 2014)...................   14

**Rules**

TEX. R. EVID. 404 ...........................................................   14

TEX. R. EVID. 405 ...........................................................   14

## CUSTODY

Petitioner is illegally restrained of his liberty, pursuant to a judgment of the 272nd District Court of Brazos County, by the Texas Department of Criminal Justice, Parole Division, 8610 Shoal Creek Blvd., P.O. Box 13401, Austin, Texas 78711; and by the Brazos County Community Supervision and Corrections Department, 321 East 26th St., Suite 300, Bryan, Texas 77803.

## CHRONOLOGY OF THE PROCEEDINGS

Petitioner pled guilty without an agreed recommendation on punishment to ten counts of possession of child pornography in cause number 09-02494-CRF-272 in the 272nd District Court of Brazos County before the Honorable Travis Bryan (1 C.R. 87-91; 4 R.R. 9).  On July 29, 2010, the court found him guilty and assessed punishment at ten years imprisonment on counts one and four through ten, to be served concurrently; five years imprisonment on count two, to be served consecutively to count one; and ten years probation on count three, to be served consecutively to count two (1 C.R. 121-40; 6 R.R. 4-5).[1]  Jim James represented him in the trial court.

The Tenth Court of Appeals affirmed petitioner's judgment of conviction in a published opinion issued on January 11, 2012.  Baird v. State, 379 S.W.3d 353

---

[1] Petitioner is in the custody of the TDCJ-Parole Division and the Brazos County probation department, instead of the TDCJ-Correctional Institutions Division, because he was released from prison on parole in July of 2014, at which time he commenced the probated sentence on count three.

(Tex. App.—Waco 2012, pet. granted).  The Court of Criminal Appeals affirmed that decision in a published opinion issued on May 8, 2013.  Baird v. State, 398 S.W.3d 220 (Tex. Crim. App. 2013).  Richard Wetzel represented him on appeal.

Petitioner did not file a habeas corpus application in state court.

The present petition, to be timely under the AEDPA, must be filed by August 6, 2014.

## ISSUE PRESENTED

> Whether the state court decision that the admission of evidence of constitutionally protected sexual conduct at the punishment stage did not violate due process was contrary to or involved an unreasonable application of Supreme Court precedent.

## STANDARD OF FEDERAL HABEAS CORPUS REVIEW

A federal habeas court must defer to the state court decision unless it was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1).

A state court decision is contrary to Supreme Court precedent if its conclusion is opposite to that reached by the Supreme Court on a question of law or it confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at the opposite result.  Williams v. Taylor, 529 U.S.

362, 405-06 (2000).  A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case or it unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply.  Id. at 413.  The federal court must decide whether the state court's application of the law was objectively unreasonable.  Id. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 786 (2011).  A federal habeas court is authorized to issue the writ only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedent."  Id.

The AEDPA sets forth "a highly deferential standard for evaluating state-court rulings."  Lindh v. Murphy, 521 U.S. 320, 333 n. 7 (1997).  However, deference to a state court's fact findings does not imply abandonment or abdication of judicial review, nor does it preclude federal habeas relief.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Williams v. Taylor, 529 U.S. at 377 (AEDPA "directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law").

## STATEMENT OF FACTS[2]

Petitioner hired Dawn Killien to "pet sit" for him while he was out of town (2 R.R. 15; 3 R.R. 56).  She entered his bedroom and used his computer to listen to music (2 R.R. 21).  She found images of child pornography on his computer and notified the police (2 R.R. 23-27, 29).

An investigator for the Brazos County District Attorney's Office examined the hard drive of petitioner's computer and found  numerous images of child and adult pornography on it (5 R.R. 11, 19, 21, 24).

## GROUND FOR RELIEF

**THE STATE COURT DECISION THAT THE ADMISSION OF EVIDENCE OF CONSTITUTIONALLY PROTECTED SEXUAL CONDUCT AT THE PUNISHMENT STAGE DID NOT VIOLATE DUE PROCESS WAS CONTRARY TO OR INVOLVED AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT.**

### A.    Statement Of Facts

The State gave pre-trial notice of its intent to use evidence of images and videos of petitioner having sex with adult males, online conversations that he had with adult males about meeting to have sex, and sex toys and other sexual paraphernalia that he possessed (1 C.R. 105-06).

