IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GREGG CARL BAIRD, | § |
| | § |
| Petitioner, | § |
| | § |
| v. | §CIVIL ACTION NO. H-14-2259 |
| | § |
| STUART JENKINS, Director, Texas | § |
| Department of Criminal Justice, | § |
| Parole Division, | § |
| Respondent. | § |

**RESPONDENT JENKINS'S MOTION FOR SUMMARY JUDGMENT
WITH BRIEF IN SUPPORT**

This is a habeas corpus case brought by a Texas state prisoner, Gregg Carl Baird, under 28 U.S.C. §§ 2241, 2254. Baird pleaded guilty to ten counts of possession of child pornography without an agreement as to punishment. Baird opted to have the trial court determine punishment. At the punishment hearing, the State was allowed to introduce evidence, testimony and photographs that Baird engaged in "adult male bondage." Baird objected citing *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), which invalidated a Texas statute criminalizing same-sex, intimate sexual conduct. *Lawrence*, though, has never been extended to the punishment stage of trial, and to warrant federal habeas relief, Baird needs to show that it has. He has failed to do that. Because there are no genuine issues of material fact, this Court should grant the Respondent's motion for summary judgment and dismiss Baird's petition with prejudice.

1

## JURISDICTION

Baird's judgments arise out of Harris County, Texas, within the jurisdiction of this Court. *See* 28 U.S.C. §§ 2241(d), 2254(a) (West 2014).[1]

## PETITIONER'S ALLEGATION

Baird raises one ground for relief:

> Whether the state court decision that the admission of evidence of constitutionally protected sexual conduct at the punishment stage did not violate due process was contrary to or an unreasonable application of Supreme Court precedent.

Fed. Pet. at 7.[2]

## GENERAL DENIAL

The Director denies all of Baird's assertions of fact except those supported by the record or specifically admitted herein.

## STATEMENT OF THE CASE

### I.   Procedural History.

Baird was charged with committing thirteen counts of possession of child pornography. Exhibit B at 1-2; *see also* Tex. Pen. Code § 43.26(a). After the trial court denied a pretrial motion to suppress, he entered a plea of

---

[1] The Director notes that Baird was released on parole on July 14, 2014. *See* Exhibit A at 1 (affidavit of Charley Valdez). Baird is still in the custody of the Texas Department of Criminal Justice – Parole Division while he is on parole. But Baird is also in the custody of the Brazos County Probation Department because he is also serving a separate probated sentence. *See* Exhibit B at 9-10 (count 3 –ten year sentence probated ten years). Since the Director has filed a part of the records under seal, he has attached an exhibit, B, containing the indictment, plea papers, and judgments separately to save the Court from having to refer to the sealed records.

[2] The Director will refer to document number 7 as "Fed. Pet." and refer to the page numbers assigned by the ECF system appearing at the top of each page. *See* Pet. for Writ of Habeas Corpus; ECF No. 1.

guilty. 3 RR 86; 6 RR 4. Pursuant to an agreement, Baird pled guilty to ten of the counts, the State agreed to dismiss ninety unadjudicated offenses, and the parties waived a jury without reaching a specific punishment agreement. Exhibit B at 3-13 (plea papers); *see also* 4 RR 8-9. After considering punishment evidence, the trial court accepted Baird's guilty plea and assessed a sentence of ten years imprisonment in count 1. 6 RR 4-5; Exhibit B at 14-15. The trial court assessed a five year sentence in count 2, cumulated on count one, and it ordered a ten year sentence in count 3, suspending its imposition for a period of ten years of community supervision. 6 RR 5; Exhibit B at 16-17 (count 2), 18-19 (count 3). The trial court ordered the remaining sentences at confinement for ten years running concurrent to count one. 6 RR 5; Exhibit B at 20-32.

