No. 10-10-00297-CR

IN THE TEXAS COURT OF APPEALS
TENTH DISTRICT
AT WACO

GREGG CARL BAIRD, Appellant

*v.*

THE STATE OF TEXAS

DIRECT APPEAL FROM THE 272nd DISTRICT COURT
OF BRAZOS COUNTY
TRIAL COURT CAUSE NUMBER 09-02494-CRF-272

BRIEF FOR APPELLANT

ORIGINAL

FILED
TENTH COURT OF APPEALS

MAY 0 4 2011

SHARRI ROESSLER, CLERK

Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue, Suite 100
Austin, Texas 78701

(512) 469-7943
(512) 474-5594 - facsimile

Attorney for Appellant
Gregg Carl Baird

ORAL ARGUMENT REQUESTED

No. 10-10-00297-CR

## IN THE TEXAS COURT OF APPEALS
## TENTH DISTRICT
## AT WACO

---

**GREGG CARL BAIRD, Appellant**

*v.*

**THE STATE OF TEXAS**

---

**DIRECT APPEAL FROM THE 272nd DISTRICT COURT
OF BRAZOS COUNTY
TRIAL COURT CAUSE NUMBER 09-02494-CRF-272**

---

**BRIEF FOR APPELLANT**

---

Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue, Suite 100
Austin, Texas 78701

(512) 469-7943
(512) 474-5594 - facsimile

Attorney for Appellant
Gregg Carl Baird

**ORAL ARGUMENT REQUESTED**

## Identity of Parties and Counsel

| | |
|---|---|
| Appellant: | Gregg Carl Baird |
| Appellate Counsel: | Richard E. Wetzel<br>Attorney at Law<br>1411 West Ave., Ste. 100<br>Austin, TX 78701 |
| Trial Counsel: | Jim James<br>Attorney at Law<br>P.O. Box 1146<br>Bryan, TX 77806<br>Bryan, TX 77803-3236 |
| Appellee: | The State of Texas |
| Appellate Counsel<br>And Trial Counsel: | William R. Turner<br>District Attorney<br>300 East 26th Street, Suite 310<br>Bryan, TX 77803 |
| Trial Judge: | Hon. Travis B. Bryan III |

# Table of Contents

Page

Identity of Parties and Counsel . . . . . . . . . . . . . .ii

Table of Contents . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . .iv

Statement of the Case . . . . . . . . . . . . . .1

Issues Presented . . . . . . . . . . . . . .2

Statement of Facts . . . . . . . . . . . . . .2

Summary of the Argument . . . . . . . . . . . . .9

Point of Error One . . . . . . . . . . . . .10

The trial court abused its discretion by denying Baird's second amended motion to suppress evidence (3 RR 86).

Point of Error Two . . . . . . . . . . . . . .25

The trial court abused its discretion by overruling objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence (5 RR 23, 51, 53, 59, 178, and 185).

Prayer . . . . . . . . . . . . . .30

Certificate of Service . . . . . . . . . . . . . .31

# Index of Authorities

**Constitution**                                                    **Page**

U.S. CONST. amend. XIV . . . . . . . .10, 28, 29

**Statutes**

TEX. CRIM. PROC. CODE art. 37.07, § 3(a)(1) . . . . . . . . . . . . .27

TEX. CRIM. PROC. CODE art. 38.23(a) . . . . . .9, 11, 20, 24

TEX. PEN. CODE.§ 1.07(a)(11) . . . . . . . . . . . .21

TEX. PEN. CODE § 30.05(a)(1) . . . . . . . .15, 17, 18

TEX. PEN. CODE § 30.05(b)(1) . . . . . . . . . . . .15

TEX. PEN. CODE § 33.01(1) . . . . . . . . . . . .15

TEX. PEN. CODE § 33.02(a) . . . . . . . .15, 17, 18

**Rule**

TEX. R. APP. P. 44.2(a) . . . . . . . . . . . .28

**Cases**

*Allison v. State*, 113 S.W.3d 476
(Tex. App. – Houston [1st Dist]. 2003, no pet.)     . . . . . . . . . . . . .18

*Brackens v. State*, 312 S.W.3d 831
(Tex. App. – Houston [1st Dist.] 2009, pet. ref'd)     . . . . . . . . . . . . .19

*Carroll v. State*, 911 S.W.2d 210
 (Tex.App.-Austin 1995, no pet.)     . . . . . . . . . . . . .20

*Ellett v. State*, 607 S.W.2d 545
(Tex. Crim. App. 1980)     . . . . . . . . . . . . .22

*Fox v. State*, 115 S.W.3d 550
(Tex. App. - Houston [14th Dist.] 2002, pet. ref'd) . . . . . . . . . . . . .27

*Granados v. State*, 85 S.W.3d 217
 (Tex. Crim. App. 2002) . . . . . . . . . . . . .24

*Gutierrez v. State*, 221 S.W.3d 680
(Tex. Crim. App. 2007) . . . . . . . . . . . . .12

*Guzman v. State*, 955 S.W.2d 85
(Tex. Crim. App. 1997) . . . . . . . . . . .11, 12

*Harris v. State*, 790 S.W.2d 568
(Tex. Crim. App. 1989) . . . . . . . . . . . . .29

