IN THE COURT OF APPEALS
FOR THE TENTH DISTRICT OF TEXAS AT WACO

| | | |
|---|---|---|
| **GREGG CARL BAIRD,** | § | |
| APPELLANT | § | |
| | § | |
| | § | No.   **10-10-00297-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

APPEALED FROM CAUSE NUMBER 09-02494-CRF-272 IN THE 272ND JUDICIAL DISTRICT COURT OF BRAZOS COUNTY, TEXAS, THE HONORABLE TRAVIS BRYAN III, DISTRICT JUDGE PRESIDING.

§ § §
*STATE'S BRIEF*
§ § §

**BILL TURNER**
District Attorney
Brazos County, Texas

The State requests oral argument.          **JEFFREY GARON**
Assistant District Attorney
300 E. 26th St., Suite 310
Bryan, Texas 77803
State Bar No. 00790746
(979) 361-4320
FAX (979) 361-4368

**RAY THOMAS &**
**SHANE PHELPS** (former assistant)
Trial Attorneys

FILED
TENTH COURT OF APPEALS

AUG 0 4 2011

SHARRI ROESSLER, CLERK
PM 08-02-11

ORIGINAL

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... ii

INDEX OF AUTHORITIES .................................................................................... iv

STATEMENT REGARDING ORAL ARGUMENT ......................................... 1

STATEMENT OF THE CASE .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

SUMMARY OF THE STATE'S ARGUMENTS ................................................... 5

*State's Reply to Appellant's First Point of Error*:

Although Appellant claims that the trial court abused its discretion by denying his motion to suppress his houseguest's discovery of child pornography on his computer, the record supports the trial court's findings and the conclusions that the search was legal. The findings and conclusions provided numerous reasons establishing Appellant's houseguest legitimately accessed Appellant's computer, did not infringe upon his right to privacy in his home, and disbelieve the testimony that she trespassed or otherwise illegally accessed his computer.

*State's Reply to Appellant's Second Point of Error*:

Contrary to Appellant's claims that the trial court abused its discretion by overruling his constitutional objection to admitting evidence related to his sexual proclivities, Appellant failed to obtain permission to appeal the issue after entering into a plea bargain. Notwithstanding the jurisdictional issue, the Constitution neither provides a constitutionally protected right to privacy in all sexual activities nor prevents the introduction of evidence of homosexual or alternative sexual practices. Further, the State's care to prevent Appellant from punishment for his sexual orientation ensured the references harmless beyond a reasonable doubt.

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER ONE: ............... 6
**(Denial of Motion to Suppress)**

Facts related to the discovery of the child pornography .................................................. 6

Standard of review ......................................................................................................... 9

Argument and authorities ........................................................................ 10

   The record supports the trial court's findings of fact. ................................... 10

   Search and seizure law. ............................................................................ 12

   The inadvertent discovery did violate the Federal Constitution. ............................. 13

   Under the facts, Appellant did not establish an expectation of privacy. ................. 14

   The State did not violate the Texas exclusionary rule. ............................................. 16

   The trial court properly denied suppression ............................................................ 18

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO: ............ 19
   **(Constitutionality of Admission of Punishment Evidence)**

   Appellant's objection to adult sexual material contained on his computer ................. 19

   Standard of review ........................................................................................... 20

   Argument and authorities .................................................................................. 21

      Jurisdiction to appeal punishment from a plea bargain. ............................................. 21

      Admission of Appellant's adult pornography was not unconstitutional ................. 23

      Appellant was not punished for the gender of his sexual preferences. ..................... 26

CONCLUSION AND PRAYER .................................................................................. 29

CERTIFICATE OF SERVICE .................................................................................. 29

APPENDIX I ........................................................................................... Appended

# INDEX OF AUTHORITIES

## *Statutes, Constitutions, and Rules*

18 U.S.C. § 1030(a)............................................................................................ 17

TEX. CODE CRIM. PROC. art. 37.07 ..................................................................... 24

TEX. CODE CRIM. PROC. art. 38.23 .................................................................. 16, 18

TEX. CODE CRIM. PROC. art. 42.02 ..................................................................... 22

TEX. CONST. art. I................................................................................................ 12

TEX. PEN. CODE §  1.02(1)................................................................................... 23

TEX. PEN. CODE § 12.45 ...................................................................................... 21

TEX. PEN. CODE § 30.02(a) .................................................................................. 17

TEX. PEN. CODE  § 33.02(a)................................................................................. 17

TEX. PEN. CODE § 43.25 ...................................................................................... 24

TEX. PEN. CODE § 43.26(a) ................................................................................ 1, 24

TEX. R. APP. P. 25.2 ............................................................................................. 22

TEX. R. APP. P. 44.2(a) ........................................................................................ 26

U.S. CONST. amend. IV......................................................................................... 12

## *Cases*

*Berkovsky v. State*, 209 S.W.3d 252 (Tex. App. – Waco 2006, pet. ref'd)...................... 25

*Brackens v. State*, 312 S.W.3d 831
   (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd). ................................... 13, 14

*Burden v. State*, 55 S.W.3d 608 (Tex. Crim. App. 2001 .................................................. 20

*Carender v. State*, 155 S.W.3d 929 (Tex. App. - Dallas 2005, no pet.) ........................... 22

*Cox v. State*, 931 S.W.2d 349 (Tex. App. - Fort Worth 1996)
   *pet. dism'd,* improvidently *granted,* 951 S.W.2d 5 (Tex. Crim. App. 1997)............... 24

*Crunk v.* State, 934 S.W.2d 788 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd) ...... 17

*Dawson v. State*, 868 S.W.2d 363 (Tex. App. – Dallas 1993, pet. ref'd) ......................... 15

*Dears v. State*, 154 S.W.3d 610 (Tex. Crim. App. 2005) ................................................. 22

*Erazo v. State*, 144 S.W.3d 487 (Tex. Crim. App. 2004) ................................................. 24

*Ex parte Delaney*, 207 S.W.3d 794 (Tex. Crim. App. 2006)............................................ 23

*Ex parte Morales*, 212 S.W.3d 483 (Tex. App. – Austin 2006, pet. ref'd) ...................... 26

*Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002)........................................ 12, 14

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ................................................. 9

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1989) ................................................. 27

*Hernandez v. State*, 60 S.W.3d 106 (Tex. Crim. App. 2001) ............................................ 26

