*159-12*

No. PD-0159-12

**IN THE**
**COURT OF CRIMINAL APPEALS**
**OF TEXAS**

**GREGG CARL BAIRD,**
Appellant

v.

**THE STATE OF TEXAS,**
Appellee

~~ORIGINAL~~

**FILED IN**
COURT OF CRIMINAL APPEALS

AUG 02 2012

FROM THE COURT OF APPEALS FOR THE
TENTH JUDICIAL DISTRICT AT WACO

10-10-00297-CR

**Louise Pearson, Clerk**

---

**STATE'S BRIEF ON THE MERITS**

---

APPEAL FROM CAUSE NO. 09-02494-CRF-272 IN THE 272ND JUDICIAL
DISTRICT COURT OF BRAZOS COUNTY, TEXAS, THE HONORABLE TRAVIS
BRYAN III, DISTRICT JUDGE PRESIDING.

~~SCANNED~~
~~(CCA)~~

AUG 02 2012

**BILL TURNER**
District Attorney
Brazos County, Texas

**JEFFREY GARON**
Assistant District Attorney
300 E. 26th St., Suite 310
Bryan, Texas 77803
State Bar No. 00790746
(979) 361-4320
FAX (979) 361-4368

## IDENTITY OF PARTIES AND COUNSEL

Trial Court .................................................... HONORABLE TRAVIS BRYAN, III
Judge, 272nd Judicial District Court
Brazos County Courthouse
300 E. 26th St., Suite 225
Bryan, Texas 77803

Appellant........................................................ BRAZOS COUNTY
DISTRICT ATTORNEY'S OFFICE

BILL TURNER
District Attorney

RAY THOMAS
SHANE PHELPS (former assistant)
Trial Attorneys

JEFFREY GARON
Appellate Attorney

Appellee ........................................................ GREGG CARL BAIRD

RICHARD E. WETZEL
Appellate Counsel
1411 West Ave., Ste. 100
Austin, Texas, 78701

JIM JAMES
Trial Counsel
P.O. Box 1146
Bryan, Texas 77806

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. ii

TABLE OF CONTENTS ................................................................. ii

INDEX OF AUTHORITIES ............................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ........................................ 1

STATEMENT OF THE CASE .......................................................... 1

ISSUE PRESENTED ..................................................................... 3

>       Does apparent consent result from an owner's failure to expressly deny consent?

ISSUE RESTATED ....................................................................... 3

>       Did the court of appeals correctly determine that Appellant provided apparent consent to enter his bedroom and use his computer when the trial court reasonably found that Appellant opened his home to his house guest's use, allowed her to help herself to anything, and made no specific restriction from accessing any room or prohibition from using any item? Allowing deference to the finder of fact, the owner's failure to expressly deny consent supported the finding of apparent consent.

STATEMENT OF FACTS ................................................................ 4

   The house sitter's testimony ....................................................... 4

   Additional evidence ................................................................ 5

   Appellant's testimony .............................................................. 6

   The trial court's ruling ............................................................. 7

   Punishment evidence ............................................................... 7

SUMMARY OF THE STATE'S ARGUMENT ........................................... 10

>       The court of appeals correctly determined that Appellant provided apparent consent to enter his bedroom and use his computer.   The trial court

reasonably found that Appellant opened his home to his house guest's use, allowed her to help herself to anything, and made no specific restriction from accessing any room or prohibition from using any item.   Allowing deference to the finder of fact, the owner's failure to expressly deny consent supported the finding of apparent consent.

ARGUMENT ............................................................................................... 11

    Standard of review ................................................................................... 11

    The Tenth Court of Appeals opinion, the trial court's findings, and the record ......... 12

    The significance of consent to Appellant's possession of child pornography ............ 16

    Apparent consent is not foreclosed by an express denial or permission ..................... 18

    Appellant did not meet his burden to show a criminal trespass ................................... 23

    Appellant did not meet his burden to show a breach of computer security ................ 24

CONCLUSION AND PRAYER .................................................................... 27

CERTIFICATE OF SERVICE ..................................................................... 27

APPENDIX 1 & 2

## INDEX OF AUTHORITIES

Statutes, Codes, and Rules

18 U.S.C.A. § 1030 ................................................................................ 16

TEX. CODE CRIM. PROC. art. 38.23 .................................................. 16, 17

TEX. PEN. CODE § 1.07(1) .................................................................. 17, 18

TEX. PEN. CODE § 6.02(d) ........................................................................ 25

TEX. PEN. CODE § 6.03(b) ........................................................................ 25

TEX. PEN. CODE § 30.02(a) .................................................................. 16, 23

TEX. PEN. CODE § 33.01 ...................................................................... 18, 24

TEX. PEN. CODE § 33.02(a) .................................................................. 16, 24

TEX. PEN. CODE § 43.26(a) ........................................................................ 1

TEX. R. APP. P. 38.2(a)(1)(B) .................................................................... 7

Cases

*Allison v. State*, 113 S.W.3d 476 (Tex. App. – Houston [1st Dist.] 2003, no pet.) ........... 23

*Baird v. State*, No. 10-10-00297-CR, 2012 WL 89905
     (Tex. App. – Waco 2012, pet. granted) .................................................. 2, 12, 13, 14, 15

*Brackens v. State*, 312 S.W.3d 831 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd) .... 17

*Coronado v. State*, 835 S.W.2d 636 (Tex. Crim. App. 1992) ........................................... 22

*Crunk v. State*, 934 S.W.2d 788 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd) ...... 23

*Dawson v. State*, 868 S.W.2d 363 (Tex. App. – Dallas 1993, pet. ref'd) ........................ 21

*Ellett v. State*, 607 S.W.2d 545 (Tex. Crim. App. 1980) ................................................ 23

*Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002) ........................................... 20

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) .......................................... 11, 12

*Hubert v. State*, 312 S.W.3d 554 (Tex. Crim. App. 2010) ............................................... 11

*Jenschke v. State*, 147 S.W.3d 398 (Tex. Crim. App. 2004) ........................................... 17

*Lown v. State*, 172 S.W.3d 753 (Tex. App. – Houston [14th Dist.] 2005, no pet.) ... 20, 25

*Luna v. State*, 268 S.W.3d 594 (Tex. Crim. App. 2008).................................................. 19

*Meekins v. State*, 340 S.W.3d 454 (Tex. Crim. App. 2011) ........................................... 18

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007)............................................... 17, 21

*Miller v. State*, 335 S.W.3d 847 (Tex. App. – Austin 2011, no. pet) ............................. 19

*Mitchell v. State*, 12 S.W.3d 158 (Tex. App. – Dallas 2000, no pet.)............................. 25

*Muhammed v. State*, 331 S.W.3d 187
    (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd) ..................................................... 24

*Rogers v. State*, 113 S.W.3d 452 (Tex. App. – San Antonio 2003, no pet.).............. 20, 25

*State v. Ballard*, 987 S.W.2d 889 (Tex. Crim. App. 1999)......................................... 12, 15

*State v. Kelly*, 204 S.W.3d 808 (Tex. Crim. App. 2006) ................................................. 12

*State v. Robinson*, 334 S.W.3d 776 (Tex. Crim. App. 2011)........................................... 16

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) .................................................... 12

*United States v. Jacobsen*, 466 U.S. 109 (1984)............................................................. 16

*Valtierra v. State*, 310 S.W.3d 442 (Tex. Crim. App. 2010) ..................................... 19, 23

*Villarreal v. State*, 935 S.W.2d 134 (Tex. Crim. App. 1996).......................................... 20

Other Authorities

http://www.homesafesitters.com/articles/homeowner-checklist.php ................................ 22

v

No. PD-0159-12

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**GREGG CARL BAIRD,**
Appellant

v.

