1    A.   I think a reasonable person -- I've had many
2  house sitters over the years.  I've never had one who --
3  I didn't think it was necessary.  If you tell someone to
4  keep the door shut, then I think that's a pretty clear
5  message.  Keep the door shut.
6    Q.   You previously testified under oath not five
7  minutes ago when you told her to keep the door shut that
8  was in connection with keeping the dog out of the
9  bedroom; do you recall that?
10   A.   Sure.
11   Q.   So the question I asked you was not what you
12 thought was reasonable.  My question is did you tell
13 her, "Dawn, I don't want you to go in my bedroom," or
14 anything explicitly indicating you didn't want her in
15 your bedroom?
16   A.   The only statement I recall telling her was to
17 please keep my door shut.
18   Q.   In connection with Copper, right?
19   A.   I don't know if those two statements were made
20 concurrently at the same time.
21   Q.   Let me ask the question one more time.  Did you
22 tell Dawn Killian explicitly, "Don't enter my room"?
23   A.   No.
24   Q.   That would have been a pretty easy thing to
25 say, wouldn't it?

1     A.   Sure.
2     Q.   And if it had been your intention to make sure
3 she did not go in, you would have made a point of that,
4 wouldn't you?
5     A.   I didn't think it was necessary.
6         MR. PHELPS:  Okay.  That's all I have of
7 this witness.
8         MR. JAMES:  Nothing further.
9         THE COURT:  You can step down, sir.
10        MR. JAMES:  We rest.
11        MR. PHELPS:  We have nothing further.
12        THE COURT:  Arguments?
13        MR. PHELPS:  I believe it's Mr. James's
14 motion.
15        MR. JAMES:  Mr. Phelps, if you'll allow me
16 to give the cases after I give them to him because I'll
17 get them all confused.
18        THE COURT:  I already have a big packet of
19 cases, if these are the ones you are referring to.
20        MR. JAMES:  Those are the bad cases, Judge.
21 I want to give you the good cases.
22        THE COURT:  Looks like your handwriting.
23        DEFENDANT'S CLOSING ARGUMENT
24 BY MR. JAMES:
25        Judge, the test on 38.23 -- there are a lot

```
 1  of old cases on that that go every which way.  The case
 2  -- and I think the State actually provided a number of
 3  cases, and it includes Miles.  But Miles is now the
 4  white horse case.  It's an opinion and by Judge Cochran,
 5  as I recall.  And she talks about the test.  And on page
 6  -- my page 13, she talks about an analysis of other
 7  cases.  And then she talks about none of these cases was
 8  explained on this basis.  But this rule that a private
 9  person can do what a police officer standing in his
10  shoes can legitimately do but cannot do what a police
11  officer cannot do would explain the outcome in each case
12  and is consistent with the purposes of Article 38.23.
13  We conclude that the historical rationale for including
14  unlawful conduct by other person under the Texas
15  Exclusionary Statute is best explained and implemented
16  by this rule.
17              So I would caution the Court not to pay
18  much attention to anything that is prior to that case of
19  Miles v. State.  And I will submit that to the Court.
20              Judge, the key thing is under -- and we
21  talked about the statutes.  Under the relevant statutes
22  33.02 says it is a breach of computer security if a
23  person commits an offense if the person knowingly
24  accesses a computer without the effective consent of the
25  owner.
```

1    There is absolutely nothing to indicate
2 that Ms. Killian had consent to access the computer.
3 All of this about time lines are really kind of smoke
4 and mirrors because the fact is it's going to be who is
5 the most credible witness as to what was said. Is it --
6 she testified that all of this occurred -- and if you
7 read the search warrant affidavit -- because she
8 downloaded two CDs onto the computer and then wanted to
9 get rid of or go in the recycle bin and get rid of
10 those.

11    Not only our expert Ms. Hubbard but the
12 State's expert Mr. Odom said that if that happened there
13 would be a footprint. And they both say there was never
14 a footprint that music was ever downloaded onto the
15 computer. And what's more, there was no evidence that
16 the music was ever taken off the computer. No evidence.
17 No evidence of that. And that is the gravamen of the
18 State's argument that she innocently went on the
19 computer and in trying to download music and exit music,
20 well, she did go into his recent folder. They admit
21 that.