The prosecutor asserted in his opening statement at the punishment stage that

---

[2] Because the facts of the case are not material to the constitutional claim, petitioner will summarize them briefly.

he intended to offer evidence of petitioner engaging in "deviant sexual contact involving bondage, sadomasochism, that sort of thing," not to bias the court against petitioner "because he may or may not be gay," but to "give the Court a full picture of this Defendant's sexual proclivities" so it could evaluate his "redeemability, danger to the community and to ultimately provide a just sentence" (5 R.R. 9-10).

The State introduced a summary chart of pornography that it found on petitioner's computer (5 R.R. 21-22; SX 3).  Petitioner objected to the admission of any evidence of lawful homosexual conduct on due process grounds under Lawrence v. Texas, 539 U.S. 558 (2003) (5 R.R. 22).  The State argued that the evidence did not have to depict illegal conduct to be admissible (5 R.R. 22-23).   The court overruled the objection, admitted the evidence, and granted a running objection (5 R.R. 23).

Thereafter, the State elicited that an investigator found numerous images of pornography and put them on a portable hard drive (5 R.R. 24-25; SX 32). Petitioner's due process objection to evidence that depicted sexual conduct with adults was overruled (5 R.R. 26).  The investigator testified that some of the images depicted petitioner in bondage and sadomasochistic poses, both alone and with other adults (5 R.R. 51, 53-54).  Petitioner's due process objection based on Lawrence v. Texas was overruled, and a running objection to adult pornography was granted (5 R.R. 51-53).   The investigator testified about records of petitioner's

online conversations that discussed his sexual proclivities and efforts to meet adults to have sex (5 R.R. 58-59; SX 16).  An identical objection was overruled (5 R.R. 59).

Petitioner testified at the punishment stage.  The prosecutor asked on cross-examination about him meeting people to have sex (5 R.R. 178).  Petitioner's due process objection was overruled, and a running objected was granted (5 R.R. 178-79).  He testified that he contacted consenting adult men on the Internet to have sex; that he tied himself up and took photographs; that he acted out fantasies, including anal penetration; and that he purchased and used sex toys (5 R.R. 179-85).  The court overruled another due process objection (5 R.R. 184-85).

The prosecutor emphasized during summation that petitioner purchased sex toys, acted out his sexual fantasies, and used the Internet to seek sexual encounters with consenting adults (5 R.R. 230, 233-34).

The trial court considered evidence of petitioner's online chats and sexual fantasies when it determined and pronounced his sentence (6 R.R. 6):

> In one of the chats that you wrote, you mentioned that the sexual urge at that particular time was a ticking time bomb. I just hope that you will do what you need to do; and hopefully, I have done what I needed to do to keep that ticking time bomb from going off and damaging some child.

It assessed punishment at 15 years imprisonment followed by ten years probation (1 C.R. 121-40; 6 R.R. 4-5).

**B.     State Court Decision**

Petitioner raised on appeal that the trial court abused its discretion in overruling objections to the admissibility of constitutionally protected conduct offered at the punishment stage.  He argued that consenting adults have a due process right to engage in homosexual sexual conduct, citing Lawrence v. Texas, 539 U.S. 558, 578 (2003); that the government may not infringe the due process right to legally use a safe sexual device during private, intimate moments alone or with another person, citing Reliable Consultants, Inc. v. Earle, 517 F.3d 738, 744 (5th Cir. 2008); and that a sentence must be vacated where a court takes constitutionally impermissible factors into account as a basis to impose a sentence, citing Zant v. Stephens, 462 U.S. 862, 885 (1983).  He asserted that it was impermissible for the State to offer evidence of constitutionally protected sexual conduct at the punishment stage where it conceded that it did so to show his sexual propensities, and that the trial court could not properly consider this evidence in its sentencing decision where the evidence did not demonstrate his bad character, an extraneous offense, or a bad act.