Baird raised two points of error on direct appeal: (1) whether the trial court erred in denying Baird's second amended motion to suppress evidence; and (2) whether it erred by overruling objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence. *Baird v. State*, 379 S.W.3d 353, 354 (Tex. App.—Waco 2012). The Tenth District Court of Appeals overruled both points of error and affirmed the judgments on January 11, 2012. *Id.* at 361. Baird then filed a petition for discretionary review (PDR) in the Court of Criminal Appeals (CCA) raising both points of error. *See* Appellant's PDR, at **2, 7. The CCA granted Baird's PDR on the suppression issue. *In re Baird*, PD-0159-12, 2012 Tex. Crim. App. LEXIS 870 (Tex. Crim. App. 2012) ("GRANTED ON GROUND 1). The CCA

then went on to affirm Baird's judgments. *Baird v. State*, 398 S.W.3d 220, 222 (Tex. Crim. App. May 8, 2013).

Baird filed his federal petition one year later on August 6, 2014. Fed. Pet. at 10.

## II.   Statement of the Facts.

The following facts recount the testimony given at Baird's punishment hearing on July 28, 2010.

Nathan McCune, an investigator with the Brazos County District Attorney's Office described the evidence recovered from Baird's computer and other memory devices. 5 RR 13-20. Baird had stored child pornography on five of the devices at his home, which included 62,000 images of suspected child pornography. 5 RR 21, 23-28, 34; 96-97. All told, Baird had 211.5 gigabytes of child pornography on his computer. 5 RR 26. State's Exhibit 3 was a representative sampling of the exhibits introduced during punishment. 5 RR 25. Baird objected to the introduction of State's Exhibit 3 under "*Lawrence v. Texas* and the Due Process Clause." 5 RR 22, 51.[3] The Honorable Travis B. Bryan, III, overruled the objection. 5 RR 23.[4] McCune said that Baird had originally been charged with 100 counts of possession of child pornography. 5 RR 36-37. Those images appeared on State's Exhibit 1. 5

---

[3] Baird argued that Justice Stevens in *Bowers v. Hardwick* noted that "the fact that a State's governing majority has traditionally viewed a particular practice as immoral, is not sufficient reason for upholding it." 5 RR 52-53; *see also Lawrence*, 539 U.S. at 577-578 (adopting Justice Stevens's analysis).

[4] Baird was granted a running objection to the introduction of the State's evidence. *See* 5 RR 23.

RR 36-37. The State then introduced State's Exhibits 14 through 17. 5 RR 54. State's Exhibit 14 were depictions of Baird engaged in "sadomasochistic positions." 5 RR 54. State's Exhibit 15 showed "contrasting photographs of the Defendant in sadomasochistic poses with some of the photographs taken off the Defendant's computer of children in similar poses." 5 RR 54-55. State's Exhibit 16 contained Baird's online chats. 5 RR 60-61. State's Exhibit 17 contained pornographic images of a "Boy Scout troop." 5 RR 56.[5] No photographs depicted Baird personally involved in sexual acts with children. 5 RR 62-64.

A former leader of the Counsel of the Boy Scouts of America (BSA) discussed Baird's affiliation with the Boy Scouts. 5 RR 66-72, 80-81. Baird was involved with the "Venture Crew," which took extreme and more lengthy trips with kids aged thirteen to twenty-one. 5 RR 71-77.

Baird also testified. 5 RR 141. He discussed how being raped by two older male Scouts impacted him, a secret he kept within himself until he was thirty-eight years old. 5 RR 142-43, 152-55, 174. He acknowledged possessing all of the child pornography, including extremely graphic photos of five and six year olds being violated by adults, and gratifying himself to the images, but he denied ever having sexual contact with an underage child or having

---

[5] State's Exhibits 14-17 are not part of the record. The Director has copies of exhibits 14 and 15 and did not file them but will upon request. The Director does not have copies of exhibits 16 and 17 but could get them from the Brazos County Clerk upon request.