*Jenschke v. State*, 147 S.W.3d 398
(Tex. Crim. App. 2004) . . . . . . . . . . . . .21

*Kothe v. State*, 152 S.W.3d 54
(Tex. Crim. App. 2004) . . . . . . . . . . . . .12

*Lawrence v. Texas*, 539 U.S. 558
(2003) . . . . . . . . .7, 25, 27

*Lujan v. State*, 331 S.W.3d 768
(Tex. Crim. App. 2011) . . . . . . . . . . . . .11

*Mayfield v. State*, 124 S.W.3d 377
(Tex. App. – Dallas 2003, pet. ref'd) . . . . . . . . . . . . .20

*Miller v. State*, ___ S.W.3d ___, 2011 WL 832126
(Tex. App. – Austin 2011, no pet.) . . . . . . . . . . . . .19

*Moses v. State*, 105 S.W.3d 622
(Tex. Crim. App. 2003) . . . . . . . . . . . . .26

*Mosley v. State*, 983 S.W.2d 249
(Tex. Crim. App. 1998) . . . . . . . . . . . . .29

*Muhammed v. State*, 331 S.W.3d 187

(Tex. App. – Houston [14th Dist.] 2011, pet. filed)  . . . . . . . . . . . . .18

*Pham v. State*, 175 S.W.3d 767
(Tex. Crim. App. 2005)  . . . . . . . . . . . . .20

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738
(5th Cir. 2008)  . . . . . . . . . . . . .28

*Rogers v. State*, 113 S.W.3d 452
(Tex. App. - San Antonio 2003, no pet.)  . . . . . . . . . . . . .24

*Rogers v. State*, 991 S.W.2d 263
(Tex. Crim. App. 1999)  . . . . . . . . . . . . .27

*State v. Garcia–Cantu*, 253 S.W.3d 236
 (Tex. Crim. App. 2008)  . . . . . . . . . . . . .12

*United States v. John*, 597 F.3d 263
(5th Cir. 2010)  . . . . . . . . . . . . .23

*United States v. Phillips*, 477 F.3d 215
(5th Cir. 2007)  . . . . . . . . . . . . .22

*Valtierra v. State*, 310 S.W.3d 442
(Tex. Crim. App. 2010)  . . . . . . . . . . . . .18

*Villarreal v. State*, 935 S.W.2d 134
(Tex. Crim. App. 1996)  . . . . . . . . . . . . .24

*Wesbrook v. State*, 29 S.W.3d 103
(Tex. Crim. App. 2000)  . . . . . . . . . . . . .29

*Williams v. State*, 958 S.W.2d 186
(Tex. Crim. App. 1997)  . . . . . . . . . . . . .29

*Wong Sun v. United States*, 371 U.S. 471
(1963)  . . . . . . . . . . . . .20

*Zant v. Stephens*, 462 U.S. 862
(1983)  . . . . . . . . . . . . .28

## Statement of the Case

This is an appeal from a criminal proceeding. On June 11, 2009 Baird was indicted by a Brazos County grand jury for 13 counts of possession of child pornography on May 13, 2009 (1 CR 1). A motion to suppress the pornography was filed (1 CR 74). Following a hearing, the trial court denied the motion to suppress (3 RR 86). Baird entered pleas of guilty to the first ten counts of the indictment (4 RR 9). Baird reserved his right to appeal the denial of the motion to suppress (4 RR 7, 13). The pleas were entered as part of a plea agreement which left the punishment decision to the trial court (4 RR 8, 7 RR SEX 2). The court withheld a finding of guilt pending sentencing (4 RR 13). The trial court found Baird guilty of ten counts of possession of child pornography (6 RR 4). The court assessed punishment on count one at ten years, the five year sentence on count two was cumulated on the sentence from count one, a suspended ten years sentence on count three was cumulated on count two, and ten years each on counts four through ten to run concurrently with count one (6 RR 4-5). He was sentenced in open court on July 29, 2010 (6 RR 5). Notice of appeal was timely filed (1 CR 111). The trial court certified Baird's right to appeal (1 CR 147).

## Statement of the Issues

Point of Error One

The trial court abused its discretion by denying Baird's second amended motion to suppress evidence (3 RR 86).

Point of Error Two

The trial court abused its discretion by overruling objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence (5 RR 23, 51, 53, 59, 178, and 185).

## Statement of Facts

Baird hired Dawn Renee Killien to stay at his home and take care of his dog while he was on a ten day vacation (2 RR 14).  She met with Baird on two occasions before he left on his vacation (2 RR 16).  He walked her through the house (2 RR 16).  He showed her his bedroom which was the master bedroom and connected bath (2 RR 17).  He told her to "help yourself to everything" while in the kitchen opening cabinets and showing her various items (2 RR 19, 20).

Killien stayed in a guest bedroom while at Baird's home (2 RR 41).  Before leaving for vacation, Baird told her to keep the door to his bedroom closed because he did not want the dog in his bedroom (2 RR 41).  Baird told Killien to keep the door to his bedroom closed both when she was gone and when she was in the home (2 RR 43-44).  Baird never told Killien she could use the computer in his bedroom (2 RR 46).