*Hubert v. State*, 312 S.W.3d 554 (Tex. Crim. App. 2010) ............................................ 9, 16

*Jenschke v. State*, 147 S.W.3d 398 (Tex. Crim. App. 2004) ............................................. 16

*Kennedy v. State*, 297 S.W.3d 338 (Tex. Crim. App. 2009)............................................. 22

*Lawrence v. Texas*, 539 U.S. 558 (2003) ........................................................... 25, 26, 27

*Lown v. State*, 172 S.W.3d 753 (Tex. App. - Houston [14th Dist.] 2005, no pet.)........... 15

*Luna v. State*, 268 S.W.3d 594 (Tex. Crim. App. 2008)................................................... 15

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007)................................................... 16

*Miller v. State*, 335 S.W.3d 847 (Tex. App. - Austin 2011, no. pet) .................... 14, 15, 17

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990........................................ 21

*Muhammed v. State*, 331 S.W.3d 187
   (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd). .................................................. 17

*Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir. 2008) ................................... 25

*Rogers v. State*, 113 S.W.3d 452 (Tex. App. - San Antonio 2003, no pet.) ..................... 15

*Rogers v. State*, 991 S.W.2d 263 (Tex. Crim. App. 1999) ........................................... 23

*Romer v. Evans*, 517 U.S. 620 (1996) .......................................................................... 25

*Salazar v. State*, 38 S.W.3d 141 (Tex. Crim. App. 2001) ............................................. 21

*Shankle v. State*, 119 S.W.3d 808 (Tex. Crim. App. 2003) .......................................... 22

*State v. Ballard*, 987 S.W.2d 889 (Tex. Crim. App. 1999) ........................................ 9, 11

*State v. Kelly*, 204 S.W.3d 808 (Tex. Crim. App. 2006) ................................................ 9

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) ............................................. 10, 21

*Turley v. State*, 242 S.W.3d 178 (Tex. App. - Fort Worth 2007, no pet.) ....................... 22

*U.S. v. Jacobsen*, 466 U.S. 109 (1984) ........................................................................ 13

*United States v. Phillips*, 477 F.3d 215 (5th Cir. 2007) .................................................. 18

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) ........................... 12, 13

*Wall v. State*, 184 S.W.3d 730 (Tex. Crim. App. 2006) ............................................... 21

*Whittle v. State*, Nos. 02-03-125/6-CR, 2004 WL 102346
     (Tex. App. – Fort Worth Jan. 22, 2004, pet. ref'd) ................................................... 24

IN THE COURT OF APPEALS
FOR THE TENTH DISTRICT OF TEXAS AT WACO

| | | |
|---|---|---|
| **GREGG CARL BAIRD,** | § | |
| APPELLANT | § | |
| | § | |
| | § | **No.   10-10-00297-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| APPELLEE | § | |

APPEALED FROM CAUSE NUMBER 09-02494-CRF-272 IN THE 272ND JUDICIAL DISTRICT COURT OF BRAZOS COUNTY, TEXAS, THE HONORABLE TRAVIS BRYAN III, DISTRICT JUDGE PRESIDING.

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has requested oral argument.  The State of Texas requests oral argument only in the event that this Court grants Appellant's request.

## STATEMENT OF THE CASE

Gregg Carl Baird ("Appellant") was charged with committing thirteen counts of possession of child pornography.  (1 CR 1-2); *see* TEX. PEN. CODE § 43.26(a).  After the trial court denied a pretrial motion to suppress, Appellant entered a plea of guilty.  (3 RR 86; 6 RR 4).  Pursuant to an agreement, Appellant pled guilty to ten of the counts, the State agreed to dismissal of ninety unadjudicated offenses, and the parties waived a jury without reaching a specific punishment agreement.  (1 CR 87; State's Exhibit Nos. 2-4; *see also* 4 RR 8-9).  After considering punishment evidence, the trial court accepted Appellant's guilty plea and assessed a sentence of ten years imprisonment in count 1.  (6 RR 4-5).  The trial court assessed a five year sentence in count 2, cumulated on count

1

one, and it ordered a ten year sentence in count 3, suspending its imposition for a period of ten years of community supervision.  (6 RR 5).  The trial court ordered the remaining sentences at confinement for ten years running concurrent to count one.  (6 RR 5).

## STATEMENT OF FACTS

Appellant left the country to vacation with his parents, and he obtained an acquaintance to take care of his dog in his home.  (2 RR 14-15; 3 RR 55-56).  When she decided to download songs from a compact disc in his home using his computer, she was shocked to find images of young male children engaged in pornographic poses.[1]  (2 RR 21-24, 26-27, 49-50, 53-54).  She ultimately called the police, who after obtaining a search warrant verifying that the pornography depicted children, seized the computer and arrested Appellant.  (2 RR 61-63, 73-78).

After the trial court denied Appellant's motion to suppress evidence obtained from the search, he entered pleas of guilty to ten of the charged counts.  (3 RR 86; 6 RR 4).  At punishment, Nathan McCune, an investigator with the Brazos County District Attorney's Office described the evidence recovered from Appellant's computer and other memory devices.  (5 RR 13-20).  Appellant had stored child pornography on five of the devices at his home, which included 62,000 images of suspected child pornography.  (5 RR 21, 23-28, 34; 96-97).

---

[1] The State provides a detailed version of the motion to suppress and the facts related to the discovery of the child pornography in its specific response to Applicant's point of error number 1.

The presence of the images required independent action by the computer user to download and did not appear as a result of an accident or incidental to some other action. (5 RR 29-31, 35-36).  The files had been acquired over a period of over five years.  (5 RR 35).  The State introduced the photographs from the original one hundred counts with which Appellant had been charged.  (5 RR 36-41).  McCune described the bookmarks to pornographic related websites on Appellant's computer.   (5 RR 42-51).   He also discussed  other  photographs  of  Appellant  personally  engaging  in  bondage, sadomasochistic behavior, or other adult homosexual activity, some of which mimicked poses in the child pornography.[2]  (5 RR 51-55, 63).   The computer also contained scouting pictures, unrelated to pornography, and chat logs with graphic discussion of sex and arrangements for sexual liaisons with strangers.  (5 RR 55-61).   No photographs depicted Appellant personally involved in sexual acts with children.  (5 RR 62-64).