**THE STATE OF TEXAS,**
Appellee

---

### STATE'S BRIEF ON THE MERITS

---

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

### STATEMENT REGARDING ORAL ARGUMENT

This Court granted ground one of Appellant's petition for discretionary review on May 16, 2012 with the notation that oral argument will be permitted. Appellant, in his brief on the merits, has not noted whether he desires argument. The issues are both factually and legally straightforward, and argument will not necessarily further enhance the parties' briefs. Thus, the State requests argument only in the event that this Court desires or grants Appellant permission to argue.

### STATEMENT OF THE CASE

Gregg Carl Baird ("Appellant") was charged with committing thirteen counts of possession of child pornography. (1 CR 1-2); *see* TEX. PEN. CODE § 43.26(a). After the trial court denied a pretrial motion to suppress, Appellant entered a plea of guilty to ten of the counts, the State agreed to dismissal of ninety unadjudicated offenses, and the parties

1

waived a jury without agreeing to a specific term of punishment.  (1 CR 87; 3 RR 86; 4 RR 8-9; 6 RR 4; State's Exhibit Nos. 2-4).  After considering punishment evidence, the trial court accepted Appellant's guilty pleas, and it assessed sentences of ten years imprisonment in count 1, five years cumulated on count 1 in the second count, ten years probated for a period of ten years in count 3, and ten years concurrent to count 1 in the remaining cases.  (6 RR 4-5).  In a published opinion, the Tenth Court of Appeals overruled the two points of error, one challenging the denial of Appellant's pretrial motion to suppress and the other a punishment issue, and affirmed the convictions.  *See* *Baird v. State*, No. 10-10-00297-CR, 2012 WL 89905 (Tex. App. – Waco 2012, pet. granted).  Neither party requested rehearing, and this Court granted Appellant's petition for discretionary review on his first issue, only, on May 16, 2012.

2

## ISSUE PRESENTED

Does apparent consent result from an owner's failure to expressly deny consent?

## ISSUE RESTATED

Did the court of appeals correctly determine that Appellant provided apparent consent to enter his bedroom and use his computer when the trial court reasonably found that Appellant opened his home to his house guest's use, allowed her to help herself to anything, and made no specific restriction from accessing any room or prohibition from using any item?  Allowing deference to the finder of fact, the owner's failure to expressly deny consent supported the finding of apparent consent.

## STATEMENT OF FACTS

Appellant left the country to vacation with his parents, and he requested an acquaintance to take care of his dog in his home. (2 RR 14-15; 3 RR 55-56). When she decided to download songs from a compact disc in his home using his computer, she was shocked to find images of young male children engaged in pornographic poses. (2 RR 21-24, 26-27, 49-50, 53-54). She ultimately called the police, who after obtaining a search warrant, verified that the pornography did indeed contain images depicting children, seized the computer and arrested Appellant. (2 RR 61-63, 73-78).

### *The house sitter's testimony*

Dawn Renee Killien worked for the City of College Station in the GIS department. (2 RR 12-13, 31-32). She did not work for the police department or interact with Appellant as a law enforcement agent. (2 RR 13, 54). She knew Appellant casually through her boss, and they arranged for her to watch Appellant's dog while he went out of town. (2 RR 14-15).

The day Appellant left town, Killien went to the house, and he showed her around. (2 RR 16-17). He told her to help herself to everything and showed her around the house, including the master bedroom and bathroom. (2 RR 17, 43). The dog liked to be in his bed, but he did not want the dog sleeping there, so Appellant asked her to keep the bedroom door closed and left blankets to cover the furniture in other areas. (2 RR 18-20, 41-43). Appellant requested she keep the bedroom door closed both when she was there or not there. (2 RR 43-44). Appellant did not indicate any area that she should consider off limits and suggested only that neither she nor the dog would spend time in the room

4

or office belonging to Appellant's roommate.  (2 RR 19-20).  Appellant did not instruct Killien to stay out of his master bedroom or tell her not to use the computer in his bedroom. (2 RR 20).

When staying there, Killien had difficulty operating Appellant's television and DVD system, so when she noticed a music CD she wanted to listen to, she brought it to the computer to copy.  (2 RR 18-19, 21, 40).  Appellant had left the computer powered on, and the screen activated when Killien touched the mouse. (2 RR 22).  The desktop did not require a password to access.  (2 RR 22, 54-55).

Killien put the songs she sought to download into a folder to transfer the files to her phone, however she was unable to download the songs with the music program.  (2 RR 22-23, 50-51).  Consequently, Killien deleted the files she had just added and did so by opening the "recent documents file" and "recycle bin." (2 RR 23-24, 44-46, 49). The file names that were already contained in those folders disturbed her greatly, as they sounded like child pornography titles.  (2 RR 23-24, 26-27, 49-50, 53-54).  After consulting with people on an online forum and discussing what to do with others, she reported the presence of the computer files to the police. (2 RR 27-30, 57-59).

*Additional evidence*

After Killien called the police, College Station Police Officer, Michael Jose, investigated the offense. (2 RR 60).  He did not request Killien to retrieve computer files. (2 RR 61-63).  Instead, he put together the information and obtained a search warrant.  (2 RR 61-62).  Thereafter, William Odom, a computer forensic expert recovered the images that Killien viewed as well as numerous of other child pornography images saved

5

amongst the various electronic storage devices attached to Appellant's computer. (2 RR 63, 73-78). He confirmed that the images had not been password-protected and that Killien only minimally accessed the computer, discovering the files and inquiring on the chat forum. (2 RR 78-79, 85-86; 3 RR 33-52). Rose Hubbard, a computer forensic analyst who testified on Appellant's behalf, however disagreed with Odom's confirmation that Killien first accessed the computer to attempt to download songs. (2 RR 87-90). Instead, she believed that Killien only used the computer and internet to chat much later in the evening and that no evidence showed she moved files or downloaded music. (2 RR 89-90, 92-110; 3 RR 5-31).

### *Appellant's testimony*

Appellant, thirty-nine years old at the time of trial, also testified at the motion to suppress hearing. (3 RR 54-70). He asked Killien to watch his dog, Copper, at his home while he went to Panama. (3 RR 55-56, 58). When she came to his home, Appellant showed her how to work the stereo and remotes. (3 RR 66-67). Appellant also told her that she should keep the master bedroom door closed to keep the dog out. (3 RR 56, 65-66). He claimed that he did not ever show her through his room or bathroom. (3 RR 56, 64-65). Appellant also explained that he did not tell her to help herself to anything she wanted, and at most may have referred to the food and beverages he had provided for her visit. (3 RR 62-63).