22    Judge, that alone -- that alone is
23 sufficient to cause this evidence to be suppressed. I
24 asked her specifically. I said, "Did he ever tell you
25 that you could use the computer?" She said, "No."

1        If the Court reviews her testimony and the
2   way she said it happened, it's inconsistent with the
3   State's time line. I urge the Court to go back and
4   review her testimony. She said that she drug two songs
5   over onto the desktop, that she went into recent
6   documents to remove it. She saw questionable titles on
7   recent documents. She clicked on there and saw those
8   images of child pornography. She goes onto his computer
9   onto his recent documents. Then she says she went to
10  remove these, and she clicks on more images.
11       And there is no doubt, Judge, she never
12  drug those songs. She never tried to erase them. She
13  was pure and simple snooping.
14       And as Ms. Hubbard showed the Court, the
15  time line shows that at 9:15 she accessed the recent
16  folder. By her testimony, Judge, she did that prior to
17  any chat. She did that. She then went into the recycle
18  bin and accessed not anything else but things that he
19  had after she went to the change the view so that she
20  could see the photos.
21       Judge, and I kept asking her, "Do those
22  thumbnails automatically appear?" And she kept on
23  saying, "I don't remember. I don't remember."
24       I would urge the Court to look at her
25  testimony. I have a copy that court reporter

1  Ms. Rainwater got up.  The Court might find it useful,
2  or you can go back and have her read it.  But that's
3  what she testified to, Judge.  And that shows that she
4  was using and accessing his computer files without his
5  permission.
6         Now I acknowledge that there's been no
7  showing that she was an agent of the State.  But she was
8  certainly a private individual who is standing in the
9  shoes of the police.  Could not have accessed that.  Was
10 illegal of law violations as well as the criminal
11 trespass when he told her to keep that door shut.  She
12 entered in there, and she entered onto the computer.
13         What the State would have you buy off is in
14 a light most favorable to the State.  My client has
15 certainly said you can help yourself to the food.  She
16 says you can help yourself to whatever you need.  But
17 does that kind of remark in a light most favorable to
18 the State give somebody the right to utilize your
19 computer to snoop to see what you've been doing?  To
20 read your diary?  Help yourself to anything you need.
21 Well, I decided to look at his diary.  I found some
22 jewelry.  I decided to wear that.
23         Even if you believe what she said, Judge,
24 she doesn't have the authority to go into his computer.
25 But I would suggest, Judge, that since her story is made

1  of whole cloth her word should not be taken.  The word
2  of Gregg Baird should be who said I told her to keep
3  that door closed and help yourself to any food that you
4  need.
5             Finally, Judge, as far as the affidavit
6  goes, there is absolutely no assertion of reliability of
7  the named informant Dawn Killian.  Nowhere in that
8  affidavit does the officer assert that Dawn Killian is
9  in any way reliable.  There is nothing saying that she's
10 employed or that she's got a good employment history.
11 There is nothing to indicate that she has no criminal
12 record.  There is nothing to indicate that the officer
13 who talked to her even believed her to be credible.
14 There is not one shred of evidence, not one thing in the
15 four corners of that affidavit, your Honor.  There's
16 nothing that indicate that they confirmed that she was,
17 in fact, a dog sitter, that she confirmed -- or that
18 they confirmed where she was staying or who owned the
19 house.  There is absolutely no proof of the credibility
20 of Dawn Killian.
21            So even if you say, well, there wasn't a
22 legal violation under 38.23, under the Fourth and
23 Fourteenth Amendment Article 1 Section 9 and 10 of the
24 Texas Constitution and 38.23, the evidence would have to
25 be suppressed because the affidavit itself is

1 insufficient.