The State responded that this evidence was relevant to help the court assess the proper punishment and that the United States Constitution neither protects the right to privacy in all sexual activities nor prevents the use of evidence of homosexual or alternative sexual practices.  It asserted that, even if the admission

of this evidence was error, it was harmless beyond a reasonable doubt because the State took measures to ensure that petitioner was not punished for this conduct.

The Tenth Court of Appeals of Texas held that the United States Constitution "is not a *per se* barrier to the admission of evidence merely because the evidence involves conduct that is constitutionally protected." Baird v. State, 379 S.W.3d 353, 359-60 (Tex. App.—Waco 2012, pet. granted).  It based this decision on several First Amendment cases:  Dawson v. Delaware, 503 U.S. 159, 165 (1992); Davis v. State, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010); Mason v. State, 905 S.W.2d 570, 576 (Tex. Crim. App. 1995); Woodward v. State, 170 S.W.3d 726, 729 (Tex. App.—Waco 2005, pet. ref'd).[3]  It observed that evidence of constitutionally protected conduct is admissible if it is relevant to the issues involved in the case.  Baird, 379 S.W.3d at 360.  It acknowledged that none of the evidence demonstrated or even suggested that petitioner had sexual contact with a child.  Id. at 359.  However, it concluded that the trial court did not abuse its discretion in admitting evidence of constitutionally protected sexual conduct, where the State argued that it was relevant to show that petitioner's interests extended beyond electronic voyeurism, that he maintained an active sexual appetite, that he exhibited unsafe sexual practices with strangers, that he created

---

[3] In relying on these First Amendment cases, the court of appeals explained, "We see no reason why the reasoning of these cases, which involve First Amendments [sic] rights, should not apply to this case." Baird, 379 S.W.3d at 360, n. 9.

photos of himself to recreate images of children that he possessed, that he had a continued fixation on a variety of sexual activities, that he would act on his continued attraction to underage boys, and that he was not a suitable candidate for probation. Id. at 360.

## C.   Due Process Violation

### 1.   Petitioner's Sexual Conduct Was Constitutionally Protected.

This case involves the State's improper use of constitutionally protected sexual conduct, including homosexual conduct, to increase his punishment for unrelated criminal conduct.  The State successfully argued that petitioner posed a greater danger to the community, was more morally blameworthy for his criminal conduct, and deserved a harsher punishment because he also had engaged in homosexual conduct with consenting adults and in lawful but "abnormal" sexual practices, as defined by the mores of Brazos County.

The legal landscape that protects petitioner's sexual conduct is well-defined. The starting point of the Supreme Court's substantive expansion of liberty under the Due Process Clause was Griswold v. Connecticut, 381 U.S. 479 (1965).  The Court invalidated a state law that prohibited the use of contraception devices or drugs.  It described the protected liberty interest as a right to privacy, emphasizing the marital relationship.  Id. at 485.  The Court quickly expanded on Griswold when it decided Eisenstadt v. Baird, 405 U.S. 438 (1972), which invalidated a law

that prohibited the distribution of contraceptives to unmarried persons.  Although Eisenstadt was decided under the Equal Protection Clause, it established that the right to make certain decisions regarding sexual conduct extends beyond marital relationships.

Griswold and Eisenstadt were the foundation for Roe v. Wade, 410 U.S. 113 (1973), which established that a woman's right to abort a pregnancy had substantial protection as an exercise of personal liberty under the Due Process Clause.  Soon thereafter, the Court invalidated a law that prohibited the distribution of contraceptive devices to persons under 16 years of age.  Carey v. Population Services Int'l, 431 U.S. 678 (1977).  Eisenstadt, Roe, and Carey established that the rationale of Griswold is not limited to protecting the rights of married adults.

This was the state of substantive due process law when the Court decided Bowers v. Hardwick, 478 U.S. 186 (1986).  Hardwick, who was homosexual, brought an action in federal court to declare unconstitutional a state criminal law that prohibited sodomy, regardless of whether the actors were heterosexual or homosexual.  The Court upheld the statute, and Bowers remained binding precedent for almost two decades.

Several years after Bowers, the Court made a critical observation in an abortion case, Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992).  As to whether the majority in society may use the power of the State to

10

enforce its views on everyone else through the operation of the criminal law, the Court stated, "Our obligation is to define the liberty of all, not to mandate our own moral code." Id. at 850.