5

sexual thoughts toward the Scouts when camping. 5 RR 144-45, 148, 158, 164, 169-74, 199. He also acknowledged that he was sexually attracted to boys at times. 5 RR 166, 170, 172. Asked if he had control over the sexual attraction to boys, he replied, "Not necessarily." 5 RR 166. But he said he could control the attraction and did control the attraction out of a sense of professionalism:

> When I was on Venture Crew, I was very professional in my actions. I followed every rule that Scouts had in place to the letter including Two Deep leadership. I never put myself in the position where that would happen. I would never allow that to happen to anyone. I would never personally do that to another person that happened to me.

5 RR 168, 173.

Baird also acknowledged engaging in sexual explicit chats over the internet and arranging meetings with strangers for sexual liaisons. 5 RR 178-185, 190-93. He acknowledged that he engaged in sadomasochism and in some instances acted out the bondage he saw in the child porn. 5 RR 179-181. Baird acknowledged that he had pleaded guilty to evading arrest. 5 RR 186-187, 187.[6] The facts of that case involved an arranged meeting with another adult male for sex at Somerville High School. 5 RR 186-186, 190. Baird said he telephoned this person who was "working out on the track there at the

---

[6] Baird had previously pled guilty and received deferred adjudication for an evading arrest incident at Somerville High School in 2004. 5 RR 85, 91-92, 187-88. Officer Kindale Pittman arrested Baird when she went to investigate a car in the parking lot by the track at 11:00 on a Monday night, and Baird fled but was apprehended when he got stuck in a ditch. 5 RR 86-91.

[Somerville] high school." 5 RR 186-186. He ran because he was "terrified," "scared" even though it was a consensual sexual encounter. 5 RR 187-188, 190. Baird admitted that he continued to chat online while he was on deferred adjudication. 5 RR 190-191. Baird promised to continue to work on fighting his attraction to underage boys if he were released on probation. 5 RR 202.

## RECORDS

Copies of Baird's state-writ record were electronically filed with the Court. The Director will file a portion of the Clerk's Record, "51 RR 7 of 7 EXHIBITS (part 1)," under seal. Additionally, some exhibits were saved on disks and were not provided to the Director. The Director does have but did not file State's Exhibits 14 and 15, the exhibits the State introduced at the punishment hearing depicting Baird engaged in sexual acts. The Director will obtain and file any exhibit not contained in the record upon the Court's request. A copy of the state-court records will not be forwarded to Baird.

## RULE 5 STATEMENT

The Director believes that Baird has exhausted his state court remedies pursuant to 28 U.S.C. § 2254(b). The petition is not barred by limitations, 28 U.S.C. § 2244(d), or subject to the successive petition bar, 28 U.S.C. § 2244(b). The Director reserves the right to raise exhaustion/procedural default, however, should Baird contend that he raised more than the issues listed above, or should he amend his petition with additional issues, other than those stated herein.

MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

I.    AEDPA Summary Judgment Standard of Review.

Baird's petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA). "Summary judgment in federal habeas is different than in the average civil case." *Torres v. Thaler*, 395 Fed. App'x. 101, 106 (5th Cir. 2010) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274, 284 (2004)). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). But the Federal Rules of Civil Procedure apply to habeas cases only to the extent they are consistent with established habeas practice and procedure. *See* Rule 11 of the Rules Governing Section 2254 Cases. Ordinarily, the burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *See Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In federal habeas summary judgment practice, though, the Respondent does not assume a burden concerning the factual findings:

> [Section] 2254(e)(1) – which mandates that findings of fact made by a state court are 'presumed to be correct' – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless [the petitioner] can 'rebut [ ] the presumption of correctness by clear and convincing evidence' as to the state court's findings of fact, they must be accepted as correct.

*Smith*, 311 F.3d at 668.

Pleadings by a pro se litigant are reviewed under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Pleadings filed by a pro se litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by pro se parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

II. **AEDPA Standard of Review.**

Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court, (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). Thus, "a state court's

9

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion").

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786. If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are

10

necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court. Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2).

Finally, where a habeas petitioner has failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *Williams*, 529 U.S. at 436. For example, a petitioner's failure to present controverted, previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2). *Id.* at 433. But even if the petitioner can meet the foregoing standard, it is within this Court's discretion to deny a hearing if sufficient

facts exist to make an informed decision on the merits. *Clark v. Johnson*, 227 F.3d 273, 284-85 (5th Cir. 2000).