On May 8, 2009 Killien opened the door to Baird's bedroom, entered the bedroom, and accessed his computer (2 RR 21). She intended to listen to music on the computer (2 RR 21). She wanted to record some music from a compact disk, save it on the computer, and then transfer the recording to her telephone (2 RR 21). She "woke up" the computer by shaking the mouse (2 RR 22). The computer was not password protected (2 RR 25). The recent documents icon appeared on the screen of the monitor (2 RR 23). She opened the recent documents folder to delete two songs she had downloaded onto the computer (2 RR 23). Within the recent documents folder, she saw file names suggestive of child pornography (2 RR 23). She opened the recycle bin of the computer and saw thumbnail images of child pornography (2 RR 24). She opened a video stored on the computer which contained images of child pornography (2 RR 26). After first consulting with others including an attorney, Killien reported what she had seen to the police three days later on May 11, 2009 (2 RR 29, 47, 7 RR CEX 1).

Michael Jose is a detective with the College Station Police Department (2 RR 60). He became aware of the child pornography on Baird's computer on May 11, 2009 when Killien told a crime analyst of her discovery (2 RR 60). Jose spoke with Killien and told her not to re-access Baird's computer (2 RR 62). Based the information given to him by Killien, Jose prepared a

search warrant affidavit on May 13, 2009 (7 RR CEX 1 at 3-5).  The search warrant for Baird's home issued on May 13, 2009 and authorized agents to seize various electronic devices capable of electronically storing child pornography (7 RR CEX 2).  The warrant was executed on May 13, 2009 and law enforcement agents seized 25 different items (7 RR CEX 2 at 10).  Child pornography was found on five devices seized from Baird's home (5 RR 21).

William Odom is a computer forensics expert (2 RR 64).  He examined the hard drive from Baird's computer (2 RR 65).  Odom was able to determine the computer was accessed on May 8, 2009 at 6:00 pm (2 RR 66).  The access was consistent with a compact disk being inserted to play music (2 RR 71).  Odom found that a file in the recent documents folder was opened three hours later at 9:15 pm (2 RR 71, 76, 82).  He determined the recycle bin was accessed (2 RR 72).  Odom found thumbnail images of child pornography in the recycle bin of Baird's computer (2 RR 74).  He was able to determine a video recording containing child pornography had been accessed at 9:15 pm on May 8, 2009 (2 RR 76, 82).

Odom found no evidence to indicate Killien had recorded music on the computer (2 RR 80, 3 RR 40).  He likewise saw nothing to indicate she attempted to delete an item from the computer (2 RR 80).  Odom acknowledge that in an online chat with others, Killien indicated she had

changed a view setting on the computer to permit thumbnail viewing of items (3 RR 36).

Rose Hubbard is a computer forensic examiner (2 RR 87).  She examined the hard drive from Baird's computer and found no indication Killien had recorded music from a compact disk (2 RR 89).  The computer was accessed at 9:06 pm and the user accessed a video recording in the recent documents file (2 RR 90).  Hubbard found nothing to indicate the computer had been accessed earlier than 9:06 pm (2 RR 95).

Rose disputed that the activity of 6:06 pm was consistent with a compact disk being inserted into the computer (3 RR 8).  She believed the activity at 6:06 pm was consistent with the computer automatically updating itself (3 RR 9).  Activity on the computer indicated the internet was accessed at 9:54 pm (3 RR 25).

Baird testified the child pornography was recovered from the computer in his bedroom (3 RR 55).  Before leaving on his vacation, Baird told Killien the door to his bedroom was to remain shut (3 RR 56).  Baird's computer was located in his bedroom (3 RR 56).  Baird never told Killien she could enter his bedroom or use his computer (3 RR 57).  He had an expectation of privacy in the computer (3 RR 57).  Baird told Killien she could help herself

to any food she found in the home (3 RR 63). Baird thought he had turned his computer off when he left on vacation (3 RR 64).

Counsel for Baird argued the evidence should be suppressed because Killien obtained information about the content of computer by committing the offenses of breach of computer security and criminal trespass (3 RR 71, 74). In relation to Baird's article 38.23 argument, the State maintained Killien had Baird's consent to go in his bedroom and use his computer (3 RR 79). The State additionally argued Baird had no expectation of privacy in his computer because it was not password protected (3 RR 82). The trial court denied the motion to suppress (3 RR 86).

Baird entered pleas of guilty to the first ten counts of the indictment (4 RR 9). Baird reserved his right to appeal the denial of the motion to suppress (4 RR 7, 13, 7 RR SEX 2). The pleas were entered as part of a plea agreement which left the punishment decision to the trial court (4 RR 8, 7 RR SEX 2). The court withheld a finding of guilt pending sentencing (4 RR 13). The plea proceeding included a judicial confession in which Baird acknowledged that items seized from his computer contained child pornography (4 RR 11, 7 RR SEX 1 at 3).

Sentencing was before the court (5 RR 8). Nathan McCune is an investigator with the Brazos County District Attorney's Office (5 RR 13).