A  former  leader  of  the  Counsel  of  the  Boy  Scouts  of  America  discussed Appellant's affiliation spanning from Appellant's scouting days himself.  (5 RR 66-72, 80-81).   He described the Venture Crew and High Adventure Program, which took extreme and more lengthy trips for kids aged thirteen to twenty-one.  (5 RR 76-77).   The Scouts initiated criminal background checks in 2008, and Appellant now was no longer eligible to register with them.  (5 RR 78-80).

Appellant had previously pled guilty and received deferred adjudication for an evading arrest incident at Somerville High School in 2004.  (5 RR 85, 91-92, 187-88).

---

[2] The admission of the evidence is the subject of Applicant's point of error number 2.

3

Officer Kindale Pittman arrested Appellant's when she went to investigate a car in the parking lot by the track at 11:00 on a Monday night, and he fled until getting stuck in a ditch. (5 RR 86-91).

Many witnesses testified on behalf of Appellant's good character, including some who had known him since the time they were teens, and none had ever seen him act inappropriately with them or their children. (5 RR 98-103, 116-18, 124-25, 126-29, 135-37, 138-39, 204-210, 211-19). Appellant also testified. (5 RR 141). He discussed how being raped by two older male Scouts impacted him, a secret he kept within himself until he was thirty-eight years old. (5 RR 142-43, 152-55, 174). He acknowledged possessing all of the child pornography, including extremely graphic photos of five and six year olds being violated by adults and gratifying himself to the images, but he denied ever having sexual contact with an underage child or having sexual thoughts toward the Scouts when camping with the boys. (5 RR 144-45, 148, 158, 164, 169-74, 199). Appellant also acknowledged engaging in sexual explicit chats over the internet and arranging meetings with strangers for sexual liaisons. (5 RR 178-85, 190-93). Appellant received a diagnosis of HIV the previous year and had amassed a large amount of medical expenses. (5 RR 146-47). He promised to continue to work on fighting his attraction to underage boys if he were released on probation. (5 RR 202).

## SUMMARY OF THE STATE'S ARGUMENTS

*State's Reply to Appellant's First Point of Error*:

Although Appellant claims that the trial court abused its discretion by denying his motion to suppress his houseguest's discovery of child pornography on his computer, the record supports the trial court's findings and the conclusions that the search was legal. The findings and conclusions provided numerous reasons establishing Appellant's houseguest legitimately accessed Appellant's computer, did not infringe upon his right to privacy in his home, and disbelieve the testimony that she trespassed or otherwise illegally accessed his computer.

*State's Reply to Appellant's Second Point of Error*:

Contrary to Appellant's claims that the trial court abused its discretion by overruling his constitutional objection to admitting evidence related to his sexual proclivities, Appellant failed to obtain permission to appeal the issue after entering into a plea bargain. Notwithstanding the jurisdictional issue, the Constitution neither provides a constitutionally protected right to privacy in all sexual activities nor prevents the introduction of evidence of homosexual or alternative sexual practices. Further, the State's care to prevent Appellant from punishment for his sexual orientation ensured the references harmless beyond a reasonable doubt.

**STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER ONE:**
(DENIAL OF MOTION TO SUPPRESS)

Appellant claims that the trial court abused its discretion by denying his motion to suppress his houseguest's discovery of child pornography on his computer.  The trial court's findings were supported by the record and provided numerous reasons to determine Appellant's houseguest legitimately accessed Appellant's computer, did not infringe upon his right to privacy, and disbelieve the testimony that she trespassed or otherwise illegally accessed his computer.

*Facts related to the discovery of the child pornography*

Dawn Renee Killien worked for the City of College Station in the GIS department. (2 RR 12-13, 31-32).  She did not work for the police department or interact with Appellant as a law enforcement agent.  (2 RR 13, 54).  She knew Appellant casually through her boss, and they arranged for her to watch Appellant's dog while he went out of town.  (2 RR 14-15).

The day Appellant left town, Killien went to the house, and he showed her around. (2 RR 16-17).  He told her to help herself to everything and showed her around the house, including the master bedroom and bathroom.  (2 RR 17, 43).  The dog liked to be in his bed, but he did not want the dog sleeping there, so Appellant asked her to keep the bedroom door closed and left blankets to cover the furniture in other areas.  (2 RR 18-20, 41-43).  Appellant requested she keep the bedroom door closed both when she was there or not there.  (2 RR 43-44).  Appellant did not indicate any area that she should consider off limits and suggested only that neither she nor the dog would spend time in the room

6

or office belonging to Appellant's roommate. (2 RR 19-20). Appellant did not instruct Killien to stay out of his master bedroom or tell her not to use the computer in his bedroom. (2 RR 20).

When staying there, Killien had difficulty operating Appellant's television and DVD system, so when she noticed a music CD she wanted to listen to, she brought it to the computer to copy. (2 RR 18-19, 21, 40). Appellant had left the computer powered on, and the screen awakened when Killien touched the mouse. (2 RR 22). The desktop did not require a password to access. (2 RR 22, 54-55).

Killien put the songs she sought to download into a folder to transfer the files to her phone, however she was unable to download the songs without a password to the music program. (2 RR 22-23, 50-51). Consequently, Killien deleted the files she had just added and did so by opening the "recent documents file" and "recycle bin." (2 RR 23-24, 44-46, 49). The file names that were already contained in those folders disturbed her greatly, as they sounded like child pornography titles. (2 RR 23-24, 26-27, 49-50, 53-54). After consulting with people on an online forum and discussing what to do with others, she reported the presence of the computer files to the police. (2 RR 27-30, 57-59).

College Station Police Officer, Michael Jose, took the report. (2 RR 60). He did not request Killien to retrieve computer files. (2 RR 61-63). Instead, he put together the information and obtained a search warrant. (2 RR 61-62). Thereafter, William Odom, a computer forensic expert recovered the images that Killien viewed as well as numerous of other child pornography images saved amongst the various electronic storage devices attached to Appellant's computer. (2 RR 63, 73-78). He confirmed that the images had

7

not been password-protected and that Killien only minimally accessed the computer, discovering the files and inquiring on the chat forum. (2 RR 78-79, 85-86; 3 RR 33-52). Rose Hubbard, a computer forensic analyst who testified on Appellant's behalf, however disagreed with Odom's confirmation that Killien first accessed the computer to attempt to download songs. (2 RR 87-90). Instead, she believed that Killien only used the computer and internet to chat much later in the evening and that no evidence showed she moved files or downloaded music. (2 RR 89-90, 92-110; 3 RR 5-31).