Appellant never gave Killien permission to use his computer. (3 RR 56-57). He also never told Killien that he did not want her to use his computer. (3 RR 61). He did not lock the door to the master bedroom, and although he told her to keep the door

6

closed, he did not tell her not to enter his bedroom.  (3 RR 59-60, 68-70).  Appellant kept

his computer in his bedroom, and he did not keep it locked in a cabinet or armoire.  (3 RR

61).  Appellant allowed his roommate access to the computer at any time and keep files

on it.  (3 RR 61-62).

### *The trial court's ruling*

The trial court considered the evidence at the hearing, and it denied Appellant's

motion to suppress.  (3 RR 86).  After the trial, Appellant requested the trial court enter

proposed findings of fact and conclusions of law.  (1 CR 116-18).  The trial court entered

its findings and conclusions.  (2 RR 21-22; *see* State's Appendix 1).  It did not alter them

in response to Appellant's objections.  (1 RR 119-20; 2 RR 150-57).

### *Punishment evidence*[1]

After the trial court denied Appellant's motion to suppress, he entered pleas of

guilty to ten of the charged counts.  (3 RR 86; 6 RR 4).  Punishment evidence revealed

that Appellant purposefully stored child pornography on five of the devices at his home,

which included 62,000 images of suspected child pornography collected over a period of

five years.  (5 RR 13-21, 23-31, 34-36; 96-97).  Evidence included photographs from the

original one-hundred counts, bookmarks to pornography related websites, photographs of

Appellant personally engaging in bondage, sadomasochistic behavior activity or other

adult homosexual acts, scouting pictures unrelated to pornography, and chat logs with

---

[1] Although the punishment proceedings are beyond the scope the motion to suppress at issue, Appellant addressed them in his brief.  *See* Tex. R. App. P. 38.2(a)(1)(B); 70.3.

graphic discussion of sex and arrangements for sexual liaisons with strangers.[2]  (5 RR 36-64).  Appellant was affiliated with the Boy Scouts of America, spanning from the time he was a scout himself, and he participated in escorting kids aged thirteen to twenty-one on extreme camping adventures.  (5 RR 66-72, 76-77, 80-81).  Appellant previously pled guilty and received deferred adjudication for an evading arrest incident at Somerville High School in 2004, after he fled from the police investigating his presence in the parking lot at 11:00 p.m. on a Monday night.  (5 RR 85-92, 187-88).

Many witnesses testified on behalf of Appellant's good character, including some who had known him since they were teens, and none had ever seen him act inappropriately with them or children.  (5 RR 98-103, 116-18, 124-25, 126-29, 135-37, 138-39, 204-210, 211-19).  Appellant acknowledged possessing all of the child pornography, including extremely graphic photos of five and six year olds being violated by adults and gratifying himself to the images, but he denied ever having sexual contact with an underage child or having sexual thoughts toward the Scouts when camping with the boys.  (5 RR 144-45, 148, 158, 164, 169-74, 199).  He admitted to engaging in sexually explicit chats over the internet and arranging meetings with strangers for sexual liaisons.  (5 RR 178-85, 190-93).  He discussed how being raped by two older male Scouts impacted him, a secret he kept within himself until he was thirty-eight years old,

---

[2] Some of the photographs contain images that mimicked poses in the child pornography but none depicted his participation in sexual acts with children.

and noted his diagnosis of HIV the previous year and a large amount of medical expenses. (5 RR 142-43, 146-47, 152-55, 174).

## SUMMARY OF THE STATE'S ARGUMENT

The court of appeals correctly determined that Appellant provided apparent consent to enter his bedroom and use his computer. The trial court reasonably found that Appellant opened his home to his house guest's use, allowed her to help herself to anything, and made no specific restriction from accessing any room or prohibition from using any item. Allowing deference to the finder of fact, the owner's failure to expressly deny consent supported the finding of apparent consent.

## ARGUMENT

Assessing consent for another person to utilize an owner's items is an inherently factually based determination, especially when the owner never specifically limited the scope of his permission or restrictions. The only manner in which a trial court can make that determination is by considering all of the relevant evidence and use its discretion to decide whether the absence of specific direct consent precluded consent at all and implied apparent consent. The only manner in which an appellate court can review a trial court's finding that a person provided apparent consent is review of that determination in light of a reasonable person standard. This is how the Tenth Court of Appeals determined that the trial court properly overruled Appellant's motion to suppress, and this is the manner in which this Court can only conclude that under the facts presented, applicable burdens of proof, and the law, Appellant's motion to suppress was properly denied, and the conviction should be affirmed.

***Standard of review***

A bifurcated standard of review is applied to a trial court's ruling on a motion to suppress. *See Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). An appellate court should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court should also give the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns

11

on an evaluation of credibility and demeanor.  *See id.*  However, if "mixed questions of law and fact" may be resolved without the trial court's assessment of the veracity of the witnesses, an appellate court should review the ruling *de novo*.  *See id.*

When the trial court enters findings of fact, as in this case, the appellate court should defer to the trial court's findings when they are supported by the record.  *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006).  At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Further, the trial court's ruling will be upheld if it is supported by any valid theory, regardless of whether the State raised it in the trial court.  *See State v. Ross,* 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

### *The Tenth Court of Appeals opinion, the trial court's findings, and the record*

In addressing Appellant's claims on appeal, the Tenth Court's opinion provided a factually accurate and thorough recitation of the record that is well supported by the record and the trial court's factual findings.  Unquestionably, even if the trial court's findings are subject to different interpretations with regard to the scope in which Killien could access items and areas within Appellant's home, as court of appeals noted, the evidence is reviewed in a light most favorable to the trial court's ruling.  *Baird*, at *3.  As sole judge of the credibility of the witnesses, which included specifically finding Killien's testimony credible, neither Appellant's challenges to the trial court's findings nor the court of appeals' reliance upon those findings can be assailed.  *Id.* at *3-4.

12

The court of appeals properly rejected Appellant's challenges to the trial court's findings that Appellant provided no restriction on the use of his home while he was in Panama for ten days. *Baird*, at *2-3. On the day Killien arrived to begin house sitting, Appellant walked her through the house and showed her the general layout of the house, knowing that she would be staying at the home and visiting a few times a day to let the dog out. (2 RR 16). Appellant did not indicate any area as off limits to her. (2 RR 19-20). He even showed her his roommate's room and office without prohibiting her entry into those rooms, noting only that she was unlikely to use the rooms and they were the roommate's:

> He did point out that the spare - - there was a roommate and this was the roommate's bedroom and this was the roommate's office. You know, kind of indicating that those were probably places that neither I or the dog would be going. But, no, he said help yourself to everything.