2 So, Judge, those are the areas. I have got
3 some case on the affidavit. There's also the *Tonyak*
4 [phonetic] case deals with tainted evidence and
5 reaffirms the *Miles* case. Submit that to the Court.
6 *United States v. Barth* talks about the expectation of
7 privacy when a person turns his computer over for an
8 examination or for it to be repaired. I think that case
9 is extremely relevant, your Honor.

10 And then *Davla* [phonetic] and *Eduardo* both
11 deals with there has to be a representation of the
12 credibility of a person on whom they're basing a
13 warrant. Certainly, there was sufficient detail given
14 to that, the basis of the knowledge, but nothing to
15 indicate the credibility of that individual.

16 For those reasons, Judge, we would ask that
17 the evidence be suppressed.

18 MR. PHELPS: Your Honor, if it please the
19 Court.

20 THE COURT: Yes, sir.

21 STATE'S CLOSING ARGUMENT
22 BY MR. PHELPS:

23 With respect to the issue about the
24 credibility -- the State's credibility and the
25 underlying information or indicia of credibility of the

1  affidavit, Mr. James is asking you to apply a different
2  standard than is appropriate in this case; that is, he
3  is asking you to apply the standard of the confidential
4  informant, someone who is not named.
5       The Waco Court of Appeals has said this in
6  an almost identical challenge to the search warrant
7  where they said exactly the same thing.  Here is what
8  the Waco court said.  They say a magistrate is entitled
9  to rely on information applied by a private citizen
10 since unlike many police informants they are much less
11 likely to produce false or untrustworthy information.
12      The Court knows that the law always takes a
13 different view of a private citizen that makes a
14 complaint that is willing to be named.  That is
15 completely different standard than when a confidential
16 informant is not named or somebody calls in a tip and
17 that person doesn't want to be named.  Then there is an
18 obligation to talk about corroboration of an anonymous
19 tip or to bolster the credibility.
20      And what the Waco Court of Appeals says
21 further about that, it says the Court of Criminal
22 Appeals has consistently stated that when a named
23 informant is a private citizen -- and there's no
24 question of that in this case -- whose only contact with
25 the police is the result of having witnessed a criminal

```
 1   act committed by another the credibility and reliability
 2   of the information is inherent.  And they say there is
 3   no necessity for that.  The fact is they say that a
 4   magistrate is entitled when signing a search warrant to
 5   rely on that.
 6               And in this particular case, that's exactly
 7   what was stated in the search warrant affidavit.  It
 8   states Dawn Killian, private citizen -- those are not
 9   the words exactly, but it gives the circumstances in
10   that she came into contact with this information.  I
11   think that particular issue really is a nonstarter.  It
12   is disposed of, I think, by the Waco Court of Appeals
13   citing.  They say the Court of Criminal Appeals has
14   consistently stated that when a named or informant is a
15   private citizen that they are inherently reliable.  I
16   don't think that goes, your Honor.
17               With respect to the challenge under 38.23,
18   I think it's important to note two things first.  Number
19   one, they have the burden of persuading you that a
20   criminal violation has occurred.  I am presuming that
21   since Mr. James did not argue it -- well, I guess you
22   did say criminal trespass.
23               But, you know, the common thing about
24   burglary and criminal trespass and the breach of
25   computer access as he has indicated 33.02 is effective
```

consent. That's really the issue here. And when we're talking about effective consent, first of all, the only definition that would apply under this circumstance is she exceeded the scope of her consent. So I presume what they're arguing is that she had consent but she exceeded it by either going deep into the computer or as far as she did or by simply getting on the computer and that exceeded the scope of her being in the house.

So I think it is very important to consider the totality of the circumstances here and how this whole thing started. Gregg Baird invited her into his home for ten days to sit with his dog, to live there, to sleep there, to eat there, to listen to or watch his TV, to listen to his CDs, to playing that stereo. To suggest that under those circumstances, absent any explicit limitations of that consent -- and that's what all the case law says. If you don't take the effort, it is not good enough simply to say she doesn't have his permission explicitly. It is not good enough because he doesn't say something about it a reasonable person in her position wouldn't have done this. None of that matters.