The Court revisited the holding in Bowers when it decided Lawrence v. Texas in 2003.  Lawrence not only overruled Bowers but also expanded the scope of substantive due process.  The Court recognized that the statutes in both cases had a much broader impact than merely criminalizing certain sexual conduct:

> The laws involved in Bowers and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act.  Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home.  The statutes do seek to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals.

Lawrence, 539 U.S. at 567.  The Court counseled that, as a general rule, the State should not infringe on relationships unless they injure a person or abuse an institution that the law protects.  Regarding homosexuality, the Court stated:

> . . . adults may choose to enter upon this relationship in the confines of their homes and their own private lives and still retain their dignity as free persons.  When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring.  The liberty protected by the Constitution allows homosexual persons the right to make this choice.

Id.  When two adults engage in consensual homosexual conduct, the Constitution affords them respect for those private decisions, and the "State cannot demean their existence or control their destiny by making their private sexual conduct a crime." Id. at 578.  "It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." Casey, 505 U.S. at 847.

Admittedly, Lawrence did not involve minors; public conduct; prostitution; or persons who might be injured or coerced or are in relationships where consent might not easily be refused.  539 U.S. at 578.  With that recognition, the Court erected a guidepost by which lower courts would know that the rule announced in Lawrence does not apply to *all* sexual conduct.[4]  However, Lawrence clearly established that most consensual sexual conduct among adults—even if outside the scope of what society deems normal, including homosexual—enjoys a protected liberty interest free from governmental intrusion *and* criminal punishment.

The Fifth Circuit applied Lawrence to invalidate another Texas criminal statute that prohibited the promotion or sale of sexual devices.  Reliable Consultants, Inc. v. Earle, 517 F.3d 738 (5th Cir. 2008).  The Court recognized that

---

[4] For example, two federal circuit courts have rejected habeas petitions that raised Lawrence-based challenges to state statutes criminalizing incest among consenting adults.  See Lowe v. Swanson, 663 F.3d 258, 264 (6th Cir. 2011) (Lawrence did not address or clearly establish constitutional right to engage in incest free from government intrusion; to contrary, it expressly did not address cases with persons "situated in relationships where consent might not easily be refused"); Muth v. Frank, 412 F.3d 808, 818 (7th Cir. 2005) (no clearly established federal law at time federal habeas petition was filed supported claim that person had right to engage in incest free from government intrusion).

the claim was based on the individual right under the Due Process Clause to engage in private intimate conduct in the home without governmental intrusion. Id. at 742-43.   The statute prevented a person who wanted to use a safe sexual device legally during private intimate moments, alone or with another, from legally purchasing such a device in Texas.   The Court acknowledged that it had a "mandatory and straightforward" responsibility "as an inferior federal court" to apply Lawrence to the statute.  Id. at 745.  It observed that "public morality cannot justify a law that regulates an individual's private sexual conduct and does not relate to prostitution, the potential for injury or coercion, or public conduct."  Id. at 745, n. 33.  It invalidated the statute because the government was trying to control what people did in the privacy of their own homes based on moral opposition to a certain type of consensual, private, intimate conduct.  Id. at 747.

Accordingly, evidence of petitioner's homosexual conduct; possession of adult pornography; online conversations that discussed his sexual proclivities and efforts to meet adults to have sex; purchase and use of sex toys; and "deviant sexual contact involving bondage, sadomasochism, that sort of thing," was all constitutionally protected conduct under the Due Process Clause, Lawrence, and clearly established federal law regarding substantive due process as decided by the Supreme Court over the past 50 years.  Fairminded jurists would agree that the state court's decision was an unreasonable application of clearly established federal law.

### 2.     Evidence Of Constitutionally Protected Sexual Conduct Was Inadmissible At Sentencing.

The Texas Legislature has given trial courts broad discretion to admit evidence during the punishment stage of a criminal case.   The relevant statutory authority is:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CRIM. PROC. CODE art. 37.07, §3(a) (West 2014).   Interpreting the limits of that rule, Texas courts have observed, "the admissibility of evidence at the punishment phase of a non-capital felony" trial is really "a function of policy rather than relevance."  Rodriguez v. State, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). "Evidence is 'relevant to sentencing,' within the meaning of" article 37.07, §3(a) "if the evidence is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'"  McGee v. State, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007).   Punishment evidence need not be evidence of an illegal act.  See Cox v. State, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996), pet.

dism'd, improvidently granted, 951 S.W.2d 5 (Tex. Crim. App. 1997).