### III. Baird's Claims Are Without Merit.

#### A. There Is No Clearly Established Supreme Court Precedent.

To warrant relief, Baird has to show that the adjudication of his claim was "contrary to, or involved an unreasonable application of, *clearly established*" Supreme Court precedent. *See* 28 U.S.C. §2254(d)(1) (emphasis added). While Baird believes that *Lawrence v. Texas* bars the introduction of evidence of one engaging in constitutionally protected sexual activity during the punishment phase of trial, he has not cited to any Supreme Court case extending *Lawrence* to the sentencing phase of trial. *See* Fed. Pet. at 14-25.[7] That there is no clearly established Supreme Court precedent extending *Lawrence* to the punishment phase of trial is fatal to Baird's claim. The Director also notes that federal courts cannot on their own extend Supreme Court precedent to new arenas. The Supreme Court just this year settled that issue in a case very similar to this one in *White v. Woodall*, where the Supreme Court said it was error to extend clearly established Supreme Court

---

[7] Baird points to a couple of cases involving the criminalization of the sale of sexual devices and incest. *See* Fed. Pet. at 17-18 & n. 4 (citing to *Reliable Consultants, Inc. v. Earle,* 517 F.3d 738, 747 (5th Cir. 2008) (invalidating Texas statute criminalizing sale or promotion of sexual devices), *Lowe v. Swanson*, 663 F.3d 258, 264 (6th Cir. 2011 (declining to extend *Lawrence* to criminalization of incest); *Muth v. Frank*, 412 F.3d 808, 818 (7th Cir. 2005) (same)). While he does not rely heavily on these cases, the Director notes that to the extent that *Lawrence* did apply, it would only apply in situations where the State is attempting to criminalize constitutionally-protected conduct.

precedent pertaining to the provision of an "adverse-inference instruction"[8] to the punishment phase of trial.

In *White*, the Sixth Circuit had granted habeas relief after faulting the Kentucky Supreme Court for failing to extend *Carter v. Kentucky*, 450 U.S. 288 (1981) dealing with the provision of a "no-adverse-inference" instruction at the guilt/innocence stage of trial to the punishment phase of trial. *See* 134 S. Ct. 1697, 1702 (2014) (citing *Woodall v. Simpson*, 685 F.3d 574, 581 (6th Cir. 2012) for proposition that failure to provide an "adverse-inference instruction at the penalty phase violated [his] Fifth Amendment privilege against self-incrimination"). The Supreme Court reversed the Sixth Circuit holding that Section 2254(d)(1) "does not require state courts to *extend*" Supreme Court precedent "or license federal courts to treat the failure to do so as error." *See id.* at 1706-1707 (emphasis in orig.). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.* at 1706 (quoting *Yarborough v. Alvarado*, 541 U. S. 652, 666 (2004)). And "clearly established" does not include "'dicta." *See id.* at 1702. (citations omitted).

Here, even though the Waco Court of Appeals was asked to extend the rationale behind *Lawrence* to the punishment phase of trial, the court did not do so. *See Baird*, 379 S.W.3d at 359-360. Therefore, *Baird* cannot be an unreasonable application of *Lawrence*. Additionally, Baird faults the court of

---

[8] A "no-adverse-inference" instruction would inform the jury that "'[a] defendant is not compelled to testify and the fact that the defendant did not testify should not prejudice him in any way.'" *White*, 134 S. Ct. at 1701.