Baird renewed his objection to any testimony concerning items recovered from the computer seized at his home (5 RR 15). Child pornography was found on five of the 17 devices seized from Baird's home (5 RR 21). Baird objected to the admissibility of any evidence concerning adult male bondage and homosexual conduct as violating due process under *Lawrence v. Texas*[1] (5 RR 22). The trial court overruled the objection and a running objection was granted (5 RR 23). McCune found some 62,000 images of child pornography on the five devices (5 RR 24). Baird's objection to the admissibility of any images depicted him in bondage or sadomasochistic poses was overruled and a running objection granted (5 RR 51, 53). Over objection, McCune stated he found images of Baird engaged in sadomasochistic conduct with himself and other male adults (5 RR 53-54). Over objection, the trial court admitted chat logs of Baird's sexual proclivities and efforts to arrange sexual liaisons with strangers he met online (5 RR 59).

Michael Sheets was previously employed by the Boy Scouts of America (5 RR 66). He produced records showing Baird's affiliation with the Boy Scouts both as a youth participant and an adult volunteer (5 RR 69).

---

[1] 539 U.S. 558 (2003).

Kindale Pittman was previously employed as a patrol officer with the Somerville Police Department (5 RR 84).   On May 12, 2004 at approximately 11:00 pm, he observed a vehicle speed away from Somerville High School (5 RR 86).   The vehicle became stuck in a ditch (5 RR 89). Pittman identified Baird as the driver of the vehicle (5 RR 89).   Baird was arrested for evading detention (5 RR 91).

Baird testified he was ashamed and embarrassed by his activities in downloading child pornography (5 RR 145).   He denied any inappropriate contact with underage youth (5 RR 148).   The trial court overruled Baird's objection to cross-examination inquiring as to his activities in seeking out adult sexual partners on the internet for consensual sadomasochistic encounters (5 RR 178).   The trial court overruled Baird's due process objection to cross-examination concerning the purchase and utilization of sexual pleasure devices (5 RR 185).

Baird presented character evidence from Thomas Rogers (5 RR 98), James Miller (5 RR 116), Phillip Hathaway (5 RR 124), Larry Miller (5 RR 126), John Rogers (5 RR 135), Kimberly Roese (5 RR 138), Karen Baird (5 RR 204), and John Baird (5 RR 210).

Counsel for Baird sought community supervision (5 RR 226).   The State made specific references to Baird's online sexual chats, ordering sexual

- 8 -

devices, acting out his sexual fantasies, consensual adult activities, and seeking sexual liaisons with adult strangers on the internet (5 RR 228, 229, 230, 232, 233, 234).   The State argued community supervision was not warranted (5 RR 234).   The State sought the maximum sentence for each count with the sentences cumulated for a 100 year sentence (5 RR 235, 236).

The trial court found Baird guilty of ten counts of possession of child pornography (6 RR 4).   The court assessed punishment on count one at ten years, the five year sentence on count two was cumulated on the sentence from count one, a suspended ten years sentence on count three was cumulated on count two, and ten years each on counts four through ten to run concurrently with count one (6 RR 4-5).   He was sentenced in open court on July 29, 2010 (6 RR 5).

### Summary of the Argument

Two points of error are presented asserting an abuse of discretion by the trial court admitting evidence.   The first point of error maintains the motion to suppress evidence should have been granted.   Evidence which was the basis of the prosecution was discovered while Baird's dog sitter committed the offenses of criminal trespass and breach of computer security in Baird's home.   Law enforcement officers obtained a search warrant based on the dog sitter's observations during her criminal conduct.   TEX. CRIM.

PROC. CODE art. 38.23(a) compels the suppression of the evidence upon which Baird was convicted. Even under the onerous standard of review applicable to the point of error, Baird should prevail. The trial court's findings are contrary to the evidence presented at the suppression hearing and its conclusions cannot withstand either deferential or de novo scrutiny.

The second point of error concerns evidence erroneously admitted in relation to sentencing. The State offered a wealth of evidence to show Baird's sexual propensities. The conduct offered and admitted was constitutionally protected conduct under the Due Process Clause of the Fourteenth Amendment to the Constitution. It had no probative value to the court's sentencing decision. The evidence did not go to Baird's character or an extraneous offense or bad act for which he could be held criminally responsible. The evidence was offered to more harshly punishing Baird for otherwise engaging in constitutionally protected conduct. A sentencing decision based on the defendant's otherwise protected conduct is improper and irrational. The error is constitutional and the record is such that the Court will not be able to find it harmless beyond a reasonable doubt.

### Point of Error One

**The trial court abused its discretion by denying Baird's second amended motion to suppress evidence (3 RR 86).**

## A.  The Motion to Suppress

Relying on TEX. CRIM. PROC. CODE art. 38.23, Baird filed a motion to suppress evidence arguing Killien's access of his computer was unlawful and that during her criminal conduct, she obtained evidence which formed the basis of the search warrant obtained by the authorities (1 CR 74). During the suppression hearing, counsel for Baird argued the evidence should be suppressed because Killien obtained the information about the content of the computer while engaged in criminal conduct (2 RR 7). Specifically, counsel argued Killien obtained information concerning Baird's computer while committing the offenses of breach of computer security and criminal trespass (2 RR 36-38).  The trial court denied the motion to suppress (3 RR 86).  It entered findings of fact and conclusions of law on the issues addressed in the suppression hearing (2 CR 321).