Appellant also testified at the motion to suppress hearing. (3 RR 54-70). He asked Killien to watch his dog, Copper, at his home while he went to Panama. (3 RR 55-56, 58). When she came to his home, Appellant showed her how to work the stereo and remotes. (3 RR 66-67). Appellant also told her that she should keep the master bedroom door closed to keep the dog out. (3 RR 56, 65-66). He claimed that he did not ever show her through his room or bathroom. (3 RR 56, 64-65). Appellant also explained that he did not tell her to help herself to anything she wanted, and at most may have referred to the food and beverages he had provided for her visit. (3 RR 62-63).

Appellant never gave Killien permission to use his computer. (3 RR 56-57). He also never told Killien that he did not want her to use his computer. (3 RR 61). He did not lock the door to the master bedroom, and although he told her to keep the door closed, he did not tell her not to enter his bedroom. (3 RR 59-60, 68-70). Appellant kept his computer in his bedroom, and he did not keep it locked in a cabinet or armoire. (3 RR 61). Appellant allowed his roommate access to the computer at any time and keep files on it. (3 RR 61-62).

The trial court considered the evidence at the hearing, and it denied Appellant's motion to suppress. (3 RR 86). After the trial, Appellant requested the trial court enter proposed findings of fact and conclusions of law. (1 CR 116-18). The trial court entered its findings and conclusions. (2 RR 321-22; *see* State's Appendix 1). It did not alter them in response to Appellant's objections. (1 RR 119-20; 2 RR 150-57).

### *Standard of review*

A bifurcated standard of review is applied to a trial court's ruling on a motion to suppress. *See Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). An appellate court should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court should also give the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id*. However, if "mixed questions of law and fact" may be resolved without the trial court's assessment of the veracity of the witnesses, an appellate court should review the ruling *de novo*. *See id*.

When the trial court enters findings of fact, as in this case, the appellate court should defer to the trial court's findings when they are supported by the record. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex.

9

Crim. App. 1999). Further, the trial court's ruling will be upheld if it is supported by any valid theory, regardless of whether the State raised it in the trial court. *See State v. Ross,* 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

*Argument and authorities*

The testimony at the motion to suppress hearing provided strong support for the trial court's determination not to suppress the child pornography files on Appellant's computer, and the record supports its findings of fact and conclusions of law. The only contested issue in this case involved the initial discovery of child pornography on Appellant's computer by his pet sitter. The factual findings involving Killien's authority to use Appellant's computer while she stayed in his home, the propriety of the discovery of contraband on his computer, and Appellant's failure to establish a reasonable expectation of privacy under the circumstances justify affirming the conviction.

**The record supports the trial court's findings of fact.**

In this case, the factual findings resolve all of the legal issues and constituted reasonable drawn from the evidence considered by the trial court. Both Appellant and Killien agreed that Appellant never gave Killien permission to use his computer. (2 RR 20; 3 RR 56-57). They also agreed that he never forbade her from it. (2 RR 20; 3 RR 61).

On the other hand, the extent to which Killien was free to enter Appellant's bedroom or Appellant specifically forbade it was disputed. Killien recalled Appellant showing her the master bedroom and placing no restriction on her use of the house, asking only that she ensure the door remained closed when the room was unoccupied. (2

RR 19-20, 41, 43-44).  In fact, she recalled his telling her only to keep the door closed to keep the dog out without regard to her presence within the bedroom.  (2 RR 43-44). Appellant on the other hand, claimed never to have shown her the master suite and desired that she stay completely out of his room, even though he never told as much.  (3 RR 56, 60).  The trial court's determinations that Appellant did not impose limitations on her access to his bedroom, either expressly or implied, are all reasonable determinations from the record.  (2 RR 321-22: Findings of Fact at 3, 6-12, 15).

As with Appellant's bedroom, the trial court could believe that Appellant was quite a gracious host, seeking to maximize Killien's comfort, including prearranging her preferred foods and beverages.  (2 RR 19-20; 3 RR 63).  Nothing controverts the trial court's finding that Appellant opened up his entire house to her.  (2 RR 321-22: Findings of Fact at 13).  And nothing prevented the trial court from determining that Appellant's contrary testimony arose to support his motion to suppress in hindsight.  The trial court, as sole trier of fact and judge of the credibility of the witnesses, possessed the discretion to determine the weight of his testimony less than compelling.  *See Ballard*, 987 S.W.2d at 891.

Finally, Killien's lack of intent to invade Appellant's privacy or conduct an extensive search of his computer files are also well supported by the record.  (*See* Findings of Fact at 16-17).  Killien did not embark on a search for evidentiary items that she could then turn over to the police.  (2 RR 28-30).  She simply sought to download a song and then remove the files she had created when she was unable to do so.  (2 RR 22-24, 49-51).  She did not conduct a forensic examination of the computer to search for

11

evidence of illegality in hopes of turning it over to the police; but rather struggled over the relative options. (2 RR 27-30). The trial court was entitled to believe Killien and the computer experts' description of the relative simplicity of and inadvertence of the discovery of the pornography in making its determinations, and although Appellant labels them as irrelevant, they refute his suggestion that Killien culpably accessed the computer or possessed any intention of searching for evidence. (*See* Appellant's Brief at 15-16).

In their entirety, the trial court's findings are supported by the record and establish the trial court properly denied Appellant's motion to suppress.