(2 RR 19); *Baird*, at *3, n.4. On more than one occasion, Appellant told her to help herself to anything. (2 RR 43). And while Appellant seeks to limit that global invitation to help herself to anything as referring only to the food and beverages he provided for her visit, Killien specifically denied that the "help yourself" reference referred only to food. (*compare* 2 RR 43, *with*, 3 RR 62-63); *cf.* Appellant's brief at 13 (arguing that the record showed open access only to the kitchen). In fact, Killien noted that the opening of cabinets and cupboards had more to do with showing her were things were located, including the dog leash. (2 RR 20). The lack of any restriction on the use of Appellant's house while Killien stayed there was an issue well supported by the record and well within the trial court and court of appeals discretion to uphold.

13

In regard to Appellant's bedroom, the extent to which Killien was free to enter Appellant's bedroom and his instructions on the matter did contain some factual disputes appropriately resolved by the trial court, to which the court of appeals appropriately deferred. Killien recalled Appellant showing her the master bedroom and bathroom without restricting her entry into the rooms, asking only that she ensure the door remained closed when the room was unoccupied. (2 RR 17, 20, 41, 43-44). In fact, she recalled his telling her only to keep the door closed to keep the dog out of the bedroom without regard to her presence within the bedroom.[3] (2 RR 43-44). The court of appeals accurately noted that "it is undisputed that, in telling [Killien] to keep his bedroom door shut at all times, it was said in conjunction with his desire to keep the dog out of his bedroom." *Baird*, at *3. In light of the trial court's determination that Killien credibly testified, the trial court also had the discretion to disbelieve Appellant's testimony that he never took her into the master suite. (3 RR 56, 64-65). Even if Appellant possessed an unstated desire for her to stay out of his bedroom, he never told her not to go in the bedroom, did not leave the door locked, and generally opened his house to her use; thus, the finding that Appellant placed no limitation or restriction on access to his bedroom is well supported. (3 RR 56-57, 60-61).

---

[3] Although Appellant argues his instruction to keep the door closed "when you were there" constituted a restriction from the bedroom, it also could be an invitation to use it if "there" referred to the bedroom and not the house, and it did not suggest complete exclusion of even temporarily entering the bedroom. *Cf.* Appellant's brief at 16.

14

With regard to the computer, the court of appeals noted that Appellant never provided instruction about the use of his computer. *Baird*, at *3. Both Appellant and Killien agreed that Appellant never gave Killien specific permission to use his computer.[4] (2 RR 20; 3 RR 56-57). They also agreed that he never forbade her from it. (2 RR 20; 3 RR 61).

The court of appeals addressed the specific challenges to the factual challenges that Appellant claims are unsupported by the record, that he "placed no limits or restrictions on Killien's access to his home, bedroom, or computer" and whether Appellant "told her to 'help herself to anything,' or words to that effect." *Baird*, at *3. Those findings, allowing deference to the trial court in its factual determinations, are well supported by the evidence notwithstanding Appellant's claims of inaccuracy. *See* Appellant's brief at 12-13. The trial court possessed the discretion to completely disregard Appellant's testimony regarding his bedroom, determining his protestations incredible and offered only in hindsight to support his motion to suppress. *See Ballard*, 987 S.W.2d at 891. As the court of appeals iterated more than once when addressing allegedly faulty factual findings, they are supported by the record and those findings establish effective consent for Appellant to be in his house, access his bedroom, and use the computer. *Baird*, at *3-4.

---

[4] Appellant did allow his roommate to come into his room at anytime to use the computer and store files on it, but the record does not suggest the Killien was aware of that fact. (3 RR 61-62).

*The significance of consent to Appellant's possession of child pornography*

Appellant premised his motion to suppress on the contention that Killien committed a criminal offense by entering his bedroom and using Appellant's computer. When a defendant seeks suppression of evidence alleging that the violation of a statute warrants exclusion under Article 38.23, he maintains the burden of producing evidence to establish that unlawful conduct occurred. *See* TEX. CODE CRIM. PROC. art. 38.23; *State v. Robinson*, 334 S.W.3d 776, 778-79 (Tex. Crim. App. 2011). The procedure is similar to a motion to suppress under Fourth Amendment grounds, although a separate inquiry, and it requires proof a statutory violation before the State possesses any burden to establish compliance with the statute allegedly violated. *Id.*

The issue this Court granted for consideration in this case relates only to alleged statutory violations that Appellant argued Killien committed in the motion to suppress, criminal trespass and breach of computer security.[5] *See* TEX. PEN. CODE § 30.02(a); TEX. PEN. CODE § 33.02(a). The issue solely relates to whether the trial court properly denied suppression of evidence under the Texas exclusionary rule. *See* TEX. CODE CRIM. PROC. art. 38.23. The issue is not an issue of federal constitutional dimensions, as the Fourth Amendment prohibits only the use of evidence improperly obtained by the government. *See United States v. Jacobsen*, 466 U.S. 109, 117 (1984); *see also Brackens v. State*, 312

---

[5] In the court of appeals, Appellant also urged that he violated federal law in accessing Appellant's computer, which was not specifically urged in the trial court and is not included as a basis in his brief to this Court. (1 CR 80-82; 3 RR 74-76); *see* 18 U.S.C.A. § 1030.

S.W.3d 831, 837 (Tex. App. – Houston [1st Dist.] 2009, pet. ref'd) (holding computer technician who found child pornography on a laptop that a defendant took to Circuit City for repair not a search by the government and the Fourth Amendment inapplicable).  The issue is also not a question of etiquette, whether a thoughtful extended overnight houseguest should request specific permission before entering a bedroom, accessing a computer, or using any of the household amenities is not the determinative issue.  The issue is wholly an issue of Texas law under Code of Criminal Procedure 38.23 involving the scope of the consent that Appellant allowed Killien in giving her access to his house for ten days to determine if she violated the law when inadvertently discovering evidence of an offense.[6]  *See* TEX. CODE CRIM. PROC. art. 38.23; *Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007).

The record unequivocally establishes that Appellant did not expressly consent to or deny Killien's access to his computer.  The findings of fact support the trial court's finding that Appellant did not specifically prohibit Killien from entering the bedroom.  The court of appeals accurately referenced that "[c]onsent means assent in fact, whether express or apparent."  *See* TEX. PEN. CODE § 1.07(I)(11).  "Effective consent" can be

---

[6] As the aim of excluding evidence under 38.23 is a prophylactic measure to protect from any person's overzealous search for evidence or contraband, its enforcement serves no application to an inadvertent discovery wholly unrelated to a specific search for contraband. *See Miles*, 241 S.W.3d at 36, n.33; *see also Jenschke v. State*, 147 S.W.3d 398, 400-402 (Tex. Crim. App. 2004) (suppressing a private person's burglary with intent to obtain evidence of a crime but not to turn over to law enforcement).  Indeed, society would be better served by prosecuting the commission of an illegal search as well as the an incidental discovery of evidence of a wholly unrelated offense.

conveyed by an owner, and the record reveals no disability preventing Appellant from providing effective consent to use his property or home.[7]   *See* TEX. PEN. CODE § 1.07(1)(19); *see also* TEX. PEN. CODE § 33.01(12) (including knowing that the owner has not authorized use when an offense relates to computer crimes).   Thus, in terms of the issue before this Court, it is not just whether "apparent consent result[s] from an owner's failure to expressly deny consent;" rather, the legal significance of consent to this case is whether Appellant established that he did not grant apparent consent to use particular items or enter rooms even though he never expressly denied his consent.   Under the circumstances, as a factual matter, Appellant failed to meet his legal burden.