What the case law says in all those repairman cases that we've given you -- and we have actually given you some of the same cases or some of

1  them -- they say if somebody does not take steps to
2  limit the access then their access is unfettered.
3  That's exactly the words the courts use.
4           So when the computer repairman cases --
5  when I take my computer in and say, "Would you please
6  fix this," I don't then get to complain that you went
7  into a file I didn't want you to go into.
8           Not to mention that the courts also talk
9  about it, and Mr. James talked about this, about the
10 reasonable expectation of privacy.  How you can say I'm
11 inviting somebody in my home, I'm letting them have
12 access to my home, I'm not telling them not to go in the
13 bedroom -- and we'll talk about the credibility issue in
14 a second -- that somehow you have a reasonable
15 expectation of privacy when you call somebody into your
16 home.
17          One of the cases that we provided to you
18 actually talks about this issue with respect to kind of
19 the same thing.  And here's what they say.  The computer
20 was not password protected so she could access it.
21 That's our situation.  She was able to do that.  The
22 defendant could have protected the computer with a
23 password where she couldn't have accessed that
24 information.  He didn't do that.  This was the only
25 usable computer in the home; and as far as we know,

1  that's it absent the iPhone. But that's not really a
2  usable computer for the kinds of things you can do on a
3  computer.
4           Nowadays in American society -- and this is
5  important. Nowadays in American society, a computer is
6  just about as common as a telephone or a refrigerator.
7  So to say even though I didn't tell her she could get
8  the computer, what this Court is telling you it is
9  absolutely ludicrous to suggest that I can invite you
10 into my home and somehow you are going to know you can't
11 get on my computer but you can get in the refrigerator.
12 You can get on my stereo. You can go out in my garage.
13 You have full run of the house except for I told you not
14 to go in my bedroom.
15           I think if you review these cases, your
16 Honor, you're going to see that it is the absence of
17 doing something to protect that information that, number
18 one, destroys the reasonable expectation of privacy.
19 These cases actually talk about it in that term:
20 destroys. The *Barth* case that Mr. James gave you, a
21 private party search can destroy an individual's
22 reasonable expectation of privacy if the activity or
23 conduct of the defendant and/or the circumstances of the
24 situation significantly lessen the defendant's
25 reasonable expectation of privacy by creating a risk of

1  intrusion by private parties which was reasonably
2  foreseeable.
3              It is a case that Mr. James gives you --
4  and we have as well because it supports our position --
5  suggests -- actually compels the conclusion if you don't
6  take steps and you invite somebody in your home you
7  cannot then say I have a reasonable expectation of
8  privacy when I don't tell them.
9              And these repairman cases say exactly the
10 same thing.  There's even one repairman case that we
11 gave you in which the defendant takes the computer in
12 and the person who repairs the computer actually goes
13 into a file marked personal.  They say, you know, that's
14 not good enough.  You didn't limit access to that
15 computer.  You brought it in and said fix my computer.
16 Therefore, there is unfettered access.  You shouldn't
17 now say you shouldn't go into that file.
18              I think it is significant to appreciate
19 that what we're talking about and the reason we talked
20 about the computer and the event logs and all that and
21 particularly the information about how this information
22 was accessible is the Court is familiar with the
23 computer.  Both Mr. Odom and their expert told you the
24 same thing.  In order to get to what we're talking about
25 and is perfectly consistent with what Dawn Killian told

Cause Nos. 09-02492-CRF-272; 09-02493-CRF-272; 09-02494-CRF-272; 09-02495-CRF-272; 09-02496-CRF-272; 09-02497-CRF-272; and 09-02498-CRF-272

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 272nd DISTRICT COURT |
| VS. | § § | |
| | § | IN AND FOR |
| GREGG CARL BAIRD | § § | BRAZOS COUNTY, TEXAS |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW CONCERNING DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE

On the 26th day of February, 2010, the Court heard the testimony concerning the Defendant's Motion to Suppress Evidence in each of the above referenced Causes and DENIED the motion. Now taking judicial notice of the Court's file in each Cause referenced above, this Court makes the following findings of fact and conclusions of law:

#### Findings of Fact

1. The defendant, Gregg Baird, is currently charged with 100 counts of Possession of Child Pornography under section 43.26 of the Texas Penal Code.
2. All findings of fact made herein are based upon the credibility of the witnesses.
3. Dawn Killian provided credible testimony regarding the circumstances of her access to Gregg Baird's home, bedroom, computer, and information on that computer.
4. Detective Johse of the College Station Police Department provided credible testimony regarding his investigation.
5. Bill Odem provided credible testimony as to his forensic assessment of Gregg Baird's computer.
6. Dawn Killian was invited by defendant Gregg Baird into his home for the purpose of pet-sitting.
7. Dawn Killian was expected by Gregg Baird to reside at his home for approximately ten (10) days while he was away on vacation.
8. Gregg Baird placed no limits or restrictions on Dawn Killian access to his home.
9. Specifically, Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his bedroom.
10. Gregg Baird placed no limitations or restrictions on Dawn Killian's access to his computer.
11. Gregg Baird took no steps to limit or restrict access to his bedroom or computer, and took no steps to protect the information on his computer through the use of passwords, encryptions, or other such methods.
12. Prior to his leaving his home, Gregg Baird showed Dawn Killian around his home, including his bedroom and bathroom.
13. Gregg Baird told Dawn Killian to "help herself to anything" or words to that effect.
14. Dawn Killian accessed Gregg Baird's computer by moving the computer's mouse and awakening the computer from sleep mode.



1

15. Dawn Killian's access to the bedroom and the computer was reasonably foreseeable to Gregg Baird.
16. Dawn Killian's access to Gregg Baird's computer was superficial and the files she accessed were accessed from the desktop of the computer requiring not more than two (2) mouse-clicks to access and view.
17. Dawn Killian had no intent to invade the privacy of Gregg Baird.
18. Dawn Killian is a private citizen, was not acting for or under the direction of law enforcement, and did not anonymously report Gregg Baird's suspected possession of child pornography to law enforcement.
19. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law, and any conclusion of law that is a finding of fact shall be deemed a finding of fact.

### Conclusions of Law

1. Dawn Killian committed no criminal offense which led to discovery of evidence against the defendant, Gregg Baird.
2. Specifically, Dawn Killian did not commit the offenses of Burglary of a Habitation (30.02 Texas Penal Code), Criminal Trespass (30.05 Texas Penal Code), or Breach of Computer Security (33.02 Texas Penal Code).
3. Dawn Killian had Gregg Baird's effective consent to access his bedroom and computer.
4. Gregg Baird had no reasonable expectation of privacy in the contents of his computer.
5. Article 38.23 of the Texas Code of Criminal Procedure does not apply to the facts of this case because no criminal offense was committed by Dawn Killian in accessing Gregg Baird's bedroom or computer.
6. The affidavit in support of the search warrant at issue in this case presented sufficient probable cause to search Gregg Baird's residence and computer located in his bedroom.
7. The information provided in the affidavit for the search warrant at issue was sufficient for a neutral and detached magistrate to conclude that Dawn Killian was credible and that the information she provided to the College Station Police Department was credible and reliable.

SIGNED the 24 day if Aug 2010

Travis B. Bryan III
Judge Presiding

2

# CRIMINAL DOCKET - CAUSE NO. 09-02498-CRF-361

| NAMES OF PARTIES | ATTORNEYS | KIND OF ACTION | DATE OF FILING |
|---|---|---|---|
| THE STATE OF TEXTAS | SMITH, DANNY WALLACE JR. | POSS OF CHILD PORNOGRAPHY | 06/11/09 |
| VS | Shane Phelps | | CHARGING INSTRUMENT |
| BAIRD, GREGG CARL | Ray Thomas | | |
| | DEFENSE | | Indictment |
| | Jim James | | |