Notwithstanding this state statutory authority, the Supreme Court has held that not all evidence of "character" qualifies as admissible aggravating evidence to be considered at the punishment stage of a criminal case.  See Zant v. Stephens, 462 U.S. 862, 885 (1983).  The Court has clearly stated that aggravating evidence is of an entirely different character than mitigating evidence and is subject to more restrictive constitutional limitations.  See McCleskey v. Kemp, 481 U.S. 279, 304 (1987).  For example, characteristics such as race, religion, or political affiliation are constitutionally impermissible and totally irrelevant to the sentencing process. Zant, 462 U.S. at 885; see also Saldano v. Cockrell, 267 F.Supp.2d 635, 642 (E.D. Tex. 2003) (constitutional error for State to present testimony and make argument in support of death penalty based in part on race and ethnicity); Thompson v. Davis, 295 F.3d 890, 894 n. 4 (9th Cir. 2002) (race and ethnicity are irrelevant to determination of future dangerousness); Guerra v. Collins, 916 F.Supp. 620, 636 (S.D. Tex. 1995), aff'd, 90 F.3d 1075 (5th Cir. 1996) (that defendant was illegal alien irrelevant for purposes of determining whether to impose death penalty). Sexually orientation is such a characteristic.  Cf. Romer v. Evans, 517 U.S. 620 (1996) (discrimination against homosexuals violates Equal Protection Clause).

The Supreme Court delved into the thornier question of what type of evidence may properly be considered relevant character evidence at sentencing in

Dawson v. Delaware, 503 U.S. 159 (1992).  The State introduced evidence of the defendant's membership in the Ayran Brotherhood, a group that holds racist, white-supremacist beliefs, during the punishment stage of Dawson's capital case. The Court held that this evidence, by itself, had no relevance to any issue at sentencing.  Id. at 167-69.  It was unrelated to the crime because it did not show motive or contribute to establishing any aggravating circumstances.  Id. at 166-67. It was merely evidence of "abstract beliefs" offered to show his moral reprehensibility.  Id. at 167.  Additionally, the Court held that the evidence was not admissible to rebut Dawson's mitigating evidence of his "good" character.  The Court stated that his membership in a racist organization was simply not "bad" character evidence.  Id. at 168.  As such, the First Amendment prevented the State from "employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried."  Id.

Admittedly, the Dawson Court concluded that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment."  Id. at 165.  It based that conclusion on prior decisions that held that a "'sentencing authority has always been free to consider a wide range of relevant material.'"  Id. at 164 (quoting Payne v. Tennessee, 501 U.S. 808, 820-21 (1991); and citing United States v. Tucker, 404 U.S. 443, 446

16

(1972); <u>Williams v. New York</u>, 337 U.S. 241 (1949)).  However, despite rejecting the broad proposition that evidence of constitutionally protected beliefs and associations is always inadmissible, the Court held that the evidence of Dawson's membership in the Ayran Brotherhood was constitutional error because it was "totally without relevance to Dawson's sentencing proceeding."  503 U.S. at 165.

In petitioner's case, the state court failed to acknowledge or discuss the ultimate holding of <u>Dawson</u> rejecting the admissibility of the evidence because it was not tied to the murder in that case, where the victim, like Dawson, was white; it proved nothing more than his abstract beliefs; and it did not rebut any mitigating evidence offered by Dawson.  <u>Id.</u> at 166-67.