13

appeals for failing "to acknowledge or discuss the ultimate holding of *Dawson*," a case in which the Supreme Court held that a sentencing court could not consider evidence of membership in the "Aryan Brotherhood" because membership in a white racist prison gang was irrelevant to punishment. *See* Fed. Pet. at 22 (citing *Dawson v. Delaware*, 503 U.S. 159, 166-167 (1992)). But the Waco Court of Appeals did, in fact, cite *Dawson*. Admittedly, it did so after citing *Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010). *See Baird*, 379 S.W.3d at 359-360 (citing *Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010). But *Davis* cited what appears to be one of *Dawson*'s most-cited sentences: "the Constitution is not a per se barrier to the admission of evidence merely because the evidence involves conduct that is constitutionally protected." *See id.* at 360 (quoting *Davis* quoting *Dawson*, 503 U.S. at 161). Presumably, Baird cites to *Dawson* as possibly the next best case that might apply in this situation because *Dawson* dealt with punishment evidence. It is just not true, though, that *Baird* failed to apply *Dawson* or state-court precedent relying on associational-type cases. *See id.* at 360 (citing to *Davis*, 329 S.W.3d at 805 (association evidence at punishment); *Mason v. State*, 905 S.W.2d 570, 576 (Tex. Crim. App. 1995) (same); *Woodward v. State*, 170 S.W.3d 726, 729 (Tex. App.—Waco 2005, pet. ref'd) (same)). In short, the *Baird* court was aware of both *Lawrence* and *Dawson*. It cannot be faulted to for failing to extend *Lawrence* nor can it be faulted for failing to apply *Dawson*.

Additionally, because there is no clearly established Supreme Court precedent nor a clear due process prohibition to the introduction of evidence

14

related to sexual conduct, the non-retroactivity principle established in *Teague v. Lane* bars this Court from granting relief. *Teague* bars federal habeas courts from creating "a new rule" of constitutional law, that is, federal courts cannot "break[ ] new ground," "impose[ ] a new obligation on the States or the Federal Government," or issue a decision that was "not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). A conclusion that is "susceptible to debate among reasonable minds" is considered a "new rule" even if the result is "controlled or governed by earlier decisions." *Butler v. McKellar*, 494 U.S. 407, 415 (1990). Only when a decision merely restates existing law or simply applies already established law to a set of facts different from those which gave birth to the principle, is the decision considered to not be a "new" rule and therefore given retroactive application. *Id.*

In conclusion, Baird cannot show that there is clearly established Supreme Court precedent applying *Lawrence* to punishment. This Court should grant the Director's motion for summary judgment and deny relief.

### B. Baird Cannot Show Harm.

Baird claims that evidence that he engaged in constitutionally protected sexual conduct was inadmissible at sentencing. Fed. Pet. at 19. He cites *Zant v. Stephens* for the proposition that "not all evidence of 'character' qualifies as admissible aggravating evidence to be considered at the punishment phase of a criminal case." *See id.* at 20 (citing 462 U.S. 862, 885 (1983)). A trial court cannot consider, for example, factors such as "race, religion, or political affiliation." *See id.* (citing, for examples, *Zant*, 462 U.S. at

15

885, *Romer v. Evans*, 17 U.S. 620 (1996) (discrimination against homosexuals) and *Saldano v. Cockrell*, 267 F. Supp. 635, 642 (E.D. Tex. 2003) (considerations of race and ethnicity)).

First, to the extent that Baird argues the use of evidence that he engaged in constitutionally protected sexual conduct somehow violates state law, article 37.07 of the Code of Criminal Procedure, for example, then the claim is without merit since it does not involve a violation of federal law. *See Romano v. Oklahoma*, 512 U.S. 1, 10 (1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Second, to the extent that either *Lawrence* or *Dawson* applies, Baird has failed to show that the opinion of the Waco Court of Appeals was "contrary to" or involved an "unreasonable application of" either *Lawrence* or *Dawson.*

Last, Baird cannot show that he was harmed by the admission of this evidence. The standard for reviewing all trial court error in a federal habeas petition is outlined in *Brecht. See Brecht v. Abrahamson,* 507 U.S. 619 (1993). Baird must show that the trial court's errors had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 623. To prevail on claims of trial court error, a petitioner must establish that the error did more than merely affect the verdict. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). Instead, he must establish that it rendered the trial, as a whole, fundamentally unfair. *Id.* An error by the trial court renders the trial fundamentally unfair only if there is a reasonable probability that the verdict would have been different had the