## B.  Standard of Review

When reviewing a trial judge's ruling on a suppression motion, the applicable standard is abuse of discretion.  *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). The trial judge's determination of facts is afforded almost total deference, provided that those determinations are supported by the record.  *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  As a general rule, appellate courts view the evidence in the light

most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion. *State v. Garcia–Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (citing *Gutierrez v. State,* 221 S.W.3d 680, 687 (Tex. Crim. App. 2007)). Appellate courts afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Id.* When reviewing mixed questions of law and fact, courts afford great deference to the trial judge's rulings, provided that those rulings depend upon evaluations of credibility and demeanor. *Guzman,* 955 S.W.2d at 89. When credibility and demeanor were irrelevant, courts conduct a de novo review. *Kothe v. State,* 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). All purely legal questions are reviewed de novo. *Id.*

### C. Challenged Findings of Fact

After denying the motion to suppress, the trial court entered 19 findings of fact (2 CR 321). Baird challenges the following findings which are not supported by the record and therefore entitled to no deference from this Court on appeal.

**8. Gregg Baird placed no limits or restrictions on Dawn Killian access to his home.**[2]

---

[2] Throughout the findings, the trial court spells Killien's name as Killian. Baird uses the spelling as reflected in the suppression hearing (2 RR 12).

**9.     Specifically, Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his bedroom.**

**10.     Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his computer.**

These findings do not comport with and are contrary to the evidence presented on the motion to suppress. Killien testified Baird told her to keep the door to his bedroom closed both when she was gone and when she was in the home (2 RR 41, 43-44). Baird testified he told Killien to keep the door to his bedroom closed (3 RR 56). Killien testified that while in the kitchen with Baird, he opened various cabinets showing Killien the location of various food items and told Killien to help herself to anything (2 RR 19-20, 3 RR 63). Both Killien and Baird testified she was not told she could use the computer in Baird's bedroom (1 RR 37, 3 RR 57). The computer accessed by Killien was located in Baird's bedroom (2 RR 21). Killien understood she was not to enter the roommate's bedroom or office (2 RR 19).

**11. Gregg Baird took no steps to limit or restrict access to his bedroom or computer, and took no steps to protect the information on his computer through the use of passwords, encryptions, or other such methods.**

This finding does not comport with and is contrary to the evidence presented on the motion to suppress. Killien testified Baird told her to keep the door to his bedroom closed both when she was gone and when she was in

the home (2 RR 41, 43-44).  Baird testified he told Killien to keep the door to

his bedroom closed (3 RR 56).   The computer accessed by Killien was

located in Baird's bedroom (2 RR 21).   Both Killien and Baird testified

Killien was not told she could use the computer in his bedroom (2 RR 46, 3

RR 57).   The absence of passwords, encryptions, and other methods of

security is meaningless in view of Baird's directions for Killien to keep the

door to the room storing the computer closed.

**13.   Gregg Baird told Dawn Killian to "help herself to anything" or words to that effect.**

This finding does not comport with and is contrary to the evidence

presented on the motion to suppress and could be construed that Baird gave

Killien free rein in his home.  Killien testified that while in the kitchen with

Baird, he opened cabinets showing Killien the location of various food items

and told Killien to help herself to anything (2 RR 19-20, 3 RR 63).

**15.   Dawn Killian's access to the bedroom and the computer was reasonably foreseeable to Gregg Baird.**

This finding does not comport with and is contrary to the evidence

presented on the motion to suppress.  Killien testified Baird told her to keep

the door to his bedroom closed both when she was gone and when she was in

the home (2 RR 41, 43-44).  Baird testified he told Killien to keep the door to

his bedroom closed (3 RR 56).   The computer accessed by Killien was

located in Baird's bedroom (2 RR 21). Both Killien and Baird testified Killien was not told she could use the computer in his bedroom (2 RR 46, 3 RR 57). In view of the instructions to keep the bedroom door closed, it was not reasonably foreseeable that Killien would disobey those instructions, open the bedroom door, enter the bedroom and proceed to access the computer located in Baird's bedroom.

**16.    Dawn Killian's access to Gregg Baird's computer was superficial and the files she accessed were accessed from the desktop of the computer requiring not more than two (2) mouse clicks to access and view.**

This finding is meaningless in relation to the controversy at hand. The evidence at the suppression hearing showed Killien entered the bedroom through a door which she was told was to remain closed and knowingly accessed Baird's computer without Baird's consent. Her actions constituted the offenses criminal trespass and breach of computer security under TEX. PEN. CODE §§ 30.05(a)(1) and 33.02(a). Whether her entry and access were superficial is meaningless.[3]

Further, the finding does not comport with and is contrary to the evidence presented on the motion to suppress. Killien admitted that she opened the door to Baird's bedroom and accessed his computer (2 RR 21).

---

[3] "Entry" means the intrusion of the entire body. TEX. PEN. CODE § 30.05(b)(1). "Access" includes the retrieval of data from a computer or making use of any resource of a computer. TEX. PEN. CODE § 33.01(1).

She intended to listen to music on the computer (2 RR 21). She wanted to record some music from a compact disk, save it on the computer, and then transfer the recording to her telephone (2 RR 21). She "woke up" the computer by shaking the mouse (2 RR 22). The computer was not password protected (2 RR 25). The recent documents icon appeared on the screen of the monitor (2 RR 23). She opened the recent documents folder to delete two songs she had downloaded onto the computer (2 RR 23). Within the recent documents folder, she saw file names suggestive of child pornography (2 RR 23). She opened the recycle bin of the computer and saw thumbnail images of child pornography (2 RR 24). She opened a video stored on the computer which contained images of child pornography (2 RR 26). After first consulting with others in person and by way of an online chat room, Killien reported what she had seen to the police three days later on May 11, 2009 (2 RR 29, 7 RR CEX 1).