**Search and seizure law.**

Both the United States and Texas Constitutions provide for the right to be free from unreasonable searches and seizures. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. In order to challenge the legality of a search, an accused must establish that he possessed a legitimate expectation of privacy in the place searched. *See Granados v. State*, 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002). To carry that burden he should establish both a subjective and objective expectation of privacy:

> the accused must normally prove: (a) that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (b) that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). When assessing whether society is prepared to recognize that privacy interest in a place is objectively reasonable, a court looks to all of the circumstances. *See Granados*, 85 S.W.3d at 223. Factors may include, but are not limited to:

12

(1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

See *Villarreal*, 935 S.W.2d at 138

**The inadvertent discovery did violate the Federal Constitution.**

As an initial matter, Killien's capacity as a private citizen, not acting on the behest of the government in any manner, does not invoke constitutional protections prohibiting unreasonable governmental intrusion or the federal exclusionary rule. The Fourth Amendment prohibits the use of only evidence improperly obtained by the government. *See U.S. v. Jacobsen*, 466 U.S. 109, 117 (1984). Thus, when a computer technician found child pornography on a laptop that a defendant took to Circuit City for repair, the Fourth Amendment did not bar its admission as an improper search. *See Brackens v. State*, 312 S.W.3d 831, 837 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd). Both the trial court's findings and the record establish that the police obtained information about the possible contraband on Appellant's computer from a private citizen and properly verified its existence through a warrant issued by a magistrate with probable cause. (2 RR 61-62). The child pornography on Appellant's computer was not discovered by any government action, and as a consequence, the Fourth Amendment has no applicability the legality of the evidence.

**Under the facts, Appellant did not establish an expectation of privacy.**

Notwithstanding the lack of governmental action, Appellant failed to establish either an objective or subjective expectation of privacy that society is willing to recognize as reasonable. A Fourth Amendment analysis of a privacy interest in a computer file is similar to that of a closed container. *See Brackens*, 312 S.W.3d at 837. When a defendant creates a foreseeable risk of intrusion by a private party, any reasonable expectation of privacy may be reduced or destroyed. *Id.*

Under the circumstances, Appellant failed to take sufficient measures to demonstrate even a genuine subjective expectation in keeping his computer private despite his statement that he did not mean for it to be shared. *See Granados*, 85 S.W.3d at 222-23 (noting the subjective expectation component requires a genuine intention to preserve something as private). Here, Appellant never forbade Killien from entering his bedroom, and he did not specifically forbid the use of his computer. (3 RR 56-57). He neither locked the bedroom door nor kept the computer secured, physically or by password. (3 RR 59-61). Appellant did not even power-down the computer before leaving on a ten-day vacation. (2 RR 22, 54-55). Furthermore, Appellant left the computer in his bedroom available to his roommate to utilize at anytime to store his own files. (3 RR 61-62). The evidence supported a finding that by his conduct, Appellant did not demonstrate a subjective expectation of privacy either in his bedroom or his computer. *See Miller v. State*, 335 S.W.3d 847, 854-55 (Tex. App. – Austin 2011, no. pet).

Appellant's treatment of his computer and bedroom also defeats any claim that society would find his expectation of privacy objectively reasonable had that been his desire.  The primary reason Appellant's expectation of privacy was not reasonable was his open treatment of the computer.  *Id.* at 855-56; *Lown v. State*, 172 S.W.3d 753, 761 (Tex. App. – Houston [14th Dist.] 2005, no pet.); *Rogers v. State*, 113 S.W.3d 452, 458 (Tex. App. – San Antonio 2003, no pet.).  Appellant's allowance of others to use the computer in his bedroom with no file encryption or security failed to show a bona fide intention to keep the computer private, and does not permit society to find Appellant's behavior consistent with historical notions of privacy.  *See Lown*, 172 S.W.3d 761. Taking the extra steps to add security measures, such as locking the bedroom door or powering down the computer and installing file security, could be enough to change an expectation of privacy to a reasonable one.  *See Dawson v. State*, 868 S.W.2d 363, 371 (Tex. App. – Dallas 1993, pet. ref'd) (finding the addition of a personal lock to a private locker made an expectation of privacy a reasonable one that society was prepared to recognized).  Appellant did not do so, and instead relied only upon an ambiguous impression that he meant certain areas to be inaccessible.

Further, by Killien's actions, she believed she was not infringing on Appellant's privacy, and, as an overnight guest for several days, she required more access to the effects of the home.  *See Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008) (holding that overnight guests are accorded a legitimate expectation of their own privacy in the place she spends the night).  Thus, society should be more prepared to recognize the need to open a medicine cabinet to find an aspirin or access the internet and accord a

15

greater right of control to a shared occupant than a visitor or stranger. *See Hubert*, 312 S.W.3d at 561 (recognizing that even if erroneous, third-party consent may authorize authority to permit entry of a home to search, a risk that shared property of a premises face).

### The State did not violate the Texas exclusionary rule.

Similarly, while the Texas exclusionary rule is broader than its federal counterpart, encompassing conduct by private citizens, its aim is to prevent either governmental agents or private individuals from illegal conduct.[3] *See* TEX. CODE CRIM. PROC. art. 38.23; *Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007). Again, Killien found evidence of what appeared to be a crime while attempting to download a music track and delete the files she created without attempting to break into the bedroom or hack her way into the computer system. (2 RR 22-24, 44-46, 49). As well supported by the trial court's factual findings, Killien did not commit any offenses by entering Appellant's bedroom or using his computer. Although Appellant proffers law allegedly violated, none establish sustainable criminal actions or culpability for an offense. (*See* Appellant's Brief at 18-19).

---

[3] As the aim of excluding evidence under 38.23 is a prophylactic measure to protect from any person's overzealous search for evidence, its enforcement serves no application to an inadvertent discovery wholly unrelated to a search for contraband. *See Miles*, 241 S.W.3d at 36, n.33; *see also Jenschke v. State*, 147 S.W.3d 398 (Tex. Crim. App. 2004) (suppressing a private person's burglary with intent to obtain evidence of a crime but not to turn over to law enforcement).

The offense of criminal trespass requires a lack of effective consent as well as notice that entry was forbidden. *See* TEX. PEN. CODE § 30.02(a). Appellant never forbade Killien from entering his bedroom, specifically admitting that he "never told her she could not go into [Appellant's] bedroom." (3 RR 60). Even if Appellant had actually desired to exclude Killien from his bedroom, he never manifested that intent to her. *See Crunk v. State*, 934 S.W.2d 788, 794 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd) (finding that a roommate does not commit criminal trespass by entering an unlocked bedroom in the house shared with others).