### *Apparent consent is not foreclosed by an express denial or permission*

The need to determine whether a person has received apparent consent, by definition, presupposes an absence of express consent in fact.   *See* TEX. PEN. CODE § 1.07(1)(11).   When the circumstances surrounding consent are ambiguous or not otherwise directly apparent, the only manner to make the determination must be an objective standard of reasonableness, or in other words, what would an ordinary reasonable person in the same circumstances have understood? *See Meekins*, 340 S.W.3d

---

[7] Appellant's argument that apparent consent cannot occur "when express consent is not specifically denied" and his reference to a "voluntary and intelligent consent" inverts his burden of proof and ignores his ability to establish factual situations in which consent is not effective, such as when induced by force, threat, fraud, or other factor impacting his mental capacity.   *See* TEX. PEN. CODE § 1.07(1)(19)(A-D).   The reference may be an in-apropos analogy to the requirement that a suspect to an offense voluntarily consent before speaking to law enforcement when in custody.   *See Meekins v. State*, 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011).

at 461-463 (noting also that issues of consent in a consent to search by the police issue are necessarily fact intensive).  Because the standard is objective, the subjective beliefs of the parties' understanding of their belief of the scope of consent is a relevant factor, but only to the extent their thoughts and actions may have conveyed some information relevant to their understanding.  *Id.* at 463 n.41.  Thus, silence on an issue of apparent consent is not necessarily determinative, although an open-ended grant of broader permission without additional specific limitation would not make a reasonable person believe limitations were intended.  *See Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010) (discussing how a person's silence in the face of observing the search can imply consent).  While Appellant unquestionably had a right to specifically exclude areas of his home from Killien, her status as an overnight guest for multiple days requiring more access to the effects of the home than a temporary visitor, such as the plumber or housekeeper to which Appellant postulates in his brief, is a relevant factor. *See* Appellant's brief at 19-20; *see also Luna v. State*, 268 S.W.3d 594, 603 (Tex. Crim. App. 2008) (holding that overnight guests are accorded a legitimate expectation of their own privacy in the place she spends the night).  In fact many of the same factors that could be used to assess whether Appellant demonstrated a subjective expectation of privacy in his bedroom or computer are relevant to whether he provided apparent consent.[8]  *See Miller v. State*, 335 S.W.3d 847, 854-56 (Tex. App. – Austin 2011, no.

---

[8]  When assessing whether society is prepared to recognize that privacy interest in a place is objectively reasonable, a court looks to all of the circumstances.  *See Granados v.*

19

pet); *Lown v. State*, 172 S.W.3d 753, 761 (Tex. App. – Houston [14th Dist.] 2005, no

pet.); *Rogers v. State*, 113 S.W.3d 452, 458 (Tex. App. – San Antonio 2003, no pet.).

Given all of the circumstances, the findings of the trial court and court of appeals

that Appellant had not restricted the use of his computer or bedroom are well supported,

and Appellant  provided no reason for Killien to believe she could not access the items in

his house during her ten-day stay.  For all purposes, Appellant was quite a gracious host,

seeking to maximize Killien's comfort.  He sought to prearrange her preferred foods and

beverages.  (2 RR 19-20; 3 RR 63).  He showed her how to work the stereo and remotes.

(3 RR 66-67).  He gave her a complete tour of the house, while noting more than once

that she could help herself to anything.   (2 RR 16, 43).   Appellant even did not

specifically exclude entry to his roommate's room.  (2 RR 19).  The lack of wholesale

restrictions make sense, given that Killien's responsibility could have included not just

---

*State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).  Factors may include, but are not
limited to:

> (1) whether the accused had a property or possessory interest in the place
> invaded; (2) whether he was legitimately in the place invaded; (3) whether
> he had complete dominion or control and the right to exclude others; (4)
> whether, prior to the intrusion, he took normal precautions customarily
> taken by those seeking privacy; (5) whether he put the place to some
> private use; and (6) whether his claim of privacy is consistent with
> historical notions of privacy.

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

20

the dog but unforeseen emergencies that require immediate attention, such as a plumbing leak during an extended absence.

On the other hand, Appellant not only did not forbid Killien from entering his bedroom or use his computer, he provided no indication that might make a person believe he meant them to be private.  (3 RR 56-57).  He neither locked the bedroom door nor kept the computer secured, physically, such as in a cabinet or armoire, or by password,  (3 RR 59-61).  Taking the extra steps to add security measures, such as locking the bedroom door, installing file security, or requiring a password (as might be required to log in to a music program), would have been signs that Appellant intended to restrict the scope of his invitation.  *See, e.g., Dawson v. State*, 868 S.W.2d 363, 371 (Tex. App. – Dallas 1993, pet. ref'd) (finding the addition of a personal lock to a private locker made an expectation of privacy a reasonable one that society was prepared to recognized).  Appellant did not even power-down the computer before leaving town.  (2 RR 22, 54-55).  Furthermore, Appellant left the computer in his bedroom available to his roommate to utilize at any time to store his own files.[9]  (3 RR 61-62).  Neither computers nor bedrooms are, solely by their nature, automatically accorded a heightened expectation of privacy such as may be the case with purses, wallets, photographs, letters, and diaries.  *See Coronado v. State*,

---

[9] The fact that Appellant allowed a third person, who could have discovered and reported the pornography to the police completely independently of the legality of Killien's access, not only greatly diminishes Appellant's standing to assert a privacy right in the computer, it also defeats the purpose of excluding unlawful conduct by a person who is not a police officer. *See Miles*, 241 S.W.3d at 39. Both rationales provide justification to affirm the lower courts without regard to the consent issue before this Court.

835 S.W.2d 636, 640 (Tex. Crim. App. 1992).  In fact no evidence suggested that Killien

sought to rifle through drawers or snoop through Appellant's personal email.  (2 RR 78-

79, 85-110; 3 RR 5-52).  Appellant's reliance on his belief that ambiguous instructions

relating to keeping the dog out of the bedroom implied her exclusion as well, in and of

itself, does not counter all of the other factors showing his apparent consent.

A broad scope of implied consent to a guest staying in a home for several days is

simply a matter of common sense when no specific restrictions exist.  If hungry, she will

look in the cupboard.  If thirsty, she will get a drink from the refrigerator.  If she has a

headache or upset stomach, she will look for medicine.  If she is bored, she will turn on

the television, listen to the radio, or find a DVD (provided that she can remember how to

operate the remotes).  And given that in today's age computers are just another appliance

with multiple uses, she might check her email or attempt to download a song from a

compact disc or the internet.  Concerns about house rules while a homeowner is away,

such as a computer or exercise equipment, are ineffectual if not conveyed, and as one

non-authoritative house sitting website suggests, all of the house rules and information

should   be   specified.   *See*   http://www.homesafesitters.com/articles/homeowner-

checklist.php (State's Appendix 2).  An invitation to "help yourself to anything" is not

sufficiently specific to allow Appellant to establish Killien's guilt of a criminal trespass

or breach of computer security justifying the exclusion of evidence of the child

pornography supporting the conviction.  Indeed, the authorization to "help yourself to

anything" is such a broad grant of authority that it could be considered an express consent

for all purposes.