## ORDERS OF THE COURT

| DATE OF ORDERS | |
|---|---|
| Month/Day/Year | |
| 7/15/09 | Defendant Arraigned [illegible] |
| | W[illegible] [illegible] |
| | [illegible] to Pub. |
| | Signed Agreed Discovery Order |
| 8/10/09 | Set Plea Con (9/25) Du/JT 11-20/12-1 1:29 / 2.2 (Ref.) |
| 9/8/09 | |
| 10/13/09 | Reset plea cont to 10/1; all trial setings remain |
| | Case removed from settings on 11-20/12-1, and reset for hearing on Motion to Suppress (12/17). Case remains pref. set for 1-29/2-2 |
| 12/1/09 | Continuance granted. Suppression hearing reset to 1/4/2010 |
| 12/16/09 | Amended string removed 1/4 setting; reset to 1/25 |
| 1/19/10 | Cont. granted (filed by Def; no objection from State). Case reset |
| | hearing on 1/25 to State's Motion for More Definite Stmt; removed suppression hearing from 1/25; removed DC/Ref/JT 1/29/2/1/2/2 |
| 1/25/10 | James appears & orally agrees w/ Phelps that he will make his motion more specific (under 38.23). If Phelps not satisfied w/ specification, he will hear on 8:30 Am docket. |

# CRIMINAL DOCKET - CAUSE NO. 09-02498-CRF-272

| NAMES OF PARTIES | ATTORNEYS | OFFENSE | DATE OF FILING |
|---|---|---|---|
| THE STATE OF TEXAS VS. GREGG CARL BAIRD W/M 02/11/71 | Smith, Danny Wallace Jr. DEFENSE JAMES, JIM W. III | POSS OF CHILD PORNOGRAPHY, F3 Offense Date: 05/13/09 Arrest Date: Bond Amt: 1,400.00 Bond Co.: ALLEGHENY CASUALTY CO. | 06/11/09 CHARGING INSTRUMENT: Indictment |

## ORDERS OF THE COURT

| | Month/Day/Year | |
|---|---|---|
| 1 | 2010 10 5 | Jr suppression hearing 2/23. De/Pef JT 426 + 3/2 |
| 2 | 26 10 | Ct finished w/ suppression & denies it. |

| CRIMINAL DOCKET - CAUSE NO. 09-02494-CRF-272 | | | |
|---|---|---|---|
| NAMES OF PARTIES | ATTORNEYS | OFFENSE | DATE OF FILING |
| THE STATE OF TEXAS<br>VS.<br>GREGG CARL BAIRD<br>W/M 02/11/71 | Smith, Danny Wallace Jr.<br><br>DEFENSE<br>JAMES, JIM W. III | POSS OF CHILD PORNOGRAPHY, F3<br>Offense Date: 05/13/09<br>Arrest Date: 06/11/09<br>Bond Amt: 1,400.00<br>Bond Co.: ALLEGHENY CASUALTY CO. | 06/11/09<br>CHARGING INSTRUMENT:<br>Indictment |

### ORDERS OF THE COURT

| DATE OF ORDERS Month/Day/Year | |
|---|---|
| 3/11/10 | Set Punish Hearing @ 4.26 @ 9:27 (subject to Crim. JT) |
| 3/30/10 | Order Granting Continuance signed 7.28/7.29 |
| 5/10/10 | Case removed set for 7.28/7.29, case removed from 4/26/4.27 |
| 5/18/10 | hearing on Motion to Alter Bond Cond. Set 5/18 is denied. Bond Cond. to Remove Minute |
| 6/2/10 | Amended setting to add Def's objections to FOP/CCL to 6/10 |
| 7/29/10 | on Count 2, on Count 1, 8 years TDC First 3 counts sentenced to 10 years TDC cost 2, counts sentenced one stacked CT3 1+2 counts are CC w/ counts |
| 8/26/10 | Findings of Fact/Conl of Law signed |

THE STATE OF TEXAS
COUNTY OF Brazos

I, Marc Hamlin, Clerk of the 272ND DISTRICT COURT of Brazos County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5(a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5(b).

GIVEN UNDER MY HAND AND SEAL OF SAID COURT, at my office in Brazos County, Texas, this the 11th day of October, 2010.



Marc Hamlin, District Clerk
Brazos County, Bryan Texas



Deputy Clerk