Although petitioner's possession of numerous images of child pornography involved various sexual fetishes, the State did not demonstrate that his homosexuality and sexual conduct with consenting adults motivated or even contributed to his possession of child pornography.  Indeed, the State conceded and the state court observed that none of this evidence demonstrated or even suggested that petitioner had sexual contact with a child.  <u>Baird</u>, 379 S.W.3d at 359.  The State offered no connection between his homosexuality and sexual conduct with consenting adults and any issue relevant to sentencing.  Instead, the evidence was offered only to show his moral reprehensibility.  The prosecutor admitted— somewhat disingenuously—during his opening statement that he offered it, not to

bias the court against petitioner "because he may or may not be gay," but to "give the Court a full picture of [petitioner's] sexual proclivities" (5 R.R. 9-10).  A reasonable review of the record reflects that the prosecutor did offer the evidence to bias the court against petitioner because he is homosexual.  However, even affording the prosecutor the benefit of the doubt, petitioner's "sexual proclivities" as a homosexual who engaged in sexual conduct with consenting adults "cannot be viewed as relevant 'bad' character evidence in its own right."  See Dawson, 503 U.S. at 168.

The state court held that this evidence was relevant to show that petitioner's interests extended beyond electronic voyeurism, that he maintained an active sexual appetite, that he exhibited unsafe sexual practices with adult strangers, that he created photos of himself to recreate images of children that he possessed, that he had a continued fixation on a variety of sexual activities, that he would act on his continued attraction to underage boys, and that he was not a suitable candidate for probation.  Baird, 379 S.W.3d at 360.  Although this evidence demonstrated that he had an active homosexual life with adults, it did not establish that he acted, or even tried to act, on those interests with children.  Therefore, it was irrelevant to the charged offense of possession of child pornography, and the trial court constitutionally erred in admitting it.

The state court's decision that this evidence was admissible constituted an unreasonable application of Dawson and Zant.  Fairminded jurists would agree that

the state court's decision was an unreasonable application of clearly established federal law.

**D.     Harm**

A constitutional error is harmful on federal habeas review if it had a "substantial and injurious effect or influence in determining the . . . verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).  The State bears the burden of proving an error to be harmless.  See O'Neal v. McAninch, 513 U.S. 432, 439 (1995).  When a federal court in a habeas proceeding is in "grave doubt" about whether trial error of federal constitutional law had a substantial and injurious effect or influence in determining the verdict, that error is not harmless, and relief must be granted.  Id. at 436, 440, 445.  A trial error raises a presumption of prejudice which is rebutted if the court determines that a preponderance of the evidence in the record establishes that the error did not have a substantial and injurious effect or influence in determining the verdict.  Saldano, 267 F.Supp.2d at 645.  Although Brecht and O'Neal refer to jury verdicts, the rules that they create apply with equal force to constitutional errors that occur when the court determines the sentence.

The trial court overruled all of petitioner's due process objections to evidence of constitutionally protected sexual conduct.  By admitting this evidence, the trial court indicated that it would consider the evidence.  The prosecutor

emphasized the evidence in his opening statement and during summation and offered it repeatedly throughout the sentencing hearing.  The trial court demonstrated that it relied on this evidence when it assessed punishment, declaring that, "hopefully, I have done what I needed to do to keep that ticking time bomb [regarding petitioner's sexual urges] from going off and damaging some child" (6 R.R. 6).  This Court must have grave doubts that the federal constitutional errors had a substantial and injurious effect or influence in determining the sentence. Accordingly, petitioner was harmed.

## **CONCLUSION**

This Court should grant habeas corpus relief and order a new punishment hearing in state court.

Respectfully submitted,

/S/ Josh Schaffer
Josh Schaffer
State Bar No. 17724500
Federal ID No. 950

1301 McKinney, Suite 3100
Houston, Texas 77010
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Attorney for Petitioner
GREGG CARL BAIRD

# **VERIFICATION**

STATE OF TEXAS            §
                         §
COUNTY OF HARRIS          §

BEFORE ME, the undersigned authority, on this day personally appeared Josh Schaffer, who, after first being sworn by me, states that he is counsel for the petitioner, that he has read the petition for writ of habeas corpus, and that the facts contained herein are true and correct.

/S/ Josh Schaffer
Josh Schaffer

SUBSCRIBED AND SWORN TO before me on August 6, 2014.

/s/ Miguel Beltran
Notary Public in and for the
State of Texas
Commission Expires:
November 18, 2017

21