16

trial been conducted properly. *See Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). Applying the federal harmless error standard, the error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

That a trial court judge presided over the introduction of this evidence purportedly inadmissible under *Lawrence* or *Dawson* Baird's job of showing harm nearly impossible. When reviewing a judge's decision in a bench trial, a reviewing court presumes that "[t]he prejudicial impact of erroneously admitted evidence . . . [is] substantially less than it might have been in a jury trial." *United States v. Cardenas*, 9 F.3d. 1139, 1156 (5th Cir. 1993) (internal quotations omitted). "[A] judge, sitting as a trier of fact, is presumed to have rested his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible." *Id.* (internal quotations omitted). Thus, "[a]ny error the judge makes in admitting evidence is . . . harmless if there exists other admissible evidence sufficient to support the conviction." *Id.*

Here again, the constitutional harm in violation of *Lawrence* or *Dawson* would occur, presumably, if the trial court punished Baird or increased his sentence solely because of his homosexuality or legal sexual practices rather than valid punishment considerations. But the primary punishment evidence consisted of Appellant's massive collection of over 60,000 images of child pornography, including those of very young boys in graphic situations. 5 RR 21, 23-28, 34, 96-97. The plea papers indicated that

17

ninety other counts of possession of child pornography were "barred in accordance with [article] 12.45" of the Texas Code of Criminal Procedure (Article 12.45). *See* Exhibit B at 8-9 (plea papers). Contrary to Baird's argument, references to homosexuality were not an effort to punish Baird for his sexual orientation. Possession of a massive amount of child pornography certainly counsels against probation, which he asked for, and justifies the maximum sentences he received. The trial court, through Baird's objections and case citation, was also well aware of what *Lawrence* prohibited, and its only reference to his sexual urges was being a "ticking time bomb" not the details of his adult preferences. 6 RR 6.

In short, one who is possession of this amount of child pornography has a near impossible task of convincing a state-court judge that he should get anything less than a maximum sentence regardless of what other evidence was introduced at trial. As indicated above, Baird had numerous character witnesses testifying in his behalf. But Baird was in possession of over 60,000 images of child pornography, consuming 211 gigabytes of space. Baird left little room for leniency. Baird cannot show that he was harmed under *Brecht*; therefore, his claims are without merit. This Court should grant the Director's motion for summary judgment and dismiss Baird's petition with prejudice.

## CONCLUSION

Baird has failed to show that the state-courts' adjudication on the merits was contrary to, or involved an unreasonable application of, Supreme Court precedent or that their determination was the product of an

18

unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). There are no genuine issues of material fact, and the Director is entitled to summary judgment as a matter of law. The Director respectfully requests that this Court grant his motion for summary judgment and sua sponte deny a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

                Respectfully submitted,

                GREG ABBOTT
                Attorney General of Texas

                DANIEL T. HODGE
                First Assistant Attorney General

                DON CLEMMER
                Deputy Attorney General
                  for Criminal Justice

                EDWARD L. MARSHALL
                Chief, Criminal Appeals Division

                <u>s/ Jon R. Meador</u>
                JON R. MEADOR*
*Attorney in Charge    Assistant Attorney General
                State Bar No. 24039051
                Southern District Bar No. 630275

                P.O. Box 12548, Capitol Station
                Austin, Texas   78711
                (512) 936-1400
                Facsimile No. (512) 936-1280
                jon.meador@texasattorneygeneral.gov

                ATTORNEYS FOR RESPONDENT

## NOTICE OF SUBMISSION

TO: Petitioner, James Baird, you are hereby notified that the undersigned attorney will bring the foregoing pleading before the Court as soon as the business of the Court will permit.

s/ Jon R. Meador
JON R. MEADOR
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October 2014 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Josh Barrett Schaffer
The Schaffer Firm
1301 McKinney, Suite 3100
Houston, Texas 77010
Email:josh@joshschafferlaw.com

s/ Jon R. Meador
JON R. MEADOR
Assistant Attorney General