### 17.   Dawn Killian had no intent to invade the privacy of Gregg Baird.

This finding is meaningless in relation to the controversy at hand. Killien entered Baird's bedroom after having been instructed to keep the door closed and accessed his computer without his consent. Neither the offense of criminal trespass nor the offense of breach of computer security requires a

showing the offender intended to invade the privacy of another.  See Tex.

Pen. Code §§ 30.05(a)(1) and 33.02(a).

### D.  Challenged Conclusions of Law

After denying the motion to suppress, the trial court entered seven

conclusions of law (2 CR 322).  Baird challenges the following conclusions

of law findings which are unsupportable under either a deferential or de novo

standard of review.

> **1.    Dawn Killian committed no criminal offense which led to discovery of evidence against the defendant, Gregg Baird.**
>
> **2.    Specifically, Dawn Killian did not commit the offenses of Burglary of a Habitation (30.02 Texas Penal Code), Criminal Trespass (30.05 Texas Penal Code), or Breach of Computer Security (33.02 Texas Penal Code).**
>
> **5.    Article 38.23 of the Texas Code of Criminal Procedure does not apply to the facts of this case because no criminal offense was committed by Dawn Killian in accessing Gregg Baird's bedroom or computer.**

These conclusions are based on the faulty findings challenged above.

They contain the common element of an erroneous conclusion that Killien

committed no criminal offense when she entered Baird's bedroom and

accessed his computer.

Killien testified Baird told her to keep the door to his bedroom closed

(2 RR 41, 43-44).  Baird testified he told Killien to keep the door to his

- 17 -

bedroom closed (3 RR 56).  The computer accessed by Killien was located in Baird's bedroom (2 RR 21).  Both Killien and Baird testified Killien was not told she could use the computer in his bedroom (2 RR 46, 3 RR 57).

Killien entered the bedroom after having been told by Baird to keep the door closed.  Baird had not consented to her entry and previously told her to keep the door to the bedroom shut thereby putting her on notice that entry was forbidden.  Killien's actions constituted the offense of criminal trespass under TEX. PEN. CODE § 30.05(a)(1). *See Valtierra v. State*, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010) (recognizing an owner may limit consent to enter particular portions of property); *Allison v. State*, 113 S.W.3d 476, 478 (Tex. App. – Houston [1st Dist]. 2003, no pet.) (finding consent to enter a habitation does not extend to rooms in which owner has manifested an intent to exclude others).

Killien accessed Baird's computer which was located in the bedroom. She did not have Baird's consent to use the computer.  As such, her actions constituted the offense of breach of computer security under TEX. PEN. CODE § 33.02(a). *See Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App. – Houston [14th Dist.] 2011, pet. filed) (observing that to obtain a conviction under this statute, the State must prove that the defendant knowingly accessed a computer, computer network, or computer system, knowing that

this act was without the effective consent of the owner). *Compare Miller v. State*, ___ S.W.3d ___, 2011 WL 832126, at *8 (Tex. App. – Austin 2011, no pet.) (finding no breach of computer security when police officer, on multiple occasions, left his thumb drive containing child pornography unattended, unidentified, and unsecured in an area open to his co-workers and other individuals); and *Brackens v. State*, 312 S.W.3d 831, 839 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd) (finding no breach of computer security when child pornography discovered by repairman after defendant had given him his computer to copy and back up files on computer).

Michael Jose is a detective with the College Station Police Department (2 RR 60). He became aware of the child pornography on Baird's computer on May 11, 2009 when Killien told a crime analyst of her discovery on his computer (2 RR 60). Jose spoke with Killien and told her not to re-access Baird's computer (2 RR 62). Based the information given to him by Killien, Jose prepared a search warrant affidavit on May 13, 2009 (7 RR CEX 1 at 3-5). The search warrant for Baird's home issued on May 13, 2009 and authorized agents to seize various electronic devices capable of electronically storing child pornography (7 RR CEX 2). The warrant was executed on May 13, 2009 and law enforcement agents seized 25 different items (7 RR CEX 2

at 10).   Child pornography was found on five devices seized from Baird's home (5 RR 21).

Without Killien's criminal activities, the authorities would not have known of Baird's possession of the child pornography nor had a basis to seek a search warrant.   There is a direct correlation between her unlawful criminal trespass and breach of computer security and the recovery of the items upon which the prosecutions were based.   The items are tainted by her illegality and should have been suppressed as fruit of the poisonous tree.   *See Wong Sun v. United States,* 371 U.S. 471, 488 (1963).   During the suppression hearing, the State made no effort to disprove the causal connection shown or make an attenuation of the taint argument.   *See Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim. App. 2005) (recognizing that after the defendant produces evidence of a causal connection, the State may either disprove the causal connection or make an attenuation-of-taint argument).