Likewise, to commit a breach of computer security offense, a person must knowingly access a computer system without the effective consent of the owner. *See* TEX. PEN. CODE § 33.02(a). Culpability for the offense includes knowing that the actor does not have the effective consent of the owner. *See Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd). Considering that Appellant had left the computer on with no security and allowed complete access to all the files to Appellant's roommate, Killien, or any other visitor to the home, no evidence suggests Appellant prohibited his consent. *See Miller*, 335 S.W.3d at 858. Without Killien's knowledge that she could not use the computer and Appellant's failure to ever specify she could not, proof of a lack of effective consent is a missing element. *Id.*

Finally, Appellant's alternative suggestion that he may have violated the Computer Fraud and Abuse Act is inapposite. 18 U.S.C. § 1030(a); *see* Appellant's Brief at 22. First, the section is only applicable to a protected computer. 18 U.S.C. § 1030(a). Second, Appellant's lack of any password protection or secured area of the computer or

17

drive renders even an analogy to an "intended-use analysis" inapplicable. *See* Appellant's Brief at 22, citing *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007).

Without expressly, or even implicitly, prohibiting Killien from the bedroom and computer or suggesting they were contrary to Appellant's desires, Killien did not break the law. Her entry into Appellant's bedroom and use of his computer was reasonably foreseeable and did not exceed the realm of reasonable expectations of a houseguest. Article 38.23 did not require suppression.

### The trial court properly denied suppression

The trial court's findings were supported by the record and the decision to deny Appellant's motion to suppress was well supported by the law. The trial court possessed numerous reasons to determine Killian legitimately accessed Appellant's computer, did not infringe upon his right to privacy, and disbelieve the testimony that she trespassed or illegally accessed his computer. As a consequence, Appellant's first point of error should be overruled.

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO:
(CONSTITUTIONALITY OF ADMISSION OF PUNISHMENT EVIDENCE)

Appellant claims that the trial court abused its discretion by allowing the admission of constitutionally protected evidence related to his sexual preferences. Notwithstanding Appellant's failure to obtain permission to appeal the issue after entering into a plea bargain, the trial court properly admitted the punishment evidence. The Constitution neither provides a constitutionally protected right to privacy in all sexual activities nor prevents the introduction of evidence of homosexual or alternative sexual practices. Further, the State's care to prevent Appellant from punishment for his sexual orientation ensured the references harmless beyond a reasonable doubt.

### Appellant's objection to adult sexual material contained on his computer

When the State began offering the photographs of the offenses, Appellant objected to any mention of adult male bondage or homosexual conduct not constituting an illegal act. (5 RR 22). The State responded, as it had in its opening statement, that the evidence constituted relevant punishment and its purpose was to provide a full picture of Appellant's activities, not to emphasize whether he might be a homosexual. (5 RR 9-10, 22-23). The trial court overruled the objection and granted Appellant a running objection.[4] (5 RR 23).

---

[4] The exhibits admitted at this time were photos of the child pornography offenses, and not consensual adult activity. (5 RR 23-24). To ensure he would not risk waiver, Appellant objected to all exhibits and testimony of sexual activity that might refer to adult sexual behavior notwithstanding his running objection. (5 RR 26, 33, 37-38, 45).

The State also offered evidence of sexually explicit photographs on Appellant's computer involving bondage and sadomasochistic poses. (5 RR 51). Appellant renewed his objection to allowing any evidence of adult homosexual activity as punishing constitutionally protected behavior occurring between consenting adults. (5 RR 51-53). The trial court overruled the objection and specifically granted a running objection to all evidence of adult pornography. (5 RR 53).

Appellant's continued objections to the State's evidence included a variety of media recovered from Appellant's computer, encompassing:

> Poses of Appellant's own sexual conduct that bore great similarities to photographs of images of child pornography images. (5 RR 54-56).

> Photographs depicting young men naked and engaging in sexual conduct in camping situations. (5 RR 56-57).

> Photographs of his own camping trips, which portrayed actual Scouts but were not sexual. (5 RR 56-58).

> Chat sessions with other people on the internet regarding sexual activity and meeting for the purpose of sex. (5 RR 58-59, 178-79).

> Discussions about wearing a sexual device on his genitalia. (5 RR 184-85).

Throughout, both State and Appellant made clear that Appellant's computer contained no images of actual sexual contact, photographs, or discussion between himself and any child. (5 RR 61-64, 199).

### Standard of review

The standard for reviewing a trial court's ruling on the admission or exclusion of evidence is abuse of discretion. *See Burden v. State,* 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). As long as the trial court's ruling is within "the zone of reasonable

disagreement," there is not an abuse of discretion.  *See Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001); *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).  Moreover, if the trial court's decision is correct on any theory of law applicable to the case, an appellate court should uphold the lower court's ruling.  *See Ross*, 32 S.W.3d at 855-56.  A trial court's constitutional legal rulings, however, are reviewed *de novo*.  *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

*Argument and authorities*

### Jurisdiction to appeal punishment from a plea bargain.

After the trial court denied Appellant's motion to suppress, he reached an agreement with the State.  Both parties agreed to assessment of punishment by the trial court, and in exchange for Appellant's plea to only ten of the thirteen charged counts, Appellant waived an appeal bond.  (1 CR 78-79, 87; 4 RR 13-14; 6 RR 4; Defendant's Exhibit No. 1).  The agreement contemplated preserving Appellant's right to appeal the denial of his motion to suppress, and the State would agree to the dismissal of ninety counts unadjudicated counts under Penal Code § 12.45.  (1 CR 78-79, 87; 4 RR 13-14; 6 RR 4; Defendant's Exhibit No. 1).  The trial court's certification of appeal, signed at the conclusion of sentencing, which deleted an indication that the trial court granted permission to appeal in favor of noting the lack of an agreed plea for a term of years, only clearly acknowledged Appellant's right to appeal the denial of the motion to suppress.  (1 CR 147).

A defendant may not appeal a plea of guilty entered before a court where the sentence did not exceed the punishment recommended by the prosecutor unless he obtained permission of the trial court or the challenge pertains to matters raised by written motion filed before trial. *See* TEX. CODE CRIM. PROC. art. 42.02; TEX. R. APP. P. 25.2. A plea agreement encompasses not only sentence bargaining but also charge bargaining. *See Shankle v. State*, 119 S.W.3d 808, 813-14 (Tex. Crim. App. 2003). Charge bargains affect punishment even if the punishment range does not change, such as when an agreement accounts for and bars the prosecution of additional charges. *Id.*; *see also Kennedy v. State*, 297 S.W.3d 338, 341-42 (Tex. Crim. App. 2009) (holding that charge bargains do not impact a defendant's right to appeal a written motion filed before trial). Even if an appellate court has jurisdiction to consider a written issue ruled on before trial, a trial court must have granted permission to appeal to provide appellate jurisdiction to address other issues after a plea bargain. *See Turley v. State*, 242 S.W.3d 178, 180 (Tex. App. – Fort Worth 2007, no pet.).