22

*Appellant did not meet his burden to show a criminal trespass*

The offense of criminal trespass requires a lack of effective consent as well as notice either that entry was forbidden or the owner told her to depart after bringing her into his bedroom. *See* TEX. PEN. CODE § 30.02(a). Here, Appellant never forbade Killien from entering his bedroom, specifically admitting that he "never told her she could not go into [Appellant's] bedroom." (3 RR 60). He certainly did not tell her that she could not enter after he consented to the initial entry by inviting her in the room. *See* TEX. PEN. CODE § 30.02(a)(2). Thus, even if Appellant subjectively meant to exclude Killien from his bedroom, he did not manifest that desire to her. *See Valtierra v. State*, 310 S.W.3d at 452 (finding a general consent to enter an apartment to include consent to walk down an open hallway); *Crunk v. State*, 934 S.W.2d 788, 794 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd) (finding that a roommate does not commit criminal trespass by entering an unlocked bedroom in the house shared with others).

The circumstances of Killien's entry are markedly different from cases finding apparent consent ineffective. For instance, an open door to a building, where the defendant had absolutely no reason to believe he had permission to enter, could not establish effective consent. *See Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980). Nor could permission to enter an apartment be viewed as apparent consent to enter a padlocked bedroom door. *See Allison v. State*, 113 S.W.3d 476, 478 (Tex. App. – Houston [1st Dist.] 2003, no pet.). While Appellant argues that specific rooms may be excluded from those invited to enter a residence, his ability to do so is not disputed; rather, his failure to manifest any desire to do so is. *See* Appellant's brief at 18.

23

Appellant cannot establish that Killien committed a criminal offense, that did not have apparent consent to enter the bedroom, and that the child pornography should have been suppressed.

### *Appellant did not meet his burden to show a breach of computer security*

The offense of breach of computer security requires a person to knowingly access a computer system without the effective consent of the owner. *See* TEX. PEN. CODE § 33.02(a). In offenses involving computer crimes, effective consent includes consent by a person legally authorized to act for the owner. *See* TEX. PEN. CODE § 33.01(12). Consent is not effective if induced by deception, given by a person not legally authorized to act for the owner, given by a person incompetent to make reasonable property dispositions, given solely to detect the commission of an offense, or used for a purposes beyond the scope of the consent.[10] *Id.* Proof of culpability for the offense includes knowing that the actor does not have the effective consent of the owner. *See Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd).

Thus, to meet his burden in proving that Killien committed a breach of computer security, Appellant had to establish that she knew she did not have consent, express or apparent. *See* TEX. PEN. CODE § 33.02(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct

---

[10] The definition of owner also includes a person in possession of the property, whether lawful or not, or has a greater right to possession of it, which would have permitted Killien prosecute another person's illegal use but has no bearing in this as Appellant had a greater of possession. *See* TEX. PEN. CODE § 33.01(15).

when he is aware of the nature or the circumstances of that conduct.  *See* TEX. PEN. CODE § 6.03(b).   That is a higher burden than proving that Killien believed recklessly (consciously disregarding a risk of which she should have been aware) or believed negligently (ought to have been aware of the risk) that she had effective consent to access Appellant's computer.  *See* TEX. PEN. CODE §§ 6.02(d); 6.03(c) & (d).  Without having discussed the computer issue one way or the other, only circumstantial evidence of Appellant's desire to prohibit Killien from the computer can be assessed, and Appellant left no outward signs for Killien to have known that the computer was off-limits.  Again, Appellant left the computer on, whether he had intended to do so or not, and it was in the open.  (2 RR 22, 54-55; 3 RR 64).  He did not password protect his files, provide items related to specific personal profiles, and left files labeled with his roommate's name on it for his access.  (3 RR 61-62).

As is necessary to establish a genuine intention to preserve something as private, Killien could not know that Appellant meant for her not to use the computer absent evidence to the contrary.  *See Lown*, 172 S.W.3d at 761; *Rogers*, 113 S.W.3d at 458. Similarly, Killien's use of the computer was not extraordinary, accessing only the standard operating system and installed programs available to utilize and then erase the songs she put on the computer.  *Cf. Mitchell v. State*, 12 S.W.3d 158, 159 (Tex. App. – Dallas 2000, no pet.) (finding no apparent consent when the defendant attempted to corrupt computer files on her last day of work).  Appellant's allowance of his roommate to access his computer even further indicates no desire on Appellant's part to restrict access to its use.  (3 RR 61-62).  In light of the evidence, Appellant cannot that establish

25

that Killien used Appellant's computer knowing that he intended to prohibit her from using it.  When Appellant engaged Killien to care for his dog and home for ten days, he shared all areas of his house by telling her to make herself at home to anything, and the trial court reasonably concluded that such access included use of the computer.

## CONCLUSION AND PRAYER

The Tenth Court of Appeals correctly determined that the trial court's finding of apparent consent included many more facts than simply Appellant failing to expressly deny consent, as Appellant claims, and finding that the child pornography on Appellant's computer was not obtained in violation of the law was a proper determination.

WHEREFORE, premises considered the State prays that this Court affirm the ruling of the Tenth Court of Appeals affirming Appellant's conviction.

Respectfully submitted,

**BILL TURNER**
District Attorney
Brazos County, Texas

**JEFFREY GARON**
Assistant District Attorney
300 E. 26th St., Suite 310
Bryan, Texas 77803
State Bar No. 00790746
(979) 361-4320
FAX (979) 361-4368

## CERTIFICATE OF SERVICE

A true copy of the State's Brief has been mailed to counsel for Appellant, Richard E. Wetzel, Attorney at Law, 1411 West Ave., Ste. 100, Austin, Texas, 78701, and the State Prosecuting Attorney, Lisa McMinn, P.O. Box 13046, Capitol Station, Austin, Texas 78711-3046 on this, the 31st day of July 2012.