When a defendant challenges the admissibility of evidence under TEX. CRIM. PROC. CODE art. 38.23(a) on the ground it was wrongfully obtained by a private person in a private capacity, the defendant must establish that the private person obtained that evidence in violation of law. *See Mayfield v. State,* 124 S.W.3d 377, 378 (Tex. App. – Dallas 2003, pet. ref'd); *Carroll v. State,* 911 S.W.2d 210, 220 (Tex.App.-Austin 1995, no pet.).   Baird asserts

he has made such showing in this case by virtue of Killien acquiring evidence leading to the search of his home and prosecution as a result of her commission of the criminal offenses of criminal trespass and breach of computer security.

Finally, there is no evidence to suggest Killien entered Baird's bedroom and accessed his computer with the intent to find evidence of a crime or the intent to turn such unknown evidence over to the authorities. She waited three days before notifying the authorities after first consulting with others in an online chat, a lawyer, and her supervisor at work. *See Jenschke v. State*, 147 S.W.3d 398, 403 (Tex. Crim. App. 2004) (finding art. 38.23 applicable when a private person broke into defendant's truck to acquire evidence of a crime and without intent to turn over the property to an officer).

### 3. Dawn Killian had Gregg Baird's effective consent to access his bedroom and computer.

Baird maintains that upon careful examination of the record, this conclusion of law cannot stand.  Consent means assent in fact, whether express or apparent. TEX. PEN. CODE § 1.07(a)(11).  Both Killien and Baird testified Killien was not told she could use the computer in his bedroom (2 RR 46, 3 RR 57).  Killien testified Baird told her to keep the door to his bedroom closed both when she was gone and when she was in the home (2

RR 41, 43-44).   Baird testified he told Killien to keep the door to his bedroom closed (3 RR 56).  The computer accessed by Killien was located in Baird's bedroom (2 RR 21).

Based on the above evidence, there was no basis for the trial court to conclude Baird consented to Killien's entry into the bedroom or access of his computer.   Express consent is not present and no apparent consent was shown.  *See Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980) (upholding burglary conviction involving entry through an open door of an abandoned building based on owner's lack of consent to entry).

In the alternative, Baird maintains Killien exceeded any authorization to use the computer which she may have believed she was given.  Courts typically analyze the scope of a user's authorization to access a protected computer on the basis of the expected norms of intended use or the nature of the relationship established between the computer owner and the user. *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007).  Under the "intended-use analysis," a student who used his privilege of access to a university's computer was not authorized to access parts of the system to which he had not been given a password.  *Id.* at 220-21.  Likewise, the perpetration of fraud is not an intended use of a computer even if the user is

authorized to view and print all of the information that she accessed.  *See United States v. John*, 597 F.3d 263, 271 (5th Cir. 2010).

The evidence from the suppression hearing does not support a conclusion Killien was led to believe she could open and view private files on the computer, view a private video, open the reclycle bin, and change the view settings of the computer.  Her actions were beyond a mere use of the computer, they were a means to snoop on Baird and his documents while engaged in criminal conduct.  There is nothing in the record to indicate Killien was under the impression she had consent to engage in such activities while accessing Baird's computer.

### 4.   Gregg Baird had no reasonable expectation of privacy in the contents of his computer.

Baird objects to this conclusion because it ignores the evidence presented during the suppression hearing and does not comport with the law. In view of his instructions to keep the bedroom door closed, Baird's expectation of privacy in his bedroom and computer was reasonable (3 RR 57).   That expectation was violated when Killien disobeyed those instructions, opened the door to his bedroom, entered the bedroom, and proceeded to access the computer located in the bedroom.

Factors that courts may consider in determining whether an expectation of privacy is objectively reasonable, including: (1) whether the

accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002); *Villarreal,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The factors listed above are applicable to an expectation of privacy in a place as well as in files stored on a computer. *Rogers v. State,* 113 S.W.3d 452, 457 (Tex. App. - San Antonio 2003, no pet.). All of the above factors weigh in favor of Baird's legitimate expectation of privacy in his home and the possessions contained therein. The trial court erred in concluding otherwise.

### E. Conclusion

Baird maintains that even under the onerous standard of review applicable to the point of error, he should prevail. The trial court's findings are contrary to the evidence presented and its conclusions cannot withstand either deferential or de novo scrutiny. The basis of the prosecution was discovered while Killien was committing at least two criminal offenses. TEX. CRIM. PROC. CODE art. 38.23(a) compels the suppression of the

evidence upon which Baird was convicted.   The trial court abused its discretion in denying the motion to suppress the evidence.

**Point of Error Two**

**The trial court abused its discretion by overruling objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence (5 RR 23, 51, 53, 59, 178, and 185).**

Sentencing was before the court (5 RR 8).   Baird objected to the admissibility of any evidence concerning adult male bondage and homosexual conduct as violating due process under *Lawrence v. Texas*[4] (5 RR 22).   The State claimed it was offering the evidence to give the court a complete and full picture of this Baird's "sexual propensities" (5 RR 23). The trial court overruled the objection and a running objection was granted (5 RR 23).

Baird's objection to the admissibility of any images depicted him in bondage or sadomasochistic poses was overruled and a running objection granted (5 RR 51, 53).   McCune found images of Baird engaged in sadomasochistic conduct with himself and other adults (5 RR 53-54).   Trial court admitted chat logs of Baird's sexual proclivities and efforts to arrange homosexual liaisons with strangers he met online (5 RR 59).