Here, the record does not indicate that the trial court granted permission to appeal issues other than the motion to suppress. (6 RR 6). Nor does the certificate of appeal specify the trial court's intention to allow appeal of issues other than suppression. *See Dears v. State,* 154 S.W.3d 610, 613-15 (Tex. Crim. App. 2005); *see also Carender v. State*, 155 S.W.3d 929 (Tex. App. – Dallas 2005, no pet.) (noting that the trial court's certification of right to appeal does not control if it is not supported by the record). Whether the trial court intended to allow Appellant to appeal his challenge to the admissibility of photographs or raise other objections lodged at the punishment hearing as

issues on appeal when it assessed its judgment and sentence is not clearly reflected by the record. (6 RR 4). But because the issue is jurisdictional, Appellant's second claim must be dismissed or, alternatively, remanded to determine whether the trial court did grant its permission to appeal but failed to document it in the record.[5]

### Admission of Appellant's adult pornography was not unconstitutional.

The presentation of Appellant's extensive collection of pornographic images as provided evidence relevant to his punishment, including his suitability for probation. In contrast to guilt/innocence, where the issue is whether the defendant committed a crime, sentencing focuses on the appropriate punishment to assess. *See Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Objectives of the penal law include protection of public safety through the deterrent influence of the penalties, the rehabilitations of those convicted, and such punishment as may be necessary to prevent recurrent of criminal behavior. *See* TEX. PEN. CODE § 1.02(1). To this effect, the scope of punishment evidence is broad:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by

---

[5] Appellant's waiver of appeal, even had it occurred before sentencing and alleged to be involuntary, is an issue beyond the scope of the record and outside of this Court's jurisdiction to address on appeal. *See Ex parte Delaney*, 207 S.W.3d 794, 799 (Tex. Crim. App. 2006).

evidence to have been committed by the defendant or for which he could be held criminally responsible.

*See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1); *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004).   Admissibility as punishment evidence does not require proof that evidence constituted an illegal act.   *See Cox v. State*, 931 S.W.2d 349, 357 (Tex. App. – Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997).

Here, with the exception of the scouting pictures of Appellant's camping trips, the extraneous evidence not encompassed by the charged or uncharged child pornography nonetheless fit the depiction of "sexual conduct." *See* TEX. PEN. CODE §§ 43.25 (a)(2); 43.26 (b)(2) (defining sexual conduct as "as sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola").   As such, they provided evidence that Appellant's interests extended far beyond electronic voyeurism and constituted acts relevant to punishment. *See Whittle v. State*, Nos. 02-03-125/6-CR, 2004 WL 102346 (Tex. App. – Fort Worth Jan. 22, 2004, pet. ref'd) (not designated for publication) (finding pornographic cartoons, although not illegal, relevant to sentencing).   Appellant's photography collection showed that he maintained an active sexual appetite, exhibiting unsafe sexual practices with strangers, creating photos to mirror poses with the depicted victims, and evincing a continuing fixation a variety of sexual activities. (5 RR 54-59, 178-85). The information was not irrelevant evidence designed to prejudice the sentencing court, but the type of

information directly relevant to assessing an appropriate punishment, including whether the trial court believed Appellant's protestation that he would never act on his continued attraction to underage boys and suitability for community supervision. (5 RR 201-202).

Appellant does not assert that the evidence possessed no relevance to sentencing, but instead asserts that the State intruded into his privacy and punished him for engaging in homosexual activity. *See* Appellant's Brief at 27-28. Appellant's sexual preferences, however, possessed no bearing on the risk his sexual practices posed to others or the danger of giving into his fixation on children. *Cf. Romer v. Evans*, 517 U.S. 620, 634 (1996) (striking down a law denying homosexuals political rights in what appeared solely to constituted "a bare desire to harm a politically unpopular group."). Evidence that Appellant's photographic fixations pertained to boys and men was only incidental to gender and wholly unrelated to a *conviction* for participating homosexual activity. *Cf. Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (holding the Texas sodomy laws unconstitutional).

*Lawrence* simply recognized that consensual sexual behavior conducted in private and legal for heterosexuals cannot be constitutionally criminalized. *Id.* It prevents the State from enforcing a morality code regulating private intimate contact. *See Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 746 (5th Cir. 2008). It did not create a right to privacy for all sexual activities conducted between adults. *See Berkovsky v. State*, 209 S.W.3d 252, 253-54 (Tex. App. – Waco 2006, pet. ref'd). Further, before finding a violation of the Constitution under the Due Process Clause, Appellant must establish that any privacy interest he possessed was not rationally related to legitimate state interests –

a burden he neither attempts to assume nor can establish.  *See Ex parte Morales*, 212 S.W.3d 483, 493-98 (Tex. App. – Austin 2006, pet. ref'd) (finding "adult consensual sexual activity" not a fundamental right and prosecuting student/educator sexual activity not in violation of Due Process).   Considering that the "private activity between consenting adults" were actually photographs preserved for Appellant's posterity and kept in the same place as contraband, Appellant's privacy interest was greatly reduced if not altogether waived.  *Cf. Lawrence*, 539 U.S. at 563 (prohibiting prosecution for the act of sodomy observed first-hand).

In short, the trial court properly denied Appellant's constitutional objections under *Lawrence* as inapposite.  Appellant's conviction for possession of child pornography, not being homosexual, having alternative sexual interests, or collecting legal sexual photographs, prevents any applicability of *Lawrence*.   539 U.S. at 578.  Of further distinction, the punishment issues focused on Appellant's collection of both sexual and non-sexual images, be they viewed as bi-sexual, heterosexual, or homosexual, not his sexual orientation.  *Id.*

**Appellant was not punished for the gender of his sexual preferences.**

Even should evidence that Appellant preferred homosexual or less traditional sexual activities been inadmissible, the record shows it harmless, even under a constitutional harm analysis.  When an error that is not structural reveals constitutional error at punishment, an appellate court must reverse the punishment unless the court determines beyond a reasonable doubt that it did not contribute to the punishment.  *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).