JEFFREY GARON
Assistant District Attorney

27

# STATE'S APPENDIX NO. 1

(Trial Court's Findings of Fact and Conclusions of Law)

Cause Nos. 09-02492-CRF-272; 09-02493-CRF-272; 09-02494-CRF-272; 09-02495-CRF-272;
09-02496-CRF-272; 09-02497-CRF-272; and 09-02498-CRF-272

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 272nd DISTRICT COURT |
| | § | |
| VS. | § | IN AND FOR |
| | § | |
| GREGG CARL BAIRD | § | BRAZOS COUNTY, TEXAS |

FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING
DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE

On the 26th day of February, 2010, the Court heard the testimony concerning the Defendant's Motion to Suppress Evidence in each of the above referenced Causes and DENIED the motion. Now taking judicial notice of the Court's file in each Cause referenced above, this Court makes the following findings of fact and conclusions of law:

Findings of Fact

1. The defendant, Gregg Baird, is currently charged with 100 counts of Possession of Child Pornography under section 43.26 of the Texas Penal Code.
2. All findings of fact made herein are based upon the credibility of the witnesses.
3. Dawn Killian provided credible testimony regarding the circumstances of her access to Gregg Baird's home, bedroom, computer, and information on that computer.
4. Detective Johse of the College Station Police Department provided credible testimony regarding his investigation.
5. Bill Odem provided credible testimony as to his forensic assessment of Gregg Baird's computer.
6. Dawn Killian was invited by defendant Gregg Baird into his home for the purpose of pet-sitting.
7. Dawn Killian was expected by Gregg Baird to reside at his home for approximately ten (10) days while he was away on vacation.
8. Gregg Baird placed no limits or restrictions on Dawn Killian access to his home.
9. Specifically, Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his bedroom.
10. Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his computer.
11. Gregg Baird took no steps to limit or restrict access to his bedroom or computer, and took no steps to protect the information on his computer through the use of passwords, encryptions, or other such methods.
12. Prior to his leaving his home, Gregg Baird showed Dawn Killian around his home, including his bedroom and bathroom.
13. Gregg Baird told Dawn Killian to "help herself to anything" or words to that effect.
14. Dawn Killian accessed Gregg Baird's computer by moving the computer's mouse and awakening the computer from sleep mode.

15. Dawn Killian's access to the bedroom and the computer was reasonably foreseeable to Gregg Baird.

16. Dawn Killian's access to Gregg Baird's computer was superficial and the files she accessed were accessed from the desktop of the computer requiring not more than two (2) mouse-clicks to access and view.

17. Dawn Killian had no intent to invade the privacy of Gregg Baird.

18. Dawn Killian is a private citizen, was not acting for or under the direction of law enforcement, and did not anonymously report Gregg Baird's suspected possession of child pornography to law enforcement.

19. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law, and any conclusion of law that is a finding of fact shall be deemed a finding of fact.

<u>Conclusions of Law</u>

1. Dawn Killian committed no criminal offense which led to discovery of evidence against the defendant, Gregg Baird.

2. Specifically, Dawn Killian did not commit the offenses of Burglary of a Habitation (30.02 Texas Penal Code), Criminal Trespass (30.05 Texas Penal Code), or Breach of Computer Security (33.02 Texas Penal Code).

3. Dawn Killian had Gregg Baird's effective consent to access his bedroom and computer.

4. Gregg Baird had no reasonable expectation of privacy in the contents of his computer.

5. Article 38.23 of the Texas Code of Criminal Procedure does not apply to the facts of this case because no criminal offense was committed by Dawn Killian in accessing Gregg Baird's bedroom or computer.

6. The affidavit in support of the search warrant at issue in this case presented sufficient probable cause to search Gregg Baird's residence and computer located in his bedroom.

7. The information provided in the affidavit for the search warrant at issue was sufficient for a neutral and detached magistrate to conclude that Dawn Killian was credible and that the information she provided to the College Station Police Department was credible and reliable.

SIGNED the 24 day if Aug 2010

Travis B. Bryan III
Judge Presiding

2

# STATE'S APPENDIX NO. 2

(Checklist to leave your house and pet sitter URL)

**ABOUT HOMESAFESITTERS**

HomeSafeSitters Home

About Us

House Sitting Experience

Why We Love House Sitting

Why Choose Us to House Sit?

The Benefits of Getting a Professional House Sitter

Our House Sitting Booking Sheet

Contact Us

**HOUSE SITTING RESOURCES AND ARTICLES**

What Better Arrangement for All Involved but Humble House Sitting?

How to Become a House Sitter, in Two Easy Steps.

Homeowners: Checklist of Things To Do Before You Go

Pet Owner Checklist

**HOW TO BECOME A HOUSE SITTER**

Join HouseCarers and have homeowners start applying to have you house sit for them from all over the world!

# Home owners: Checklist of things to leave your House and Pet Sitter before you go on holiday

There are a number of things that you as the homeowner can do before you go, in order to give both yourself and the house sitter peace of mind while you are away.

## Leave a detailed information pack for the house sitter

An information folder is an essential item to leave a house sitter. It gives them somewhere to go for any information they may require.

We are always relieved to have something to look over as there is usually an awful lot to remember about another person's way of life. You may think there is, but there is no such thing as too much information.

*Below are some ideas of what to put in the pack:*

**The House sitting contract:**

A good housesitter will provide you with a house sitting contract to sign to protect everyone involved. This is part of the service they should provide. it is a good idea to put a copy of this in the pack, this serves as a reminder and also contains important contact information. Make sure it is a copy and not the original as you want to keep that for yourself.

**Travel itinerary and personal contact information:**

Leave your itinerary of the dates and places you are going. If required you could leave the names and phone numbers of hotels etc you are staying in. If you are only wanted to be contacted in an emergency make sure you let the house sitter know this.

Leaving an email address is a good idea and that way the house sitter can

SPONSORED LINKS

**The page isn't redirec proper**

Firefc has detec that the serve is redire the reque for this addre in a way that will nevei comp

- This proble can someti be caused by disablii or refusing to accept cookies

send you informal updates on how the house sit is going, and how jealous they are of the great time you are having in exotic locations.

**Other contact information:**

It is a good idea to have someone you are close to who also lives in the area to be a contact for your house sitter. This could be a neighbour, relative, friend or work colleague. The house sitter can then liaise with this person if they need to know anything about the house or (touch wood) in an emergency.

It is preferable for the contact to have a sound knowledge of your home, pets and area. Choose someone who is comfortable to make decisions regarding your home if neccessary. Leave enough contact info so that the person you nominate can be contacted at a moments notice. If possible it is a good idea to get the contact and house sitter to meet before you leave. If not, very soon after the sitter arrives.

Make sure you also leave the contact details of the local emergency services such as police, ambulance etc. it is not unusual for visitors to be unfamiliar with emergency services. In Australia it is 000 and this was something we had to find out for ourselves.

It is also good to leave the contact details of local doctors, vets, service providers etc. Basically anywhere you think it would good for the house sitter to have contact details for. They should have provided you space for this in the contract.

**Maps, transport and area information:**

Maps are a great thing to include in your information pack, especially if the house sitter is not from the area. You could mark off local shops, tourist attractions etc close by for the house sitter. Also try to provide info on the local transport systems such as bus and train services.

Any information you can give the house sitter on the area is greatly appreciated.

**House rules and information:**

Here you can include anything you want the house sitter to know about the rules of the house and also any information they may need to know while you are away.

*Some ideas include:*

- Any duties that are required to maintain the house to the standard you would like.
- If your home is an apartment or in a closed community - the rules and regulations of the complex.
- Your policy on allowing your house sitter to have visitors, or to have people staying at the house while you are away.
- List of any contents you do not wish your house sitter to use. E.g. computer, exercise equipment etc.
- Info on the security and alarm system if you have one. Also instructions on how to use the locks on the windows and doors.
- Rooms or areas on your property you do not wish the house sitter to use.
- Info on where to find things such as cleaning products, fresh linen, towels etc.
- Anything else the house sitter may need to know about your home

**Utilities and appliances:**

It would be a good idea to have your house sitter well informed of the utilities and appliances they will be using in your home. They will need to know how to use and maintain these items. Might be a good idea to leave the contact details of good electricians, plumbers or a handyman friend just in case.