---

[4] 539 U.S. 558 (2003).

The trial court overruled Baird's objection to cross-examination inquiring as to his activities in seeking out adult sexual partners on the internet for consensual homosexual and sadomasochistic encounters (5 RR 178).   The trial court overruled Baird's due process objection to cross-examination concerning the purchase and utilization of sexual gratification devices (5 RR 185).

During argument at sentencing, the State made specific references to Baird's online sexual chats, ordering sexual devices, acting out his sexual fantasies, consensual adult activities, and reaching out on the internet for sexual liaisons with adult strangers (5 RR 228, 229, 230, 232, 233, 234).  The State argued community supervision was not warranted (5 RR 234).   The State sought the maximum sentence for each count with the sentences cumulated for a 100 year sentence (5 RR 235, 236).

The trial court found Baird guilty of ten counts of possession of child pornography (6 RR 4).  The court assessed punishment at the maximum of a ten year sentence on nine of the ten counts (6 RR 4-5).  Upon sentencing Baird, the trial court made specific reference to one of the online homosexual chats by Baird concerning his sexual urges (6 RR 6).

A trial court has discretion to decide the admissibility of evidence, and, absent an abuse of discretion, its rulings will not be overturned.  *Moses v.*

*State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  To determine whether a trial court has abused its discretion, an appellate court should consider whether the trial court acted without reference to the pertinent guiding rules and principles; that is, whether the court acted arbitrarily or unreasonably. *Fox v. State*, 115 S.W.3d 550, 558 (Tex. App. - Houston [14th Dist.] 2002, pet. ref'd).

TEX. CRIM. PROC. CODE art. 37.07, § 3(a)(1) provides in part that, during the punishment phase, the State may offer evidence:

> [A]s to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

The Court of Criminal Appeals has observed that, in determining what is relevant to sentencing, the important question is what is helpful to the sentencing authority in determining the appropriate sentence for a particular defendant in a particular case. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).  Consenting adults enjoy a due process right to engage in sexual practices common to a homosexual lifestyle. *Lawrence v. Texas*, 539

- 27 -

U.S. 558, 578 (2003).  The government cannot intervene in such conduct or make it criminal.  *Id.*  Correspondingly, the government may not burden the due process right of an individual who wants to legally use a safe sexual device during private intimate moments alone or with another.  *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008).   Taking constitutionally impermissible factors into account as a basis to impose a sentence requires the sentence to be set aside.  *Zant v. Stephens*, 462 U.S. 862, 885 (1983).

The State conceded at sentencing it was offering the complained of evidence to show Baird's sexual propensities.  That was not permissible because the conduct is constitutionally protected conduct under the Due Process Clause of the Fourteenth Amendment to the Constitution.  It could not play a part in the court's sentencing decision.  The evidence did not demonstrate Baird's character or an extraneous offense or bad act for which he could be held criminally responsible.  The evidence was offered solely to more harshly punishing Baird for otherwise engaging in constitutionally protected conduct.  A sentencing decision based on the defendant's otherwise protected conduct is improper and irrational.

This Court should apply a TEX. R. APP. P. 44.2(a) constitutional harm analysis to due process error present.  As such, the Court is compelled to

remand for a new punishment hearing unless it determines beyond a reasonable doubt that the error did not contribute to the Baird's punishment. *See Williams v. State,* 958 S.W.2d 186, 194 (Tex. Crim. App. 1997). In applying the harmless error test, the primary question is whether there is a reasonable possibility that the error might have contributed to the punishment. *See Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The analysis should not focus on the propriety of the sentences actually assessed; instead, the Court should calculate as much as possible the probable impact on the sentence of the erroneously admitted evidence. *See Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). Relevant considerations include the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a sentencing authority would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).

In this case, the source of the error was the State's repeated offering of evidence and jury argument seeking greater punishment in violation of Baird's due process rights. The State emphasized the error at every available opportunity during punishment including direct examination of its own witnesses, cross-examination of Baird, and jury argument. The collateral

implications of the error are important as implicating rights guaranteed under the Due Process Clause of the Fourteenth Amendment.   Considering the prominence the evidence and jury argument played in sentencing, it is probable the error impacted the sentencing judge when he assessed the maximum punishment in nine of the ten convictions.  Finally, declaring the instant error harmless will simply empower the State the commit constitutional error with impunity knowing an appellate court safety net will salvage the conviction.  This Court cannot find beyond a reasonable doubt that the error did not contribute to the Baird's punishment.

## Prayer

Wherefore, premises considered, Baird prays this honorable Court will reverse the judgment and remand to the trial court, remand for a new punishment hearing, or enter any other relief appropriate under the law and the facts.

Respectfully submitted,

Richard E. Wetzel
State Bar No. 21236300

1411 West Avenue
Suite 100

Austin, Texas 78701

(512) 469-7943
(512) 474-5594 - fax

Attorney for Appellant
Gregg Carl Baird

## Certificate of Service

This is to certify a true and correct copy of this pleading  was mailed, first class prepaid postage, to Counsel for the State of Texas, Doug Howell, Assistant District Attorney, 300 E. 26th Street, Suite 310, Bryan, Texas, 77803, on this the 4th day of May, 2011.

Richard E. Wetzel
Attorney for Appellant
Gregg Carl Baird

- 31 -