Analysis requires a neutral review of the entire record and all of the effects of the error, including (1) the source of the error, (2) the nature of the error, (3) the extent the error was emphasized, (4) collateral implications of the error, (5) the weight a juror might place on the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris v. State,* 790 S.W.2d 568, 586 (Tex. Crim. App. 1989).

Here, the constitutional harm in violation of *Lawrence* would occur if the trial court punished Appellant or increased his sentence because of his homosexuality or legal sexual practices rather than valid punishment considerations. 539 U.S. at 578. The primary punishment evidence consisted of Appellant's massive collection of over 60,000 images of child pornography, including those of very young boys in graphic situations. (5 RR 21, 23-28, 34, 96-97). Appellant's other interests included camping with scouts and sex, and in developing that evidence the State took great care to clarify the purpose was not to emphasize Appellant's sexual orientation but the danger of his interests potentially intersecting. (5 RR 9-10, 22-23, 228-30). Contrary to Appellant's argument, references to homosexuality were primarily by inference from the content of material and not a disingenuous effort to punish Appellant for his sexual orientation. *See* Appellant's Brief at 29-30. Finding harmless error would bookmark the limits of evidence of a defendant's sexual preferences upon a genuine belief in its admissibility, not encourage repetition. *Cf.* Appellant's Brief at 30. Finally, the trial court, through Appellant's objections and case citation was also well aware of what *Lawrence* prohibited, and its only reference to Appellant's sexual urges was being a "ticking time bomb" not the

details of his adult preferences.   (6 RR 6).   Although the harmlessness beyond a reasonable doubt is a rigorous standard, the record can assure this Court that Appellant's punishment was not impacted by his sexual preferences.

Appellant's second point of error should be overruled.

## CONCLUSION AND PRAYER

Appellant's trial was without prejudicial error.  The State prays that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**BILL TURNER**
District Attorney
Brazos County, Texas

**JEFFREY GARON**
Assistant District Attorney
300 E. 26th St., Suite 310
Bryan, Texas 77803
State Bar No. 00790746
(979) 361-4320
FAX (979) 361-4368

## CERTIFICATE OF SERVICE

A true copy of the State's Brief has been mailed to counsel for Appellant, Richard E. Wetzel, Attorney at Law, 1411 West Ave., Ste. 100, Austin, Texas, 78701, on this, the 2nd dat of August 2011.

**JEFFREY GARON**
Assistant District Attorney

29

# STATE'S APPENDIX NO. 1

(Trial Court's Findings of Fact and Conclusions of Law)

Cause Nos. 09-02492-CRF-272; 09-02493-CRF-272; 09-02494-CRF-272; 09-02495-CRF-272;
09-02496-CRF-272; 09-02497-CRF-272; and 09-02498-CRF-272

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 272nd DISTRICT COURT |
| VS. | § | |
| | § | IN AND FOR |
| GREGG CARL BAIRD | § | BRAZOS COUNTY, TEXAS |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING
DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE**

On the 26th day of February, 2010, the Court heard the testimony concerning the Defendant's Motion to Suppress Evidence in each of the above referenced Causes and DENIED the motion. Now taking judicial notice of the Court's file in each Cause referenced above, this Court makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

1. The defendant, Gregg Baird, is currently charged with 100 counts of Possession of Child Pornography under section 43.26 of the Texas Penal Code.
2. All findings of fact made herein are based upon the credibility of the witnesses.
3. Dawn Killian provided credible testimony regarding the circumstances of her access to Gregg Baird's home, bedroom, computer, and information on that computer.
4. Detective Johse of the College Station Police Department provided credible testimony regarding his investigation.
5. Bill Odem provided credible testimony as to his forensic assessment of Gregg Baird's computer.
6. Dawn Killian was invited by defendant Gregg Baird into his home for the purpose of pet-sitting.
7. Dawn Killian was expected by Gregg Baird to reside at his home for approximately ten (10) days while he was away on vacation.
8. Gregg Baird placed no limits or restrictions on Dawn Killian access to his home.
9. Specifically, Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his bedroom.
10. Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his computer.
11. Gregg Baird took no steps to limit or restrict access to his bedroom or computer, and took no steps to protect the information on his computer through the use of passwords, encryptions, or other such methods.
12. Prior to his leaving his home, Gregg Baird showed Dawn Killian around his home, including his bedroom and bathroom.
13. Gregg Baird told Dawn Killian to "help herself to anything" or words to that effect.
14. Dawn Killian accessed Gregg Baird's computer by moving the computer's mouse and awakening the computer from sleep mode.



15. Dawn Killian's access to the bedroom and the computer was reasonably foreseeable to Gregg Baird.

16. Dawn Killian's access to Gregg Baird's computer was superficial and the files she accessed were accessed from the desktop of the computer requiring not more than two (2) mouse-clicks to access and view.

17. Dawn Killian had no intent to invade the privacy of Gregg Baird.

18. Dawn Killian is a private citizen, was not acting for or under the direction of law enforcement, and did not anonymously report Gregg Baird's suspected possession of child pornography to law enforcement.

19. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law, and any conclusion of law that is a finding of fact shall be deemed a finding of fact.

Conclusions of Law

1. Dawn Killian committed no criminal offense which led to discovery of evidence against the defendant, Gregg Baird.

2. Specifically, Dawn Killian did not commit the offenses of Burglary of a Habitation (30.02 Texas Penal Code), Criminal Trespass (30.05 Texas Penal Code), or Breach of Computer Security (33.02 Texas Penal Code).

3. Dawn Killian had Gregg Baird's effective consent to access his bedroom and computer.

4. Gregg Baird had no reasonable expectation of privacy in the contents of his computer.

5. Article 38.23 of the Texas Code of Criminal Procedure does not apply to the facts of this case because no criminal offense was committed by Dawn Killian in accessing Gregg Baird's bedroom or computer.

6. The affidavit in support of the search warrant at issue in this case presented sufficient probable cause to search Gregg Baird's residence and computer located in his bedroom.

7. The information provided in the affidavit for the search warrant at issue was sufficient for a neutral and detached magistrate to conclude that Dawn Killian was credible and that the information she provided to the College Station Police Department was credible and reliable.

SIGNED the 24 day if Aug 2010

Travis B. Bryan III
Judge Presiding

2

**Page 322**