*Electricity and Gas:* Leave information about the safe use and whereabouts of mains and meters.

*Water:* Leave information of the whereabouts of water mains if maintenance is required. If your area has water restrictions leave info on the use of water. Things such as how much can be used, when it can be used and methods of use.

*Heating and air-conditioning:* Leave information on how to use any air conditioning units, heaters, fire places etc.

*Kitchen and Laundry appliances:* As we all know each appliance is unique. Some have a mind of their own while others are just downright confusing. Your house sitter should be able to work most appliances in your home but it is a good idea to leave a little bit of information on those that may need it.

*TV's, Stereos, and Computers:* Leave any instructions that may come in handy for the house sitter. We've had home owners label remotes and this has been brilliant. If you have time, please try to leave a detailed reference guide for entertainment systems.

**Garden, Lawn and Pool maintenance:**

A house sitter doesn't only look after the inside of your home but the outside also. Provide any information you can to keep your property looking the way you want it.

*Lawn and Garden:*

Leave information on what is required from the house sitter in able to keep the lawn and garden to the standard in which they arrived including:

- Exactly what you want done e.g. lawns mowed, plants watered, leaves raked etc. Also include how often you want these duties performed.
- Instructions on how to use and maintain the lawnmower etc. How often the garden will need to be mowed and the best times to do this.
- Information on how, when and how often to water the lawn, flower/vegetable garden etc. If there are water restrictions it is important to let the house sitter know this fact (see utilities above).
- Instructions on where to find all gardening tools and supplies that will be required.
- Any other information that the house sitter will need to take care of your lawn and garden.

*The Pool or Spa:* The pool and spa can be difficult to look after. If the house sitter is well informed there should be no problem.

Instructions should include:

- Exactly what is required to maintain pool standard.
- The whereabouts and use of cleaning equipment
- What chemicals are required and how and when to use them.

Important to include safety instructions when dealing with chemicals.

**Service Provider Information:**

*Rubbish/Recycling collection:* Let the house sitter know what days these will be collected and where to leave the bins on collection day. Leave info on which bins are for rubbish and which are for recycling and also what items are for recyclable (different areas recycle different items). Note down where rubbish bags can be found.

*Postal Services:* Let the house sitter know where you would like the mail to be put and what to do with any papers, leaflets and junk mail.

*Home delivery services:* If you there is anyone that will be delivering items

to your home while you are away leave info on the date and time that this is likely to occur. That way the house sitter can try to be home at these times. Let the house sitter know where to put delivered items.

*Home maintenance services:* If there are going to be any home maintenance providers (e.g. gardeners, cleaners etc) come over while you are away, leave info on when they will be coming over and what job they will be doing. You don't want irate house sitters chasing innocent maitenaince people away with rolling pins.

*Pay TV*: If you subscribe to pay TV, then leave info on how to operate the service. We have had home owners label their remotes, always handy for the confused house sitter.

*Internet:* If you are allowing the house sitter to use the computer and internet leave any info about the computer and internet provider that the house sitter may need to know.

**Vehicles:**

If you are leaving for a long period of time and you are leaving your vehicles behind, you may want your house sitter to take special care of them. It may be a car, motor bike, boat or even a bicycle. Whatever it may be make sure you the house sitter knows exactly how to look after any vehicles in your absence.

*Maintenance:* Let the house sitter know exactly how you want your vehicles maintained.

This could include:

- Starting the vehicle every now and again so battery doesn't go flat
- How to clean vehicle exterior and/or interior if required
- Taking your car in for a service or warrant while you are away
- Where to find all cleaning products and equipment

**Use of your vehicles by the house sitter:**

You may be quite happy for your house sitter to use all or some of the vehicles you may own. Obviously you will have checked that they are properly licensed and well bodied enough to do so. If the vehicle that is being used is insured call and put the house sitter on the insurance also. You will need their full names and date of birth for this.

Leave any info that the house sitter may require in using the vehicle including:

- What vehicles the house sitter may use, if any. (The house sitter shouldn't be disappointed if you don't want them to use your vehicles. It is a luxury, not a neccessity to provide your house sitter with a vehicle).
- Anything the house sitter may need to know about operating the vehicles (anything from starting it to what petrol it takes).
- Lock, alarm and security info.
- Rules on where and when the vehicles may be used.
- Where keys and garage remotes can be found.
- Local traffic rules and regulations.

Now I know all of this may seem like a lot to put in an information pack but how much or how little information you provide your house sitter is entirely up to you. Remember the information pack is designed to give both you and the house sitter peace of mind on while you are away.

## Getting your home ready for the house sitter.

**Setting the standard:**

When the house sitter first arrives, your home and property should look exactly how you want it to look when you arrive home from your travels. That way, the house sitter knows exactly what standard they are expected to keep the house at. We always try to better it. We love to leave the property even better than we left it.

**Letting others know you will be away and that there will be a house sitter:**

This is a very important step in the house sitting process. You need to do this to ensure there are no misunderstandings.

*People you need to inform include:*

- Relatives
- Neighbours
- Friends
- Your insurance company
- Any service providers e.g. gardeners, pool cleaners etc
- Anyone that may have contact with the house sitter while you are away

Safe proof your home:

House sitters will always do their utmost to look after a home and its contents to the best of their abilities. In saying this we are human beings

and accidents will occur from time to time. If there is anything that you definitely do not want to be broken then either put it somewhere safe (e.g. cupboard or spare room), or somewhere where the chances of it being broken are very slim (e.g. high shelf).

## What else will your house sitter need?

*Set of Keys*: You will need to provide the house sitter with their own set of keys **each** and a spare set if possible. This will help when they want to leave the house at different times. Make sure they have all the keys they will need to enjoy, secure and maintain your home.

*You could provide a little storage space*: The house sitter may need somewhere to put the things they bring with them. If possible, try and make some cupboard and/or drawer space for them.

*Stock up*: Stock up on the things that will make it easier for the house sitter to look after your home. Things like cleaning products, pet food, kitty litter etc. House sitters should bring their own bathroom products so you don't need to worry about those.

*Food, food, glorious food*: Anything non-perishable that you wish to be kept for your return, store away and/or inform the house sitter you don't want it to be eaten. Anything that is perishable that you would like cleaned up the house sitter will more than likely be happy to oblige. The way we usually work it is we will eat anything perishable that has been left then replace it. Feel free to make any arrangements that you see fit with the house sitter.

*Vehicle parking*: If the house sitter is bringing their own vehicle, try to provide an area for them to park it, or store it away. This may be a space in your garage or somewhere near your home.

Now you are ready to leave your home safe with the knowledge you have done everything you can to give both yourself and the house sitter peace of mind.

All that is left for you to do is go, relax and enjoy your time away knowing that your house sitter is well informed and well equipped to handle any situation!

Copyright © 2007 Home Safe Sitters. All Rights Reserved. | Privacy Policy